# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CECIL E. HOPKINS, individually and on behalf of a class of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | **Case No. 08-05052-CV-SW-GAF** |
| v. | ) ) | |
| KANSAS TEACHERS COMMUNITY CREDIT UNION, | ) ) ) | |
| Defendant/Third Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| MARATHON ROTHSCHILD CREDIT UNION, et al., | ) ) ) | |
| Third Party Defendants. | ) ) | |

## SUGGESTIONS IN SUPPORT OF DEFENDANT KANSAS TEACHERS COMMUNITY CREDIT UNION'S MOTION FOR SUMMARY JUDGMENT

This case arises out of the repossession and resale of a used Chevrolet Monte Carlo ("Vehicle") that plaintiff purchased in Parsons, Kansas. Plaintiff purchased the Vehicle pursuant to a Retail Installment Contract and Security Agreement (the "Kansas Installment Contract") that was assigned to defendant Kansas Teachers Community Credit Union (the "Kansas Credit Union"). After plaintiff's default, Centrix Resource Systems LLC ("Centrix") repossessed the Vehicle and then sent plaintiff a letter (the "pre-sale" notice) informing him that the Vehicle would be resold unless he cured the deficiency balance owed to the Kansas Credit Union under the Kansas Installment Contract. When plaintiff failed to cure his deficiency, Centrix sold the Vehicle at a car auction to recoup a portion of plaintiff's delinquent balance.

In Count I of his First Amended Petition, plaintiff seeks to establish liability against the Kansas Credit Union because the "pre-sale" notice did not contain the language required by section 9-614 of the Missouri Uniform Commercial Code ("UCC").[1] However, plaintiff never read the pre-sale notice even though it was sent to the address he had provided when he purchased the Vehicle. Because the Kansas Credit Union took the steps reasonably required to inform plaintiff of the impending sale of the Vehicle, it is entitled to summary judgment on Count I.

Moreover, plaintiff contends under Count I that he is entitled to the so-called "double whammy" of *both*: (1) statutory damages under section 9-625 of the Missouri UCC; *and* (2) an order prohibiting the Kansas Credit Union from obtaining a deficiency judgment against him for any remaining balance owed by him. Plaintiff's First Amended Petition, ¶¶ 52-53 (Ex. B) (*see* Consolidated Exhibits for Defendants' (1) Motion for Partial Summary Judgment, (2) Suggestions in Opposition to Plaintiff's Motion for Class Certification, and (3) Motion for Leave to Assert Counterclaims Against Some Members of the Proposed Class). However, controlling law prohibits a plaintiff such as Mr. Hopkins from reaping an enormous windfall of statutory damages on top of eliminating any deficiency the plaintiff owes on the vehicle. Plaintiff's purchase of the Vehicle pursuant to the Kansas Installment Contract is a consumer credit transaction governed by the Kansas Uniform Consumer Credit Code (the "Kansas U3C"). Under the Kansas U3C, plaintiff's sole remedy for receiving an inadequate "pre-sale" notice is

---

[1] For purposes of this motion only, the Kansas Credit Union assumes *arguendo* that the "pre-sale" notice *sent to plaintiff* does not comply with section 9-614 of the Missouri UCC. However, the Kansas Credit Union maintains that the pre-sale notices sent to the majority of the 103 other proposed class members do comply with the requirements of the UCC applicable to each of them.

DB04/012516.0539/1391232.7 PF06

the elimination of any remaining balance owed under the Kansas Installment Contract to the Kansas Credit Union. He is not entitled to statutory damages as well.

The only circumstances under which plaintiff could obtain the "double whammy" of both: (1) statutory damages under the UCC; and (2) elimination of any remaining deficiency balance owed under the Kansas Installment Contract would be if plaintiff could demonstrate that the fair market value of the 2001 Chevrolet Monte Carlo was greater than the amount he owed the Kansas Credit Union when the Vehicle was repossessed. The undisputed material facts demonstrate that, like virtually all vehicles, the plaintiff's 2001 Chevrolet Monte Carlo depreciated as soon as he drove it off the dealer's car lot in Parsons, Kansas where he bought it, and the Vehicle was worth significantly less than the $15,713.00 balance he owed to the Kansas Credit Union in November 2004. Indeed, it is undisputed that the Vehicle sold for only $8,569.95 at the Manheim Auto Auction in Kansas City, Missouri in October 2007. Because there is no genuine dispute that the Vehicle was worth far less than the amount plaintiff owed under the Kansas Installment Contract, the Court should enter partial summary judgment on Count I, and declare that plaintiff may not recover statutory damages under Article 9 of the UCC.[2]

---

[2] This motion directs two separate arguments as to Count I. First, the Kansas Credit Union seeks summary judgment against any potential recovery by plaintiff under Count I based upon his admission that he never read the pre-sale notice after the Kansas Credit Union took reasonable steps to send it to him. In the alternative, the Kansas Credit Union seeks partial summary judgment as to Count I based upon plaintiff's inability to recover statutory damages. The Kansas Credit Union recognizes that, if liability is proven, plaintiff would be entitled to an Order prohibiting it from obtaining a deficiency judgment against him on any balance owed to the Kansas Credit Union. However, the Kansas Credit Union has not and will not seek a deficiency judgment against plaintiff because Centrix paid the Kansas Credit Union the remaining deficiency that he owed. Thus, the Kansas Credit Union seeks no deficiency judgment against plaintiff, and an Order that prohibits it from obtaining such a judgment is unnecessary.

3

In Count II, plaintiff alleges violations of the Missouri Merchandising Practices Act ("MMPA") as a result of alleged improper finance charges included in his retail installment contract. A viable MMPA claim requires proof of causation, *i.e.*, that the alleged wrongful behavior actually resulted in damage to the consumer. Plaintiff is unable to demonstrate causation because he did not make a single installment payment after "purchasing" the Vehicle and therefore did not incur *any* finance charges, much less improper finance charges. In other words, plaintiff incurred no damages for the simple reason that he failed to make any installment payments under the contract.

In Count III, plaintiff alleges a claim for conversion. But to bring a claim for conversion, plaintiff must show that he was entitled to possession of property, and that defendant wrongfully deprived plaintiff of the right to possession. Here, plaintiff admits that he was in default under the terms of the Kansas Installment Contract when the Vehicle was repossessed. Under the terms of the Kansas Installment Contract, the Kansas Credit Union (as the secured creditor) was entitled to repossess the Vehicle when it did so. Because plaintiff had no right to the Vehicle at the time of repossession, he cannot assert a claim for conversion. Accordingly, the Kansas Credit Union is entitled to summary judgment on Count III as a matter of law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.** **In March 2004, Plaintiff Purchased A Vehicle In Parsons, Kansas, On Credit By Entering Into A Retail Installment Agreement.**

1. On March 25, 2004, plaintiff purchased a 2001 Chevrolet Monte Carlo (the "Vehicle") in Parsons, Kansas, from the Mayse Automotive Group (the "Kansas Car Dealer"). Deposition Transcript of Cecil Hopkins, Jr. at pp. 58-77 (Ex. C).

4

2.      Plaintiff executed a Retail Installment Contract and Security Agreement (the "Kansas Installment Contract") in Parsons, Kansas with the Kansas Car Dealer for the purchase of the Vehicle.  Kansas Installment Contract (Ex. L); Hopkins Dep. at 76-20-77:6 (Ex. C).

3.      Plaintiff purchased the Vehicle primarily for his personal, family or household use.  First Amended Petition ¶¶ 4, 25, 36 (Ex. B); Hopkins Dep. at 66:25-67:10 and 122:12-17 (Ex. C).

4.      Under the terms of the Kansas Installment Contract, plaintiff agreed to make a series of monthly installment payments (in excess of four installments) beginning on May 8, 2004, to pay for the Vehicle.  Kansas Installment Contract (Ex. L, p.1); Hopkins Dep. at 76:20-77:6; 79:17-80:6; 81:19-82:19 (Ex. C).

5.      The amount plaintiff financed under the Kansas Installment Contract was less than $25,000.00.  Kansas Installment Contract (Ex. L, p. 1).

6.      The Kansas Car Dealer is regularly engaged in the business of selling automotive vehicles via retail installment agreements in which customers are extended credit and allowed to make a series of installment payments toward the purchase of a vehicle.  Affidavit of Mark Kolarik Aff. ¶ 30 (Ex. V).

**B.      The Kansas Installment Contract Was Assigned To The Kansas Credit Union In Pittsburg, Kansas.**

7.      Defendant Kansas Credit Union is a credit union located in Pittsburg, Kansas. Kolarik Aff. ¶ 2 (Ex. V).

8.      The Kansas Car Dealer assigned the Kansas Installment Contract to the Kansas Credit Union.  Kolarik Aff. ¶ 34 (Ex. V); Hopkins Dep. at 83:3-12 and 100:11-25 (Ex. C); Kansas Installment Contract (Ex. L, p. 1).

DB04/012516.0539/1391232.7 PF06

**C.     When Plaintiff Defaulted On The Kansas Installment Contract, Centrix Repossessed The Vehicle On Behalf Of The Kansas Credit Union.**

9.      In the section of the Kansas Installment Contract bearing the heading **DEFAULT**, plaintiff agreed that he would be in default of the Kansas Installment Contract if he failed to make  payments as required by the terms of the Kansas Installment Contract.  Kansas Installment Contract (Ex. L, p. 2); Hopkins Dep. at 76:20-77:6 and 150:15-18 (Ex. C).

10.     The Kansas Credit Union has no record of receiving any payments on the Kansas Installment Contract.  Kolarik Aff. ¶¶ 36-37 (Ex. V); (Ex. P).

11.     Plaintiff has no documents demonstrating that he made any payments.  Hopkins Dep. (Ex. C) at 82:4-6.

12.     Plaintiff defaulted under the terms of the Kansas Installment Contract.  Hopkins Dep. at 139:22-14:14 (Ex. C); Suggestions In Support of Plaintiff's Motion for Class Certification (Court Doc. 58) at 7 (admitting that "Plaintiff fell into default after obtaining his motor vehicle loan.").

13.     Upon default, the Kansas Installment Contract provides various remedies to the secured creditor - the Kansas Credit Union - including the right to repossess the Vehicle.  Kansas Retail Installment Agreement (Ex. L, p. 2); Hopkins Dep. at 150:15-18 (Ex. C).

14.     Centrix serviced the Kansas Installment Contract on behalf of the Kansas Credit Union.  Kolarik Aff. ¶ 35 (Ex. V).

15.     On or about July 30, 2004, after plaintiff defaulted under the Retail Installment Contract, Centrix repossessed the Vehicle in Carl Junction, Missouri.  Kolarik Aff. ¶ 38 (Ex. V); Hopkins Dep. at  87:23-25 and 88:7-89:9 (Ex. C).

16.     On or about July 30, 2004, Centrix sent plaintiff a letter (the "pre-sale" notice) to his address at 505 Karen Drive, Carl Junction, Missouri.  The letter advised that the Vehicle had

6

been repossessed and would be sold if he failed to pay the full balance owing under the Kansas Installment Contract. Kolarik Aff. ¶ 39 (Ex. V); July 30, 2004 pre-sale notice (Ex. Q).

17.     When plaintiff purchased the Vehicle in March 2004, he was living with his girlfriend at 505 Karen Drive, Carl Junction, Missouri 64834. Hopkins Dep. at 46:9-51:25 (Ex. C).

18.     When filling out the paperwork necessary to purchase the Vehicle and arrange financing from the Kansas Credit Union in March 2004, plaintiff repeatedly (and truthfully) stated that he resided at the 505 Karen Drive address, and listed that address as his mailing address. (Exs. K-M).

19.     Accordingly, the address listed on plaintiff's July 30, 2004, pre-sale notice is 505 Karen Drive, Carl Junction, Missouri, 64834. (Ex. Q).

20.     Unbeknownst to the Kansas Credit Union, shortly after he purchased the Vehicle in March 2004, plaintiff stopped residing with his girlfriend at the 505 Karen Drive address and stayed with a friend for several months. Hopkins Dep. at 46:9-51:25 (Ex. C). During this time period, plaintiff's mail was still being delivered to his girlfriend's 505 Karen Drive address, not the address where he was staying with a friend. *Id.* at 51:12-19.

21.     Plaintiff never received a copy of the pre-sale notice sent to his Carl Junction, Missouri address of record. Hopkins Dep. at 116:4-19 (Ex. C). Furthermore, he never read the pre-sale notice until the night before his deposition. *Id.*

22.     After the Vehicle was repossessed, plaintiff did not make any attempt to make additional payments on the delinquent balance or otherwise cure his default under the Kansas Installment Contract. Hopkins Dep. at 85:13-87:21, 93:13-94:2, and 140:15-142:14 (Ex. C); Kolarik Aff. ¶ 40 (Ex. V).

7

23.     On the day following the Vehicle's repossession, plaintiff contacted the Kansas Credit Union because his girlfriend had told him that she/they were current on the payment schedule because of money orders she had sent to cover the required installment payments. Hopkins Dep. (Ex. C) at 90:15-91:4.

**D.     When The Vehicle Was Resold, It Was Worth Less Than The Balance Plaintiff Owed Under The Kansas Installment Contract.**

24.     When the Vehicle was repossessed, plaintiff owed the Kansas Credit Union $15,713.00 under the terms of the Kansas Installment Contract.  Kolarik Aff. ¶ 41 (Ex. V).

25.     On or about October 27, 2004, the Vehicle was sold at the Manheim Auto Auction in Kansas City, Missouri for $8,569.65.   Kolarik Aff. ¶ 42 (Ex. V).

26.     Plaintiff does not contend that the fair market value of the Vehicle was more than the $8,569.65 sale price obtained at the Manheim Auto Auction.  Suggestions In Support of Plaintiff's Motion for Class Certification (Court Doc. 58) at 33 (stating that plaintiff "does not contend that the sale of his motor vehicle at auction should have generated more proceeds."); Hopkins Dep. at 128:20-21(Ex. C).

27.     Professor George Hoffer is a professor at Virginia Commonwealth University. Dr. Hoffer has studied the American automotive industry for 40 years, and has conducted many studies regarding the valuations of used automobiles.  Hoffer Report (Ex. W).

28.     In this case, Professor Hoffer studied documents regarding the Vehicle's condition, odometer mileage, and other factors relating to the Vehicle's value (such as the Vehicle's interior, available options, existence of frame damage, and other factors that affect the value of a used automobile).  Hoffer Report (Ex. W).

29.     Professor Hoffer concluded that the $8,569.65 price obtained for the Vehicle at auction is consistent with the fair market value of a car in its condition, and that "the price

8

obtained for the vehicle is well within the standard of reasonableness."  Hoffer Report at 2, ¶ 5 (Ex. W).

30.     The fair market value of the Vehicle on the date it was repossessed was less than $15,713.00.  Hoffer Report at 2, ¶ 5 (Ex. W); Suggestions In Support of Plaintiff's Motion for Class Certification (Court Doc. 58) at 33 (stating that plaintiff "does not contend that the sale of his motor vehicle at auction should have generated more proceeds.")  Hopkins Dep. at 128:20-21 (Ex. C).

**E.     Plaintiff's Claims For Relief.**

31.     In Count I of the First Amended Petition, plaintiff alleges that he is (and the putative class members are) entitled to statutory damages under section 9-625(c) of the Missouri UCC.  First Amended Petition ¶ 52 (Ex. B).  Plaintiff contends that he should recover statutory damages of $10,878.56.  Suggestions In Support of Plaintiff's Motion for Class Certification (Court Doc. 58) at 22.

32.     In Count I, plaintiff alleges that the Kansas Credit Union should be barred from collecting the deficiency balance on the amount he owes under the Kansas Installment Contract (and on amounts owed by putative class members).  First Amended Petition ¶ 53 (Ex. B).

33.     In Count II of the First Amended Petition, plaintiff asserts a claim under the Missouri Merchandising Practices Act ("MMPA").  First Amended Petition, ¶ 56 (Ex. B).

34.     In Count III of the First Amended Petition, plaintiff asserts a common law claim for conversion.  First Amended Petition at pp. 23-24 (Ex. B).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Lambert v. City of Dumas*, 187 F.3d 931, 934 (8th Cir. 1999). A genuine issue of material fact is one "that might affect the outcome of the suit under the governing law" and "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 248, 250. Although a court must view the evidence in the light most favorable to the non-moving party, a genuine factual dispute requires "more than a scintilla of evidence." *FDIC v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). However, once the moving party meets its burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The non-moving party "may not rest on mere allegations or denials of its pleading," *id.*, nor may it "rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 792 (8th Cir. 1988). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50). Moreover, summary judgment is not a disfavored procedural shortcut; rather, it is an important procedure "designed to secure a just, speedy and inexpensive determination of every action." *Midwest Oilseeds v. Limagrain Genetics Corp.,* 387 F.3d 705, 711 (8th Cir. 2004).

DB04/012516.0539/1391232.7 PF06

<u>**ARGUMENT**</u>

**I.    WITH ONE NOTABLE EXCEPTION, PLAINTIFF'S CLAIMS ARE GOVERNED BY MISSOURI LAW.**

Unlike most of the members of his proposed class, plaintiff's retail installment contract contains no choice-of-law provision.  If it had, the law of the chosen state would govern his claims.  *Bank of Bentonville v. Wacross, Inc.*, No. 01-5130-CV-SW-SWH, 2006 WL 2850566 (W.D. Mo. Sept. 29, 2006) (the law governing a creditor's obligation to provide notice to the debtor of resale of the repossessed property is the law of the state contractually agreed upon by the parties); *First National Bank of Louisville v. Insurance Centers, Inc.* 560 F.Supp. 1261 (E.D. Mo. 1983) (same).

In the absence of a binding choice-of-law agreement, courts typically find that the law of the state in which repossession occurred controls claims related to repossession (such as conversion and Article 9 UCC notice claims).  *See Lewis v. First Nat'l Bank of Miami*, 216 S.E.2d 347, 348 (Ga. Ct. App. 1975) (applying Georgia law to repossession, resale, and right to deficiency, when vehicle was purchased in Florida, but repossessed in Georgia); *Associates Discount Corp. v. Cary*, 262 N.Y.S.2d 646, 651 (N.Y. Civ. Ct. 1965) (applying law of Massachusetts to issue of whether UCC notice before resale was proper when car was sold in District of Columbia, but repossessed in Massachusetts); *Thompson v. Ford Motor Credit Co*, 324 F. Supp. 108, 115 (D.S.C. 1971) (applying South Carolina law to conversion action when car was repossessed in South Carolina).

While it appears that no Missouri court has specifically decided which state's law controls legal claims arising out of a vehicle's repossession and resale in the absence of a choice-of-law agreement, the Missouri Court of Appeals has cited the reasoning of New York's *Associates Discount* decision with approval.  *See Owens v. Automobile Recovery Bureau, Inc.*, 544 S.W.2d

26, 30 (Mo. Ct. App. 1976) (applying Missouri law in dispute where Missouri debtor brought an action for conversion against an Ohio creditor, and both parties assumed that Missouri law would apply). In this case, the repossession of the Vehicle occurred in Missouri. SOF ¶ 15. Accordingly, plaintiff's UCC and conversion claims are generally governed by Missouri law - although not for the reason plaintiff believes.[3]

There is one notable exception. As explained in further detail below, the Kansas U3C also applies to plaintiff's claims because the protections of the Kansas U3C automatically apply to certain consumer transactions that occur in the State of Kansas. *Infra* at 14-18.

## II. THE KANSAS CREDIT UNION IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT I.

### A. The Kansas Credit Union Is Entitled To Summary Judgment On Count I Because It Took Reasonable Steps To Send Plaintiff A Pre-Sale Notice, But Plaintiff Never Received Nor Read The Pre-Sale Notice.

Plaintiff's claim under Count I is premised upon an allegedly defective "pre-sale" notice that plaintiff never read or received. SOF ¶¶ 21, 31. An unreceived notice does not give rise to liability, since it could not be prejudicial to plaintiff's right to protect his interest in the sale of the collateral. *Springfield Chrysler-Plymouth v. Harmon*, 858 S.W.2d 240, 244 (Mo. Ct. App. 1993). Plaintiff concedes that he never received nor read the pre-sale notice in question. SOF ¶ 21. Since plaintiff's alleged failure to protect his interest in the collateral did not result from a defective or incomplete notice, the Kansas Credit Union is entitled to summary judgment on Count I.

---

[3] Plaintiff has suggested that Missouri law applies to all of the proposed class member's claims because their claims relate to perfection or priority of security interests. Plaintiff's Suggestions (Court Doc. 58) at 12-15. In reality, plaintiff's claims relate to the default, repossession and resale of his Vehicle. These claims do not implicate perfection or priority. Barkley and Barbara Clark, Law of Sec. Trans. Under the UCC ¶ 9.02[1][a] (2008) ("Because default, repossession and notice are not matters of perfection, Section 1-105(2) authorizes a choice-of-law provision to govern issues that arise out of default.").

12

In the Kansas Installment Contract and other documents, plaintiff identified his mailing address as 505 Karen Drive, Carl Junction, Missouri. SOF ¶ 18. Centrix sent the pre-sale notice to that same address in July 2004. SOF ¶ 19. Plaintiff was no longer living at that address at that time, and testified that he never received the "pre-sale" notice upon which his lawsuit is now premised. SOF ¶¶ 21, 31. In light of this admission, his claim under Count I should be dismissed. In *Lankheit v. Estate of Scherer*, 811 S.W.2d 853 (Mo. Ct. App. 1991), the Missouri Court of Appeals noted the following statement by the authors of one treatise:

> Section 201(38) requires that the notice be properly addressed. However, the Code does not require that the debtor actually receive the notice. Section 1-201(26) makes this clear, and a comment states: 'When the essential fact is the other party's receipt of the notice, that is stated.' Neither 9-504(3) nor the definition of 'send' explicitly states that the notice must ultimately reach the debtor. We know of no case holding that the debtor must receive the notice, assuming it to have been properly sent.

*Id*. at 243 (citing Uniform Commercial Code (3d ed.) White and Summers, Section 27-12, p. 602).

In this case, the pre-sale notice was sent to the address identified by plaintiff in Carl Junction, Missouri. SOF ¶¶ 17-19. Plaintiff never even read the pre-sale notice, much less relied upon it to his detriment, nor did he attempt to re-claim the collateral based upon inaccurate information contained therein. SOF ¶¶ 21, 23. As a result, he cannot make a claim under Count I. In *Springfield Chrysler-Plymouth*, notice was sent to a debtor at the Missouri address shown in a security agreement. 858 S.W.2d at 241-42. That letter was returned unclaimed after having been forwarded to a Nebraska address. *Id*. at 242. The Court ruled that the purpose of the rule had been met because the judgment creditor took the steps reasonably required under the rule to inform the debtor of the sale. *Id*. at 243-44; *see also Food Servs. Corp. v. Rheam*, 145 S.W.3d 484, 492 (Mo. Ct. App. 2004). Important here, the court specifically held that it was irrelevant if

13

the notice that the debtor failed to read would have supplied him with proper notice if he had actually reviewed it: "an unreceived but properly sent notice, defective or not, could not be prejudicial to [the debtor's] right to protect his interest in the sale of the collateral." *Springfield Chrysler-Plymouth,* 858 S.W.2d at 244.

The purpose of the statutory notice is to apprise the debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest. *Cherry Manor v. Am. Health Care*, 797 S.W.2d 817, 821 (Mo. Ct. App. 1990). That purpose was certainly satisfied in this case. Though he never received the pre-sale notice, plaintiff was indeed able to take appropriate action to protect his interest in the Vehicle when he contacted the Kansas Credit Union after the Vehicle had been repossessed. SOF ¶ 23. Thus, receipt of a notice that did or did not comply with the technical requirements of the UCC was irrelevant to plaintiff, since he was well aware that his Vehicle had been repossessed. Even when armed with that knowledge, plaintiff made no attempt to make any of the past due payments on the Vehicle, or do anything else to get the Vehicle back. SOF ¶ 22. Thus, the content of the pre-sale notice was irrelevant. Because the purpose of the UCC's notice rule had been met, and the Kansas Credit Union took the steps reasonably required under the rule to inform plaintiff of the sale, it is entitled to summary judgment.

**B.      PLAINTIFF CANNOT RECOVER STATUTORY DAMAGES UNDER COUNT I BECAUSE THE KANSAS U3C GOVERNS THE SCOPE OF REMEDIES AVAILABLE TO HIM FOR RECEIVING AN ALLEGEDLY INADEQUATE "PRE-SALE" NOTICE AFTER ENTERING INTO A CONSUMER CREDIT TRANSACTION IN THE STATE OF KANSAS.**

Plaintiff contends that he is entitled to the "double whammy" of both: (1) statutory damages in excess of $10,000.00 under section 9-625 of the Missouri UCC; and (2) an order prohibiting the Kansas Credit Union from obtaining a deficiency judgment against him for any remaining balance owed by him. SOF ¶¶ 31-32.

14

In making this claim, plaintiff incorrectly assumes that the only uniform code at issue in this matter is the UCC. In reality, the Kansas U3C (K.S.A. § 16a-1-101 *et seq.*) also applies in this action. Under the Kansas U3C, plaintiff is not entitled to recover statutory damages unless he can demonstrate that a commercially reasonable sale of the Vehicle would have generated a surplus amount (*i.e.,* that the Vehicle could have been sold for *more* than he owed under the Kansas Installment Contract). Because he cannot meet this burden – and the facts demonstrate just the opposite, since the Vehicle was worth far less than what he owed under the Kansas Installment Contract – plaintiff cannot recover statutory damages under the UCC as a matter of law.

        **1.**      **The Kansas U3C Applies In This Case Because The Kansas Installment Contract Is A "Consumer Credit Transaction" That "Occurred In The State of Kansas."**

The Kansas U3C applies to "all consumer credit transactions that occur in the State of Kansas." *Decision Point Inc. v. Reece & Nichols Realtors, Inc.,* 144 P.3d 706, 709 (Kan. 2006) (quoting K.S.A. § 16a-1-201(1)). "A consumer credit transaction occurs in [the State of Kansas] if a signed writing evidencing the obligation is received by the creditor in [the State of Kansas]." *Id.* (citing K.S.A. § 16a-1-201(1)(a)). As set forth below, the undisputed material facts demonstrate that plaintiff's execution of the Kansas Installment Contract in Parsons, Kansas, was (1) a "consumer credit transaction" that (2) occurred in the State of Kansas.

Plaintiff's retail installment contract contains a "boilerplate" provision that allows buyers to seek the additional protections of the Kansas U3C even if it would not otherwise apply to their purchase. (Ex. L). Thus, buyers whose transaction might not otherwise receive the protections of the Kansas U3C can request that their purchase be governed by the Kansas U3C if they so desire. K.S.A. 16a-1-109; *United Kansas Bank & Trust Co. v. Rixner*, 610 P.2d 116, 119 (Kan. Ct. App. 1980); *Farmers State Bank v. Haflich*, 699 P.2d 553, 554 (Kan. Ct. App. 1985).

15

Although the box next to the words "Kansas UCCC Applies" was not checked on plaintiff's Kansas Installment Contract, plaintiff's assent to the application of the Kansas U3C is unnecessary for it to apply in this case, since plaintiff's transaction otherwise satisfies the Kansas U3C's requirements as explained below.

Consequently, the Court should conclude that plaintiff's purchase of the Vehicle pursuant to the Kansas Installment Contract was a "consumer credit transaction" that occurred in the State of Kansas, and therefore is governed by the Kansas U3C. *See Decision Point, Inc.,* 144 P.3d at 708–711 (concluding that a cash advance business which advanced money to individuals had engaged in a consumer credit transaction).

      a.     *The Kansas Installment Contract Is A "Consumer Credit Sale" And Therefore A "Consumer Credit Transaction" As Defined By The Kansas U3C.*

Under the Kansas U3C, a "consumer credit transaction" includes a large number of credit transactions, including (and relevant here) a "consumer credit sale." K.S.A. § 16a-1-301(15).

The Kansas U3C imposes five requirements for a sale of goods or services to meet the definition of a "consumer credit sale." K.S.A. § 16-1-301(14)(a). Under the Kansas U3C, a "consumer credit sale" is a sale of goods, services, or an interest in land in which:

(i)     Credit is granted either by the a seller who regularly engages as a seller in credit transactions of the same kind or pursuant to a credit card other than a lender credit card;

(ii)     the buyer is a person other than an organization;

(iii)     the goods, services, or interest in land are purchased primarily for a personal, family or household purpose;

(iv)     either the debt is payable by written agreement payable in more than four installments or a finance charge is made; and

(v)     with respect to the sale of goods or services, the amount financed does not exceed $25,000.

16

K.S.A. § 16-1-301(14)(a). The Kansas Installment Contract meets all five of these requirements.

To satisfy the first requirement for a consumer credit sale, credit must be granted by a seller who is "regularly engaged in credit transactions of the same kind as the one at issue." K.S.A. § 16a-1-301(14)(a)(i). The Kansas Car Dealer is regularly engaged in the business of selling automobiles to consumers on credit by allowing purchasers to enter into retail installment contracts in which the consumer agrees to purchase vehicles with a series of installment payments. SOF ¶ 6. Indeed, all automobile dealers routinely use retail installment contracts to sell vehicles. *See, e.g., A & L Holding Co. v. Southern Pacific Bank*, 34 S.W.3d 415 (Mo. Ct. App. 2000) (describing the utilization of the retail installment agreements by a number of automobile dealers in the Kansas City metropolitan area). The first element is satisfied in this case.

To comply with the second requirement, the debtor must be a person, not an organization. K.S.A. § 16a-1-301(14)(a)(ii). The Kansas U3C defines a "person" as a "natural person or an individual." K.S.A. § 16-1-301(33). Here, the debtor is Cecil Hopkins, a natural person. Therefore, the second requirement is met in this case.

To satisfy the third requirement for a consumer credit sale, the debt must be incurred primarily for personal, family or household purposes. K.S.A. § 16a-1-301(14)(a)(iii). Plaintiff has repeatedly alleged (and the Kansas Credit Union does not dispute) that he purchased the Vehicle primarily for personal, family or household purposes. SOF ¶ 3. Therefore, the third requirement is satisfied in this case.

To fulfill the fourth requirement, the debt must be payable in four or more installments or the creditor must impose a finance charge. K.S.A. § 16a-1-301(14)(a)(iv). In this case, the Kansas Installment Contract required plaintiff to make a series of payments, in excess of four

installments. SOF ¶ 4. Therefore, the fourth requirement for a consumer credit sale is satisfied in this case.

Finally, to meet the fifth requirement for a consumer credit sale, the amount financed must not exceed $25,000. K.S.A. § 16a-1-301(14)(v). Here, the amount financed by the plaintiff pursuant to the Kansas Installment Contract was less than $25,000.00. SOF ¶ 5. Therefore, the fifth and final requirement is met, and plaintiff's purchase of the Vehicle pursuant to the Kansas Installment Contract is indeed a "consumer credit sale" under the Kansas U3C.

      b.    *The Consumer Credit Transaction In Which Plaintiff Purchased The Vehicle "Occurred In The State Of Kansas."*

The Kansas U3C applies to all consumer credit transactions "that occur in the State of Kansas." *Decision Point Inc.,* 144 P.3d at 709 (citing K.S.A. § 16a-1-201(1)). A consumer credit transaction occurs in the State of Kansas if "a signed writing evidencing the obligation is received by the creditor in the [State of Kansas]." *Id.* (citing K.S.A. § 16a-1-201(1)(a)). Put another way, under K.S.A. § 16a-1-201(a)(1), the application of the Kansas U3C is "dependent on the place at which the executed contract was received by the creditor . . . ." K.S.A. § 16a-1-201 cmt. 2.

It is undisputed that plaintiff executed the Kansas Installment Contract while at the Kansas Car Dealer in Parsons, Kansas. SOF ¶ 2. As such, a "signed writing evidencing the obligation" was received by the creditor in the State of Kansas, therefore meeting the requirements of K.S.A. § 16a-1-201(1)(a). Accordingly, the Kansas U3C applies to plaintiff's purchase of the Vehicle pursuant to the Kansas Installment Contract. *Decision Point Inc.,* 144 P.3d at 710 (consumer credit transaction "occurred in the State of Kansas" when signed agreements evidencing the obligation were received by creditor in Overland Park, Kansas).

18

2. **Plaintiff Is Not Entitled To Recover Statutory Damages Under Article 9 Of The UCC Unless He Can Demonstrate That The Vehicle Was Worth More Than The Amount He Owed To The Kansas Credit Union in Late 2004.**

Under *Topeka Datsun Motor Co. v. Stratton*, 736 P.2d 82, 90 (Kan. Ct. App. 1987), a plaintiff such as Mr. Hopkins cannot recover statutory damages available under Article 9 of the UCC in a transaction covered by the Kansas U3C unless he can demonstrate that the value of the repossessed vehicle was greater than the amount owed by the debtor. *Id.* Because the facts in this case demonstrate just the opposite – that the Vehicle was worth far less than the amount plaintiff owed on it – Kansas Credit Union is entitled to summary judgment on this claim.

The *Topeka Datsun* case controls because it involves facts that are nearly identical to the current matter. In that case, plaintiff Topeka Datsun Motor Company ("car dealer") brought an action for a deficiency judgment against an individual who had defaulted on a new truck loan ("the debtor"). *Id.* at 84. The debtor counter-claimed, alleging that the car dealer had disposed of the collateral in a commercially unreasonable fashion, violating provisions of the Uniform Commercial Code and the Kansas U3C. *Id.* Like plaintiff in this matter, the debtor in *Topeka Datsun* claimed that the "pre-sale" notice sent to him did not contain the language required by Article 9 of the Uniform Commercial Code. The trial court entered a deficiency judgment on behalf of the car dealer for $3,083.51 and denied the debtor's counter-claims for damages and attorneys fees. *Id.* On appeal to the Kansas Court of Appeals, the debtor once again argued that the car dealer had failed to comply with the provisions of the Uniform Commercial Code that require a secured creditor such as the car dealer to send the appropriate statutory notice to the debtor before selling the repossessed vehicle.[4] *Id.* at 88–89. The Court of Appeals agreed, and

---

[4] Because the repossession in *Topeka Datsun* occurred in 1987, the statutory notice at issue was set forth in K.S.A. 84-9-504. In 1999, the Uniform Commercial Code was revised so that the statutory notice is now set forth at K.S.A. 84-9-614. *See* James J. White & Robert S. Summers,

found that the notice sent to the debtor was incorrect and misleading, and therefore was not proper notice under the Uniform Commercial Code. *Id.* at 88–89.

After ruling that the notice was improper under the Uniform Commercial Code, the Kansas Court of Appeals then addressed the appropriate scope of relief. The debtor asserted that she was entitled to both damages pursuant to K.S.A. § 84-9-507(1) (the Kansas UCC) *and* costs and attorneys fees under K.S.A. § 16a-5-201(8) – the so-called "double whammy" against a creditor. *Id.*

The Kansas Court of Appeals flatly rejected the debtor's suggestion, finding that it would be unjust to allow the debtor to receive the benefit of both statutory damages under Article 9 of the UCC *and* the remedies available under the Kansas U3C. *Id.* at 90. The Court ruled that, in these circumstances, the debtor is protected by the Kansas U3C's bar against the lender recovering a deficiency judgment: "When the disposal of consumer collateral is commercially unreasonable but even a commercially reasonable sale would have resulted in an amount still owing, the UCCC bar against a deficiency judgment secures to the debtor the full protection of the UCC default provisions." *Id.* In such cases, the Court reasoned, the bar to a deficiency will also convey a punitive message which will work toward future consumer protection. *Id.*

The Court distinguished the debtor's situation in *Topeka Datsun* from the extremely unusual situation in which a commercially reasonable disposal of the collateral would yield a sum higher than the amount still owing to the creditor. *Id.* at 90. Under those atypical circumstances, the debtor not only loses the benefit of the complete cancellation of his debt, but he also loses the surplus which could have been obtained if a proper disposal had been carried

---

Uniform Commercial Code §§ 34-1, 34-12 (5th ed. 2002) (explaining that the notice provisions that were previously contained in § 9-504 were revised and expanded by the 1999 revisions to Article 9 and are now set forth in §§ 9-611, 9-612, 9-613, 9-614, and 9-615).

out.  *Id.*  In such an abnormal case, the Court held that the debtor must be granted both the benefit of the bar to a deficiency and the statutory damages provided by the UCC in order to obtain complete relief from the injury suffered.  *Id.*  After explaining these policy issues, the Kansas Court fashioned the following bright line rule:  "We conclude that unless the commercially unreasonable conduct of the creditor causes the debtor in a consumer transaction to lose the benefit of a surplus which would have resulted from the commercially reasonable sale of the collateral, the remedy of the debtor is limited to the denial of a claim for deficiency judgment under the UCCC."  *Id.*

The *Topeka Datsun* doctrine squarely controls resolution of plaintiff's claims in Count I of the First Amended Petition.  Like the debtor in *Topeka Datsun*, plaintiff contends that he is entitled to receive statutory damages under the UCC in addition to the extinguishment of any deficiency owed to the Kansas Credit Union.  SOF ¶¶ 31-32.  However, the holding in *Topeka Datsun* makes clear that plaintiff is not entitled to obtain the statutory damages under the UCC unless he can prove that a commercially reasonable sale of the secured collateral (*i.e.,* the Vehicle) would have resulted in a sale price in excess of the amount he owed, his remedy is limited to the denial of a claim for deficiency judgment under the Kansas U3C.  *Id.* at 90.

### 3.  Plaintiff Cannot Demonstrate That The Vehicle Was Worth More Than The Amount He Owed Under the Kansas Installment Contract.

Plaintiff is not entitled to statutory damages under the UCC unless he can demonstrate that a commercially reasonable sale of the Vehicle would have generated a sale price in excess of the amount owing by him.  *Supra* at pp. 2-3.  Common sense alone indicates that plaintiff cannot meet this burden, since it is almost universally recognized that automobiles depreciate as soon as they are driven off of a dealer's car lot.  Moreover, the undisputed facts show that the 2001 Chevrolet Monte Carlo was worth less than the $15,713.00 that plaintiff owed under the Kansas

DB04/012516.0539/1391232.7 PF06

Installment Contract. SOF ¶¶ 24-30. Indeed, plaintiff does not contend otherwise. SOF ¶ 26, 30; *see* Suggestions In Support of Plaintiff's Motion For Class Certification (Court Doc. 58) at 33 ("To be clear, Plaintiff does not assert claims in this lawsuit related to the "post-sale" communications, *nor does he specifically contend that the sale of his motor vehicle at auction should have generated more proceeds.*") (emphasis added). Accordingly, plaintiff is not entitled to the windfall of statutory damages under the UCC in addition to the waiver of any deficiency balance owed on the Vehicle. *Topeka Datsun*, 736 P.2d at 90.

## III. PLAINTIFF CANNOT RECOVER UNDER COUNT II BECAUSE HE HAS NO "ASCERTAINABLE LOSS" THAT IS "AS A RESULT" OF ANY ALLEGED WRONGFUL ACTION AS REQUIRED BY THE MMPA.

The MMPA permits a civil action to recover actual damages only when a prospective plaintiff suffers "an ascertainable loss" of money "as a result of" an unfair or deceptive merchandising practice. Mo. Rev. Stat. § 407.025.1. The "as a result" language in the MMPA establishes that some sort of causation is necessary in order to have a valid cause of action under the statute. For example, in *Owen v. General Motors Corp.*, 533 F.3d 913 (8th Cir. 2008), a putative class action under the MMPA, the Eighth Circuit held that "there is no denying that causation is a necessary element of an MMPA claim" and that "the plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice." *Owen*, 533 F.3d at 922 (citing Mo. Rev. Stat. § 407.0251.1).

Even assuming that plaintiff could demonstrate that the finance charges at issue were unfair or deceptive, plaintiff's MMPA claim still requires proof of a "causal connection" between the allegedly hidden finance charges and an "ascertainable loss." In this case, plaintiff failed to make a single installment payment under his retail installment contract. SOF ¶¶ 10-11. Consequently, he is unable to demonstrate any "ascertainable loss" "as a result" of any wrongful practices that allegedly occurred. Plaintiff's failure to show this necessary element of an MMPA

claim dictates that his MMPA claim is subject to summary judgment. *Dumas v. Albers Medical, Inc.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030, at *2 (W.D. Mo. Sept. 7, 2005) (individuals are required to show some proof of injury to state an MMPA claim). Like *Dumas*, this case requires proof of injury by plaintiff. Because plaintiff never paid any of the loan charges that he alleges are improper, he can make no such claim.

The mere fact that plaintiff was billed for allegedly improper finance charges does not constitute an "ascertainable loss" under the MMPA. Plaintiff also must demonstrate that he paid such charges, and was damaged as a result. But plaintiff never paid any such charges, and suffered no "ascertainable loss" as required by the MMPA. There is no causal link between the alleged wrongful conduct at issue and plaintiff's alleged loss. In the absence of a loss incurred "as a result" of the finance charges at issue, the Kansas Credit Union is entitled to summary judgment.

## IV. PLAINTIFF CANNOT BRING A CONVERSION CLAIM BECAUSE HE HAD NO RIGHT TO POSSESS THE VEHICLE AFTER HE DEFAULTED UNDER THE TERMS OF THE KANSAS INSTALLMENT CONTRACT.

Missouri courts have recognized three different methods of establishing the elements of conversion. The Missouri Court of Appeals recently stated that conversion may be shown by establishing: "(1) a tortious taking; (2) any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the true owner's rights; or (3) by a refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper." *Mackey v. Goslee*, 244 S.W.3d 261, 263-264 (Mo. Ct. App. 2008) (quotation omitted).

Each of these three theories, however, *requires* the plaintiff to "show title to, or a right of property in, and a *right to the immediate possession of the property concerned at the alleged date of conversion*." *Bell v. Lafont Auto Sales*, 85 S.W.3d 50, 54 (Mo. Ct. App. 2002) (emphasis

23

added).  In the absence of plaintiff's right to possession of the property, summary judgment is appropriate.  *Wade v. Ford Motor Credit Co.*, 455 F. Supp. 147, 150 (E.D. Mo. 1978) (granting summary judgment on plaintiff's conversion claim where "defendant was acting in accord with its contractual right to take possession of the automobile by reason of plaintiffs' default …").

Here, plaintiff cannot prevail on a claim for conversion because he did not have a right to possession of the Vehicle at the time Centrix repossessed it.  Under the Kansas Installment Contract, plaintiff agreed to make monthly payments on the amount that he owed on the vehicle. SOF ¶ 4.  Plaintiff further agreed that he would be in default if he failed to make payments as required by the terms of the Kansas Installment Contract, and that this could lead to repossession of the Vehicle.  SOF ¶¶ 9, 13.  At the time of repossession, plaintiff was in default under the terms of the Kansas Installment Contract.  SOF ¶¶ 10-13.  The Kansas Installment Contract gave Kansas Credit Union the right to repossess the vehicle upon the Plaintiff's default.  SOF ¶ 13. Accordingly, after plaintiff's default, he had no right to possess the Vehicle.  As a result, plaintiff cannot establish a conversion claim under any of the three theories recognized under Missouri law and summary judgment is appropriate.  *Lafont Auto Sales,* 85 S.W.3d at 54 (right to possession fundamental to claim for conversion); *Ford Motor Credit Company*, 455 F. Supp. at 150 (summary judgment is appropriate when car buyer failed to make timely installment payments in violation of retail installment contract).

The facts of this case are similar to *Kennedy v. Fournie*, 898 S.W.2d 672, 678 (Mo. Ct. App. 1995).  In *Kennedy*, plaintiff entered into two loan agreements with the defendant in which plaintiff obtained a loan from defendant in exchange for granting defendant a security interest in, among other things, plaintiff's equipment and fixtures.  *Id.* at 675.  When plaintiff defaulted on its loan obligations to defendant, defendant foreclosed on plaintiff's assets, and sold these assets

at a foreclosure sale. *Id.* The property sold at the foreclosure sale included cranes and a stress-relieving furnace. *Id.* Thereafter, plaintiff brought a conversion claim against defendant based on defendant's failure to give proper notice of the sale of the cranes and the furnace. *Id.* at 678. The Court, however, rejected this argument because at the time of the alleged conversion, plaintiff had no right to possession of the cranes or the furnace, and therefore could not bring a conversion claim. *Id.* at 679.

The Missouri Court of Appeals looked to the three theories under which a plaintiff may bring a conversion claim in Missouri, and determined that the *Kennedy* plaintiff could not prevail under any of them. *Id.* Plaintiff did not satisfy the first theory because there was no tortious taking. *Id.* Rather, the court found that because the plaintiff was admittedly in default on the loan, defendant had a right to take possession of the property. *Id.* Plaintiff could not prevail under the second theory because it had no right to immediate possession of the property at the time of the alleged conversion. *Id.* The court explained that "[g]enerally a debtor has no immediate right to possession once an item has been properly repossessed by a secured creditor." *Id.* Finally, plaintiff did not meet the requirements of the third theory because there was no evidence that plaintiff had made any attempt whatsoever to redeem its property. *Id.* at 678–79. Accordingly, the court found that plaintiff failed to show that it was entitled to possession of the property, and therefore defendant was entitled to summary judgment on plaintiff's conversion claim.

The *Kennedy* court's analysis also applies here. In this case, plaintiff cannot show that he was entitled to possession of the Vehicle at the time of repossession under any of the three theories required to bring a conversion claim under Missouri law. First, plaintiff cannot establish that there was a tortious taking of the property because he was admittedly in default under the

Case 3:08-cv-05052-GAF   Document 95   Filed 09/14/09   Page 25 of 28

terms of the Kansas Installment Contract. *Id.* at 678. Second, plaintiff had no right to immediate possession of the Vehicle because he was in default under the terms of the Kansas Retail Installment Contract. *Id.* Therefore, at the time of the alleged conversion, plaintiff had no immediate right to possession of the Vehicle. *Id.* Finally, plaintiff cannot establish a conversion claim under the third theory because he made no demand for return of the property that was refused by Kansas Credit Union. SOF ¶ 22. Accordingly, the Kansas Credit Union is entitled to summary judgment on plaintiff's conversion claim. *Kennedy*, 898 S.W.2d at 678.

A. **A Defective "Pre-Sale" Notice Does Not Give Rise To A Conversion Claim.**

Plaintiff's claim that the Kansas Credit Union provided him with a defective "pre-sale" notice does not give rise to a claim for conversion under Missouri law. When a secured creditor provides defective notice of repossession, a plaintiff is allowed to pursue only his statutory remedies for the resulting commercially unreasonable sale. *Kennedy*, 898 S.W.2d at 679 (citing *Commerce Bank of St. Louis v. Dooling*, 875 S.W.2d 943, 947 (Mo. Ct. App. 1994)). However, an action for conversion is not one of the remedies under the Uniform Commercial Code when the debtor is in default. *Id.* (granting summary judgment on plaintiff's conversion claim because at the time of the alleged conversion, plaintiff was in default and had no right to possession of the property).

## CONCLUSION

Defendant Kansas Teachers Community Credit Union respectfully requests that the Court grant its motion for summary judgment.

Respectfully submitted,

STINSON MORRISON HECKER LLP


*s/ Marc D. McKay*
William E. Hanna, Mo. Bar No. 39556
Marc D. McKay, Mo. Bar No. 53216
1201 Walnut, Suite 2900
Kansas City, Missouri 64106-2150
phone: (816) 842-8600
fax:     (816) 691-3495
email:  whanna@stinson.com
email:  mmckay@stinson.com

ATTORNEYS FOR DEFENDANT
KANSAS TEACHERS COMMUNITY CREDIT
UNION

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2009, a true and correct copy of the foregoing document was filed electronically via CM/ECF in the United States District Court for the Western District of Missouri, with notice of same being electronically served by the Court, addressed to:

R. Frederick Walters
Garrett M. Hodes
WALTERS BENDER STROHBEHN & VAUGHAN, P.C.
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, MO 64196
ATTORNEYS FOR PLAINTIFF

Leslie K. Rosenfeld
Leon G. Kusnetzky, PC
9201 Ward Parkway, Suite 304
P.O. Box 8579
Kansas City, Missouri 64114
ATTORNEYS FOR UNITED CATHOLIC
CREDIT UNION ND MARATHON
CREDIT UNION

DB04/012516.0539/1391232.7 PF06

Thomas Martin
1200 Main Street, Suite 2300
Kansas City, Missouri 64105
ATTORNEYS FOR ADVANCIAL
FEDERAL CREDIT UNION

_s/Marc D. McKay_
Attorney for Defendant Kansas
Teachers Community Credit Union

DB04/012516.0539/1391232.7 PF06