## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

CECIL E. HOPKINS,

    individually, and on behalf of a Class of all
others similarly situated,

                Plaintiff,

vs.

KANSAS TEACHERS COMMUNITY
CREDIT UNION,

            Defendant

vs.

MARATHON ROTHSCHILD CREDIT
UNION, et al.,

        Third Party Defendants.

Case No. 08-5052-CV-SW-GAF

## PLAINTIFF'S REPLY TO DEFENDANT'S SUGGESTIONS IN OPPOSITION TO
## MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     REPLY TO DEFENDANT'S LEGAL AND FACTUAL BACKGROUND.....................3

        A.      The Amended Proposed Class Size .......................................................3

        B.      Plaintiff inadvertently misstated the claims certified in the *Smith* matter. ..............3

        C.      Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary
                Judgment Are Incorporated Herein.........................................................4

III.    REPLY TO DEFENDANT'S ARGUMENTS IN OPPOSITION TO CLASS
        CERTIFICATION ...........................................................................................4

        A.      Plaintiff's Proposed Class Definition is Appropriate................................4

        B.      The predominance requirement of Rule 23(b)(3) is satisfied. ................5

                1.      Defendant's Attempt to Create Individualized Choice of Law
                        Issues Lacks Factual and Legal Merit..........................................5

                        a.      Defendant's arguments apply to only 6 of 98 Class member
                                loans and thus is of little importance to this lawsuit.......................5

                        b.      Defendant Has Attempted to Create Individualized Issues
                                Based Upon Superseded Commercial Code Provisions. ................6

                                (1)     The *Uniform* Commercial Code provisions
                                        establishing Defendant's liability are the same
                                        under different states' laws. ................................6

                                (2)     Defendant's "authority" has been superseded by the
                                        current Commercial Code. ...................................7

                        c.      The Uniform Consumer Credit Code Does Not Bar the
                                Commercial Code's Statutory Penalty...........................................10

                        d.      Oklahoma Law does not apply to the 1 Class member based
                                upon the choice of law provision in the contract. ........................12

                2.      Defendant's Attempts to Create Individualized Fact or Evidentiary
                        Issues for the Class Members' Claims Lack Factual and Legal
                        Merit.......................................................................................12

a.  Defendant's attempt to create individualized fact issues as to the Commercial Code claims in turn presents predominant legal issues. ............................................................13

(1)  The pre-sale communications suffer from the same deficiencies. ......................................................13

(2)  Defendant violates the Commercial Code by sending a defective notice. ..................................17

b.  Defendant's attempt to create individualized fact issues as to the MMPA claims serves to present predominant factual and legal issues. ............................................................19

(1)  The NCUA Letters and Risk Alert Are Common Evidence Establishing Defendant's Disregard of Missouri Law and the Propriety of Punitive Damages. ...........................................................19

(2)  Common evidence establishes the Class Member's MMPA claims. ..................................................22

c.  The conversion claims are appropriate for class certification. .................................................................25

(1)  The conversion occurred in Missouri, at the time the Missouri Department of Revenue transferred ownership of the Class members' vehicles to Defendant. ..................................................26

(2)  Conversion claims may be certified for class treatment. ..........................................................28

d.  Defendant's Purported "Affirmative Defense of Offset" Presents Predominant Legal and Factual Issues ..........................29

(1)  Legal questions related to applicability of the purported defense apply to all Class members. ................29

(2)  The purported defense raises predominant factual questions. .........................................................32

C.  The superiority requirement of Rule 23(b)(3) is satisfied. ...................................33

1.  Defendant's violations of the Commercial Code are significant. ..............33

2.      Individual actions are not economically feasible.......................................35

D.      The Numerosity Requirement is Satisfied. ............................................................37

E.      The Adequacy Requirement is Satisfied..............................................................38

1.      Plaintiff's interests do not conflict with the other Class members. ...........38

2.      Plaintiff is fit to represent the Class members. .........................................39

IV.     CONCLUSION.................................................................................................................40

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ....................................................................7

*Antle v. Reynolds*, 15 S.W.3d 762 (Mo. App. W.D. 2000) ..........................................................27

*Ashcroft v. Iqbal,* 566 U.S. __, 129 S.Ct. 1937 (2009) ..............................................................31

*Bank of Bentonville v. Wacross, Inc.*, 2006 WL 2850566 (W.D. Mo. 2006) ...............................9

*Benedict v. Altria Group, Inc.*, 241 F.R.D. 668 (D. Kan. 2007) ...............................................39

*Blair v. Equifax Check Services, Inc.*, 1999 WL 116225 (N.D. Ill. 1999) ............................38, 40

*Bradford v. AGCO Corp.*, 187 F.R.D. 600 (W.D.Mo. 1999) .......................................................37

*Carnegie v. Household Intern., Inc.*, 376 F.3d 656 (7th Cir. 2004) ...........................................36

*Cessna Finance Corp. v. Design Engineering & Const. Intern., Inc.*,
   335 S.E.2d 625 (Ga.App.1985) ................................................................................................15

*Chemical Sales Co., Inc. v. Diamond Chemical Co., Inc.*, 766 F.2d 364 (8th Cir. 1985) ........31, 32

*Chicago Title Insurance v. Gresh*, 888 N.E.2d 779 (Ind. App. 2008) .........................................28

*Chisolm v. TranSouth Financial Corp.,* 194 F.R.D. 538 (E.D.Va. 2000) ...............................18, 40

*Consumer Finance Corp.* v. *Reams,* 158 S.W.3d 792 (Mo. App. W.D. 2005) ..........................31

*Copeland v. Hussmann Corp.*, 462 F.Supp.2d 1012 (E.D. Mo. 2006) .........................................30

*Dumas v. Albers Medical, Inc.*, 2005 WL 217230 (W.D. Mo. 2005) .....................................24, 25

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F.Supp.2d 210 (S.D.N.Y. 2008) .......21, 22

*ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*,
   50 P.3d 844 (Ariz. App. 2002) ...........................................................................................35, 37

*Excel Bank v. National Bank of Kansas City*, 290 S.W.3d 801 (Mo. App. W.D. 2009) ................7

*Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313 (W.D.Mo. 1997) .......................................32

*First National Bank of Louisville v. Ins. Centers, Inc.*, 560 F.Supp. 1261 (E.D. Mo. 1986) .........9

*FirstMerit Bank v. Miller*, 2009 WL 2940199 (Ohio App. Sept. 10, 2009) ..................................18

*Ford Motor Credit Co. v. Updegraff*, 218 S.W.3d 617 (Mo.App. W.D. 2007)................19, 30, 31

*Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich.2001) ............................................36

*Good v. Ameriprise Financial, Inc*., 248 F.R.D. 560 (D. Minn. 2008) ........................................28

*Hartsell v. Source Media*, 2003 WL 21245989 (N.D. Tex. 2003) ...............................................40

*Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758 (Mo. banc 2007) ..........................21

*Huch v. Charter Communications, Inc.*, 290 S.W.3d 721 (Mo. banc 2009) ................................22

*In re Agent Orange Product Liability Litig.*, 818 F.2d 145 (2nd Cir. 1987) ..........................18, 29

*In re Boehne*, 82 B.R. 525 (Bkrtcy. W.D. Mo. 1988) ....................................................................32

*In re Coastline Care, Inc.,* 299 B.R. 373 (Bkrtcy. E.D. N.C. 2003)..............................................30

*In re Cook,* 2007 WL 680170 (Bkrtcy.W.D.Mo. 2007) ....................................................................8

*In re Lehosit*, 344 B.R. 782 (Bkrtcy. N.D. W.Va. 2006) ...............................................................30

*In re Lopez*, 283 B.R. 22 (9th Cir. 2002) ......................................................................................30

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2nd Cir. 2006) ......................................16

*In re Proxima Corp. Securities Litig.*, 1994 WL 374306 (S.D. Ca. 1994) ...................................40

*In re Tetracycline Cases*, 107 F.R.D. 719 (W.D. Mo. 1985)..........................................................39

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3rd Cir. 2004) ..........................................36

*Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co., Inc,*
    2003 WL 21146714 (S.D.Fla. 2003) ......................................................................28, 29

*Jones v. NovaStar Financial, Inc*., 257 F.R.D. 181 (W.D. Mo. 2009) ...............................3, 38, 39

*Jordan v. Commonwealth Financial Systems, Inc*., 237 F.R.D. 132 (E.D. Pa. 2006) ..................17

*Fournigault v. Independence One Mortg. Corp.*, 234 F.R.D. 641 (N.D. Ill. 2006) .....................17

*Kaufmann v. Prudential Ins. Co. of America*, 2009 WL 2449872 (D. Mass. Aug. 6, 2009).........31

*Kennedy v. Fournie*, 898 S.W.2d 672 (Mo. App. E.D. 1995) ................................................27, 28

Case 3:08-cv-05052-GAF   Document 130   Filed 11/30/09   Page 6 of 52

*Klay v. Humana, Inc.,* 382 F.3d 1241 (11th Cir. 2004) ....................................................6, 31, 33

*Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321 (D. Conn. 2009) .....................................17

*Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321 (W.D.Mich. 2000) .........................34, 35

*Mancuso v. Long Beach Acceptance Corp.*,
    254 S.W.3d 88 (Mo. App. W.D. 2008).........................................2, 7, 8, 10, 14, 15, 18, 34

*McKesson Corp. v. Colman's Grant Village, Inc.*, 938 S.W.2d 631 (Mo. App. E.D. 1997) ........30

*Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397 (Mo. banc 1986)...........................27

*Murray v. GMAC Mortg. Corp.,* 483 F.Supp.2d 636 (N.D.Ill.2007) .............................................35

*Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482 (C.D. Cal. 2006) ................33

*Owen v. General Motors Corp.*, 533 F.3d 913 (8ᵗʰ Cir. 2008) .................................................22, 24

*Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*,
    213 F.R.D. 537 (W.D.Mo. 2002)........................................................................................32

*Paxton v. Union Nat'l Bank,* 688 F.2d 552 (8ᵗʰ Cir. 1982)...........................................................38

*Plubell v. Merck & Co., Inc.,* 289 S.W.3d 707 (Mo.App. W.D. 2009) ......................21, 22, 24, 25

*Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237 (Mo. banc 2001) ............................22

*Reno Financial, Ltd. v. Valleroy*, 229 S.W.3d 622 (Mo. App. E.D. 2007) ...................................30

*Roberts v. Source for Public Data*, 2009 WL 3837502 (W.D.Mo. Nov. 19, 2009) ...............35, 38

*Robinson v. Texas Automobile Dealers Association*, 387 F.3d 416 (5ᵗʰ Cir. 2004) .....................25

*Robinson v. Wal-Mart Stores*, 253 F.R.D. 396 (S.D. Miss 2008)..................................................28

*Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32 (1ˢᵗ Cir. 2003) ....................18, 29, 33

*Sollenbarger v. Mountain States Telephone & Telegraph Co.*,
    121 F.R.D. 417 (D.N.M. 1988).........................................................................................29

*Springfield-Plymouth v. Harmon*, 858 S.W.2d 240 (Mo. App. 1993)....................................17, 18

*Stallings v. Hussman Corp.*, 447 F.3d 1041 (8ᵗʰ Cir. 2006)..........................................................30

*Streeter v. Sheriff of Cook County,* 256 F.R.D. 609 (N.D.Ill. 2009)..............................................39

Case 3:08-cv-05052-GAF   Document 130   Filed 11/30/09   Page 7 of 52

*Textron Fin. Corp. v. Trailiner Corp.,* 965 S.W.2d 426 (Mo.App. S.D. 1998)............................19

*Thomas v. U.S. Bank Nat. Ass'n ND,* 575 F.3d 794 (8th Cir. 2009)................................................32

*Topeka Datsun Motor Co v. Stratton*, 736 P.2d 82 (Kan. App. 1987) ..........................................11

*Travis v. Boulevard Bank N.A.*, 880 F.Supp. 1226 (N.D.Ill. 1995) ................................................15

*Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014 (N.D. Ill. 2007) ................................................36

*Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ............................28

*Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398 (6th Cir. 1980) ..........................................2, 34

*Wolfe v. Gilmour Mfg. Co*., 143 F.3d 1122 (8th Cir. 1998)..........................................................30

## Federal Rules of Civil Procedure

Rule 8(b) ........................................................................................................................................30

Rule 8(c)........................................................................................................................................30

Rule 9(g) ........................................................................................................................................30

Rule 23 ..................................................................................................................................... *passim*

Rule 23(a)(1) ...............................................................................................................................2, 37

Rule 23(a)(3) ..................................................................................................................................17

Rule 23(a)(4) ........................................................................................................................13, 17, 40

Rule 23(b)(3)...........................................................................................1, 2, 5, 6, 13, 16, 24, 33

## Uniform Commercial Code

Uniform Commercial Code, at § 9-613 ..........................................................................................11

Uniform Commercial Code, at § 9-614 ..........................................................................................11

Uniform Commercial Code, at § 9-625(c)(2) ......................................................................11, 12, 34

## Missouri Statutes

§ 301.210.4 RSMo .......................................................................................................................9, 15

§ 301.215 RSMo ................................................................................................9, 26, 27

§ 301.600 RSMo ...................................................................................................9, 27

§ 301.620 RSMo ...................................................................................................9, 27

§ 304.155 RSMo .......................................................................................................10

§ 400.1-102 RSMo .................................................................................................6, 8

§ 400.9-101 RSMo, at Official Comment ................................................................2, 8

§ 400.9-102(a)(70) RSMo ..........................................................................................15

§ 400.9-102(a)(71) RSMo .....................................................................................15, 27

§ 400.9-102 RSMo, at Official Comment ..................................................................27

§ 400.9-105 RSMo .......................................................................................................8

§ 400.9-201(26) RSMo .........................................................................................17, 18

§ 400.9-201(26) RSMo, at Official Comment ...........................................................18

§ 400.9-210(f) RSMo .................................................................................................16

§ 400.9-303 RSMo .......................................................................................................8

§ 400.9-602 RSMo .......................................................................................................9

§ 400.9-602(7) RSMo ................................................................................................10

§ 400.9-602(13) RSMo ..............................................................................................10

§ 400.9-606(b)(1) RSMo ............................................................................................10

§ 400.9-611 RSMo .................................................................................................17, 18

§ 400.9-611, at Official Comment ..............................................................................18

§ 400.9-613 RSMo .................................................................................6, 7, 9, 14, 15, 16

§ 400.9-614 RSMo .................................................................................6, 7, 9, 14, 15, 16

§ 400.9-614 RSMo, at Official Comments ..................................................................14

§ 400.9-619 RSMo ............................................................... 9, 26, 27

§ 400.9-619 RSMo, at Official Comment ..................................9, 27

§ 400.9-625 RSMo...............................................................2, 10, 11

§ 400.9-625 RSMo, at Official Comment ...............................2, 11, 34

§ 400.9-626 RSMo...............................................................9, 30, 31

§ 407.025.1 RSMo ........................................................22, 23, 25, 37

§ 408.556 RSMo ..................................................................9, 19, 30

§ 408.557 RSMo ..................................................................9, 19, 30

## <u>Missouri Regulations</u>

15 CSR § 60-9.020..................................................................... 21

## <u>Kansas Statutes</u>

K.S.A. § 16a-1-103 ........................................................................11

K.S.A. § 16a-5-103 ...................................................................11, 31

K.S.A. § 16a-5-103, at Consumer Credit Code Comments ...............11

K.S.A. § 84-1-102 ..........................................................................7

K.S.A. § 84-9-613 ..........................................................................7

K.S.A. § 84-9-614 ..........................................................................7

K.S.A. § 84-9-625 .........................................................................11

## <u>Oklahoma Statutes</u>

12A Ok. Stat. Ann. § 1-9-625 .......................................................12

12A Ok. Stat. Ann. § 1-9-625, at Oklahoma Comments ...................12

14A Ok. Stat. Ann. § 5-103 ..........................................................12

14A Ok. Stat. Ann. § 5-103, at Oklahoma Comments ......................12

# I.     INTRODUCTION

Plaintiff has clearly satisfied his burden of proving that each of the requirements of Rule 23 is met as to his proposed class action lawsuit.  Using evidence obtained during discovery, and that is common to the Class members, Plaintiff demonstrated how he will prove each of his individual claims, and the claims of the Class Members, sufficient to make out *prima facie* claims for him and the Class. This common evidence consists of the various agreements and records that Defendant entered into in connection with the Portfolio Management Program ("PMP"), and which govern all aspects of the operation of the PMP, as well as the standard form records of the Class Members, which not only include the pre-sale communications and *Retail Installment Contracts and Security Agreements* for the Class Members, but also Defendant's business records for each of the loans.  *See generally* **Exhibits 1-47.**

Defendant's opposition brief sets forth four primary arguments in opposition to class certification. As explained in detail in the following *Reply*, and summarized below, these arguments are unpersuasive and fail to demonstrate that class certification is inappropriate.

First, Defendant contends that the "predominance" requirement of Rule 23(b)(3) is not satisfied due to supposed "choice of law" issues and individualized factual determinations related to the Class members' claims and its affirmative defenses. These arguments are factually meritless (1) because they apply to only **6** loans[1] and (2) when the "common evidence" applicable to all Class members' claims is analyzed. The arguments are also legally meritless[2]

---

[1] For example, Defendant argues at length about supposed "choice of law" issues governing the Class members' Commercial Code claims, but fails to cite with specificity the number of Class members its argument factually applies to.  In fact, that number is 6 loans, and only three other states' law (Kansas, Arkansas and Oklahoma) are potentially at issue. And, under the current, governing version of the Commercial Code, Defendant's liability and the Class members' damages are the same even if those other states' laws apply to those 6 Class members' claims.

[2] For example, while Defendant makes much ado about Plaintiff's statutory damages claim if Kansas' Uniform Consumer Credit Code applies to his claim, or whether the Class member "received" its defective pre-sale communications, those legal issues are squarely resolved in favor of Plaintiff and the predominance requirement under the current version of the Uniform Commercial Code and governing case law that are ignored by Defendant.

based upon the controlling law of Missouri and the current Commercial Code. In turn, Defendant's arguments demonstrate the propriety of class certification.[3] Indeed, nearly all of Defendant's arguments are premised on cases construing provisions of the **1972** Commercial Code, when those very provisions were substantially revised in **2001** to create a different result and to legislatively overrule such cases. *See generally, e.g.,* § 400.9-101 RSMo, at Official Comment. The predominance requirement is clearly satisfied in this lawsuit.

Second, Defendant asserts that a class action is not superior to other alternatives contending on one-hand, that its violations of Missouri law are "hyper-technical" or insignificant, and, on the other hand, that the Class members' individual damages claims are significant enough to warrant individual litigation. The mere assertion of these duplicitous arguments disproves them. The arguments are also contradicted by Missouri law and rejected by cases that address them. Defendant's arguments are speculative and premised on distinguishable cases.[4] The "superiority" requirement of Rule 23(b)(3) is clearly satisfied in this lawsuit.

Third, Defendant argues that the "numerosity" requirement of Rule 23(a)(1) is not satisfied because Plaintiff can only represent 27 Class members. This argument ignores Plaintiff's legal theories as to the Class members' Commercial Code claims, which are applicable to all 98 loans,[5] and also ignores Plaintiff's other claims, to which Defendant makes

---

[3] For example, Defendant argues that, in order to recover on their MMPA claims, the Class members must individually establish that its unlawful practices caused them to purchase their vehicles through the PMP and caused their monetary loss. This argument misstates Missouri law. And, the argument is factually deficient because each of the Class members suffered monetary and property losses in connection with Defendant's unlawful practices.

[4] For example, Defendant suggests that its Commercial Code violations are "hyper-technical," yet ignores the on-point decision in *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88 (Mo.App.W.D. 2008), § 400.9-625(c)(2) RSMo and its Official Comment, which expressly reject such an argument. Even the primary case Defendant relies upon, *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398 (6th Cir. 1980), rejects its argument.

[5] As explained below, since Plaintiffs' *Motion* was filed, Defendant identified **8** additional loans which it believed were within the proposed Class definition. Only **7** of those loans were actually within the Class definition. Of the 112 total loans that Defendant has identified, only **98** are Class loans within the proposed Class definition.

no numerosity argument and that also involve 98 Class member loans. Moreover, the argument is legally wrong to the extent it asserts that 27 loans fail to satisfy the numerosity requirement.

Finally, Defendant argues that Plaintiff not adequate to represent the Class members due to supposed conflicts between him and the Class members, and due to a past criminal history. This argument is desperate, legally flawed, and was most recently rejected by this Court in *Jones v. NovaStar Financial, Inc*., 257 F.R.D. 181 (W.D.Mo. 2009). Defendant ignores *Jones* and applicable case law in its effort to malign the proposed class representative.

Altogether, Defendant's *Suggestions* do not demonstrate that this lawsuit is not appropriate for class action treatment. Instead, when all of the arguments and evidence are considered, Plaintiff suggests that they overwhelmingly support class certification.

## II. REPLY TO DEFENDANT'S LEGAL AND FACTUAL BACKGROUND

### A. The Amended Proposed Class Size

Plaintiff has reduced the proposed Class size from **104** loans to **98** loans (and **140** individual members).  This reduction is due to the following:

First, Plaintiff has re-reviewed the records for the 104 loans previously identified as in Class and identified **13** where the buyer of the vehicle was not a Missouri resident at the time of purchase or when the vehicle was repossessed. Those loans do not fall within the proposed Class definition because Defendant did not have a *Missouri* security interest in the vehicle. *See* **Ex. 53** at ¶¶ 3-10. Second, on October 27, 2009, Defendant produced to Plaintiffs supplemental discovery responses that identified **8** additional loans that appeared to be within the proposed Class definition. Of those loans, **7** were actually within the Class Definition.  *See id.*

### B. Plaintiff inadvertently misstated the claims certified in the *Smith* matter.

3

Defendant correctly identified Plaintiff's error in the description of the claims certified for class treatment in the *April Smith* matter. No MMPA claim was alleged in that matter. Plaintiff and his undersigned counsel apologize to the Court and parties for this misstatement.

**C.** **Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment Are Incorporated Herein.**

In reply to Defendant's assertions of fact, and for purposes of this *Reply*, Plaintiff incorporates herein, as though they were set forth fully below, his *Statement of Additional Facts* in his *Suggestions in Opposition to Defendant's Motion for Summary Judgment*.

**III. REPLY TO DEFENDANT'S ARGUMENTS IN OPPOSITION TO CLASS CERTIFICATION**

**A. Plaintiff's Proposed Class Definition is Appropriate.**

Defendant briefly asserts at p.11, n.2 that the proposed class definition is deficient because it eliminates a requirement that the Class member purchased the vehicle for "personal, family or household" purposes. Defendant does not assert that the definition, which is premised on Defendant's Missouri security interest in the vehicles, is insufficient for any other reason. Nor does Defendant even contend that any Class member, including the Plaintiff, purchased their vehicle for any other purpose. *See* Def's *Motion for Summary Judgment*, Fact No. 3.

Defendant wholly misunderstands the reasoning behind the proposed Class definition. Plaintiff removed that requirement, as set forth in the original definition, because the "common evidence" obtained during discovery, primarily the credit and dealer guidelines governing the underwriting of the loans, and the default insurance policies, *see* **Ex. 2-4, 48-52,** revealed that **no** aspect of the PMP allowed or contemplated the Class Member's use of their vehicles for any purpose, except for "consumer" purposes.[6] As such, this element was conclusively proved as to

---

[6] The PMP was designed to provide subprime financing to "individuals with impaired credit." *See Plaintiff's Sugg.*, at **Ex. 2-3, 9.** The "Dealer Guidelines," which governed the terms of the vehicle sales, specifically excluded

all Class members by the fact that the vehicle was originated and financed through the PMP and superfluous to class membership. This common evidence underlies the Class members' claims and Defendant *ignores and avoids* it throughout the *entirety* of its briefing.

**B.    The predominance requirement of Rule 23(b)(3) is satisfied.**

**1.    Defendant's Attempt to Create Individualized Choice of Law Issues Lacks Factual and Legal Merit.**

Defendant's first, and primary, argument in opposition to certification attempts to convince the Court that there are numerous "choice of law" questions which must be resolved as to each Class Member thereby creating individual questions with respect to each Class Members' claim which overwhelm the common questions of fact and law. For the reasons set forth below, the argument is both factually deficient and legally insufficient from its inception.

**a.    Defendant's arguments apply to only _6_ of 98 Class member loans and thus is of little importance to this lawsuit.**

First, Defendant's argument is factually insufficient and of little importance to the certification analysis because it applies to only **_6_** of the 98 loans in the Class definition.  If Defendant's choice of law argument is accepted by the Court, at issue is the potential application of three other states' laws, none of which mandate a result different than if Missouri law applies.[7] Thus, even if Defendant's choice of law arguments were legally correct, the consequence is of little impact to the lawsuit. As a "quantitative" matter, these issues do not overwhelm the common issues of fact and law, or threaten to become the focus of the class action. Although

_____

"vehicles for commercial use." *See* **Ex. 4.**  The "Credit Guidelines" for the PMP loans made by Defendant expressly stated that "Vehicles that are to be used for commercial purposes are not allowed."  *See* **Ex. 2-3, 48.**  Thus, the vehicles sold to the Class Members and financed by Defendant in connection with the PMP were "consumer" in nature.  Moreover, the default insurance policies that Defendant obtained through the PMP expressly excluded from coverage any vehicles "used in commercial activities."  *See* **Ex. 50-51.** Thus, this integral aspect of the PMP was entirely dependent upon the use of the vehicles by the Class Members for consumer purposes.

[7] Of these 6 Class members, there are 2, including Plaintiff, for which Defendant contends Kansas law applies to their Commercial Code and conversion claims, 3 Class members that Defendant contends Arkansas law applies to those claims, and 1 Class member that Defendant contends Oklahoma law applies to those claims.  **Ex. 53**, at ¶¶ 7-10, Def.'s Exhibits OO-QQ.

5

Defendant spends an inordinate amount of its brief presenting arguments premised on supposed choice of law issues, it has done so only to manufacture an aura of importance to the argument.

Defendant must do more than simply offer conjecture concerning the factual application of its arguments to the putative class members in order to rebut Plaintiff's arguments, founded in fact, and based on governing law and common evidence, concerning the application of Missouri law to the Class members' claims. Although Defendant's argument is easily disproved, Plaintiff should not be required to disprove every speculative argument put forth by Defendant simply because it chose to assert them. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1272-73 (11th Cir. 2004)(noting reluctance of courts to deny certification based upon "speculative" arguments). Defendant has an obligation to prove its own defenses to class certification. Here, Defendant has failed to apply its argument to the putative Class or to set any forth factual information concerning the number of Class members to which its argument is intended to apply.

Defendant's "choice of law" argument fails to serve as a barrier to class certification.

> **b. Defendant Has Attempted to Create Individualized Issues Based Upon Superseded Commercial Code Provisions.**

Moreover, although Defendant's "choice of law" argument is designed to argue against the predominance requirement of Rule 23(b)(3), the argument actually presents predominant issues of law as to all Class members. Hence, as a "qualitative" matter, and as explained below, the "choice of law" argument fails to undermine predominance.

> **(1) The *Uniform* Commercial Code provisions establishing Defendant's liability are the same under different states' laws.**

First, the provisions of the **_Uniform_** Commercial Code at §§ 400.9-613 and 400.9-614 that Defendant violated are, by their design, the **_same_** under Missouri law as they are under other states' versions of the same **_Uniform_** Commercial Code. *See* and *compare, e.g.*, §§ 400.1-102,

400.9-613 and 400.9-614 RSMo with K.S.A. §§ 84-1-102, 84-9-613 and 84-9-614. Because there is no factual dispute concerning the content of the communications, Plaintiff's Commercial Code claims, which allege that the communications are legally insufficient, may be addressed as a matter of law. *See Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 90 (Mo. App. W.D. 2008). Thus, the paramount question of Defendant's *liability*, as opposed to the calculation of each Class members' *damages*, is a question of law that is the same under Kansas, Arkansas or Oklahoma law, the only states' laws Defendant argues are at issue with respect to the 6 Class member loans. The Uniform Commercial Code's underlying purposes and policies – to "simplify, clarify and modernize the law" and to "make uniform the law among the various jurisdictions" – ensure that the predominance requirement is satisfied in this class action, that the proposed Class is "cohesive," and that its members share coextensive interests in proving Defendant's liability under identical provisions of the Commercial Code so as "to warrant adjudication by representation." *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).

### (2)    Defendant's "authority" has been superseded by the current Commercial Code.

Next, Defendant's "choice of law" argument is legally meritless. Specifically, there are two critical deficiencies that underlie Defendant's "lack of predominance" arguments premised upon supposed "choice of law issues" under the Commercial Code.

First, Defendant has relied almost exclusively upon cases construing provisions of the 1972 version of the Commercial Code instead of the current, 2001 version of the Commercial Code. *See Def.'s Sugg*. at p.25-26; *Excel Bank v. National Bank of Kansas City*, 290 S.W.3d 801, 804 (Mo.App.W.D. 2009)("The UCC was substantially revised effective July 1, 2001."). The 1972 and 2001 versions of the Commercial Code differ in a number critical respects which are dispositive of Defendant's arguments.

7

Importantly, the 2001 revisions to Article 9 were among the most material, which prevents Defendant from relying upon cases construing the "old" Commercial Code without first analyzing whether those cases are in fact still viable under the provisions of the revised or "new" Commercial Code. *See Mancuso*, 254 S.W.3d at 95 n.5 ("In July 2001, a comprehensive revision of Article 9 went into effect."); § 400.9-101, at Official Comments. And, of course, with respect to the purposes in which the cases are offered, the cases are either distinguishable or simply not still viable. Throughout its briefing, Defendant has failed to cite to recent Missouri cases construing the 2001 Commercial Code because those cases undermine its arguments.

Second, Defendant's arguments (and its rare citation to a post-2001 case) completely fail to recognize the critical distinctions set forth in Article 9 between different types of security interests, and the special rules created in the 2001 Commercial Code for goods covered by certificates of title. *See generally* § 400.9-101, at Official Comments, at ¶c (noting special choice of law rules for goods covered by certificates of title); § 400.9-303 RSMo (choice of law rules for goods covered by certificates of title). It is because motor vehicles move across state lines and are subject to state certificate of title statutes that the Commercial Code creates ***special rules*** that make the law of the state issuing the certificate of title that which governs issues arising under Part 6 of Article 9 of the Commercial Code. These rules simplify and make uniform the law, as intended by the Commercial Code. *See* § 400.1-102(2) RSMo. Defendant's rights as a secured party under the UCC's choice-of-law rules, as well as the Class Members' rights as debtors, are governed by the state which issued the certificate of title for the vehicles. *See* §§ 400.9-105 and 400.9-303 RSMo; *see also In re Cook,* 2007 WL 680170, at *4 (Bkrtcy.W.D.Mo.

Case 3:08-cv-05052-GAF   Document 130   Filed 11/30/09   Page 18 of 52

2007); §301.210.4 RSMo.[8] The Commercial Code also negates contractual choice of law provisions that purport to alter or waive the Class Members' rights. *See* § 400.9-602 RSMo.

Because of Defendant's ***Missouri*** security interest as reflected on each of the Class members' certificates of title, it is simply unreasonable to suggest that some other state's laws apply to the Class members' claims. First, pursuant to the provisions of Missouri law, Defendant perfected its security interest in each of the Class Members' vehicles by filing its *Notice of Lien* with the Missouri Department of Revenue. *See, e.g.,* §§ 301.600, 301.620 RSMo. Second, after it repossessed the motor vehicles, Defendant was required to obtain legal title to the vehicle, again pursuant to the provisions of Missouri law, at § 301.215, in order to enforce its security interest and sell the vehicle at auction. *See* §§ 301.210 and 301.215 RSMo. Third, the Commercial Code incorporates state "certificate of title" statutes concerning the transfer of title, *see, e.g.*, § 301.215 RSMo, so as to obligate compliance with those statutes in order to dispose of the collateral. *See* § 400.9-619(c) RSMo and Official Comment at ¶2. Fourth, in order to obtain legal title, Defendant was obligated to comply with those statutes, which required it to represent "under penalty of perjury" to the Department of Revenue that it sent the notices required by §§ 400.9-613 or 400.9-614 RSMo. *See* § 301.215 RSMo. Fifth, in order to assert a deficiency claim against the Class members, Defendant must allege its compliance with §§ 400.9-601 to 400.9-629 with respect to the Class members' loans. *See* § 408.556 and 408.557 RSMo; *see also* § 400.9-626 RSMo.

Notwithstanding all of the above, Defendant alternatively asserts that contractual choice of law agreements and/or the law of the state where the motor vehicle was repossessed should

---

[8] Indeed, it is disappointing that Defendant criticizes Plaintiff at page 24-25 of its *Suggestions* for failing to address two cases involving a Commercial Code choice of law issue (*Bank of Bentonville v. Wacross, Inc*., 2006 WL 2850566 (W.D. Mo. 2006) and *First National Bank of Louisville v. Ins. Centers, Inc*., 560 F.Supp. 1261 (E.D. Mo. 1986)), when neither of those cases address secured interests in motor vehicles subject to a lien noted on a certificate of title under the current version of the Commercial Code.

9

govern the Commercial Code claims. Yet, Defendant has, again, offered no factual support for these arguments to suggest that an appreciable number of contracts in fact contained a choice of law provision or that their vehicles were repossessed outside of Missouri. To the contrary, Defendant's records for the 112 loans identify only Missouri addressees for the Class members at the time of repossession. *See* **Ex. 36.**[9]

Part 6 of Article 9 of the Commercial Code governs Defendant's rights as a secured party and the Class Members' claims as debtors, despite Defendant's efforts to distance itself from its perfected security interest in the Class members' motor vehicles to avoid the claims under § 400.9-625 RSMo. *See Mancuso*, 254 S.W.3d at 91; § 400.9-602(7) and (13) RSMo. It is impossible to reconcile Defendant's "choice of law" arguments with the governing provisions of the Commercial Code and Missouri law. Simply stated, there are no "choice-of-law" questions with respect to the Class Members' claims because, as a matter of law, Missouri law applies to their claims. Defendant's arguments to the contrary ignore governing authorities and are premised upon speculation and citations to dated state cases applying long-superseded versions of the Commercial Code. Defendant's arguments fail as a result of its *Missouri* security interest.

> c.     **The Uniform Consumer Credit Code Does Not Bar the Commercial Code's Statutory Penalty.**

Defendant also contends that the Uniform Consumer Credit Code ("UCCC") applies to "some" of the Class members' claims and, as such, there are individualized legal issues which undermine a finding or predominance. This argument fails both as a matter of fact and law.

---

[9] Although Defendant offers no support to suggest the Class members' vehicles were repossessed outside of Missouri, Plaintiff does not dispute that the law of the state where the vehicle was repossessed may govern certain aspects of the repossession, such as the requirement that the lienholder notify local law enforcement agencies of repossession, *see, e.g.*, § 304.155, or the means by which a secured party may seek to repossess a motor vehicle pursuant to judicial process (*i.e.*, not a "self help" repossession, as occurred under the PMP), *e.g.*, § 400.9-606(b)(1).

Again, as a "quantitative" or "factual" matter, the UCCC, if it applies, only applies to only two or three Class loans, so it is of little importance to the lawsuit.

As a "qualitative" or "legal" issue, the UCCC argument actually presents predominant legal issues as to the entirety of the Class. Notably, Defendant's argument raises common questions concerning the interpretation and application of the ***mandatory*** penalty provisions of § 9-625 under the 2001 Commercial Code. Moreover, Defendant's reliance on the UCCC to create individualized legal issues or a defense to the Plaintiff's claim for statutory damages under the Uniform Commercial Code is unwarranted.

First, even if the Kansas UCCC applies to a few Class member's claims, the pre-sale communications are still reviewed, and Defendant's liability is adjudged, with reference to the ***same*** provisions of Uniform Commercial Code, at §§ 9-613 and 9-614, under either Missouri's or Kansas' enactments. Second, as Plaintiff explains in his response to *Defendant's Motion for Summary Judgment*, incorporated herein for the purpose of this argument, even if the UCCC applies to a few Class members' claims, their claim for statutory damages under § 9-625(c)(2) is absolutely appropriate, and certainly ***not*** precluded, under the provisions of the Kansas UCCC. *See* K.S.A. §§ 16a-1-103 and 16a-5-103, and Consumer Credit Code Comments to § 16a-5-103, at ¶1, K.S.A. § 84-9-625 and § 400.9-625 RSMo and Official Comment to § 9-625.[10] As such, the result is the ***same*** under Missouri law as it is under an application of Kansas law – Defendant is barred from seeking a deficiency judgment ***and*** is liable for the statutory penalty under Commercial Code § 9-625. Altogether, Defendant's argument supports certification.

---

[10] As Plaintiff explains in response to the *Motion for Summary Judgment*, Defendant's reliance on the Kansas Court of Appeals' 1987 decision in *Topeka Datsun Motor Co v. Stratton*, 736 P.2d 82 (Kan. App. 1987) is unwarranted given the 2001 amendments to the Commercial Code which not only legislatively overrule the decision but also reveal its flawed reasoning. The *Topeka Datsun* decision is plainly flawed because the Kansas Court of Appeals expressly found that there was "no conflict" between the UCCC and the Commercial Code but then failed to address or ignored, § 16a-1-103, the Official Comment to § 16a-5-103, the express language of former § 9-507 and its Official Comment, all of which ***mandated*** a result opposite than the result the one the Kansas court reached.

####   d.   Oklahoma Law does not apply to the 1 Class member based upon the choice of law provision in the contract.

Defendant's "choice of law" affects a *single* Class member to the extent it argues that Oklahoma law applies to her Commercial Code claim because she purchased her auto in Oklahoma. And, as to that Class member, the Retail Installment Contract's "choice of law" provision expressly selects Missouri law to apply to the her Commercial Code claim. It states:

> *This Agreement shall be construed and enforced in accordance with the laws of the State of Oklahoma, except to the extent that the UCC provides for application of the law where the debtor or the collateral is located (if other than Oklahoma) as the case may be.*

*See* Def.'s Ex. PP, at KSTCU001121. Thus, the choice of law provision incorporates the Commercial Code into its provisions. Under its choice of law rules and the contract, Oklahoma law is *not* even at issue in this lawsuit.[11] Defendant's "Oklahoma law" argument is unsupported.

####   2.   Defendant's Attempts to Create Individualized Fact or Evidentiary Issues for the Class Members' Claims Lack Factual and Legal Merit.

Defendant's second primary argument concerning the predominance requirement asserts that class certification is inappropriate because of supposed individualized fact or evidentiary

---

[11] Additionally, it does not appear that the Oklahoma appellate courts have even construed its current version of § 9-625 such that Defendant can argue that Oklahoma law mandates a specific result. In fact, the "Oklahoma Comments" to Oklahoma Commercial Code § 9-625, 12A Ok. Stat. Ann. § 1-9-625, suggest that while Oklahoma law does not adopt the absolute bar rule for deficiency judgments like Missouri law does, the debtor will be entitled to *both* the statutory penalty of § 9-625, and the deficiency bar of the Oklahoma UCCC, 14A Ok. Stat. Ann. § 5-103, *if* the Oklahoma UCCC applies to the consumer's loan. The Oklahoma comments state:

> Thus in Oklahoma, the consumer debtor has a possible conversion recovery and the court could adopt a rebuttable presumption approach as well (if it thought that was needed, considering also the statutory damage rule for when the collateral is consumer goods retained in section 9-625(c)(2) and the anti-deficiency rule for certain consumer credit transactions in 14A Okla. Stat. section 5-103). 12A Okl.St.Ann. § 1-9-625, Oklahoma Comment at ¶ 1.

Consequently, *if* Oklahoma law applies to the one Class member's claim, then the consequence would be precisely the same as if Kansas law applies to the two other Class members' claims. That result is the combined application of the statutory penalty of the Commercial Code and the deficiency bar of the UCCC to apply together to those claims to create a result consistent with Missouri law.

issues between the Plaintiff and the Class members, and the Class members amongst themselves. As explained below, none of these arguments has merit as a matter of fact or law.

> **a.** **Defendant's attempt to create individualized fact issues as to the Commercial Code claims in turn presents predominant legal issues.**

As it relates to the Commercial Code claims, Defendant's first argument asserts that Defendant sent three different pre-sale communications to the Class members and thus certification is inappropriate because the determination of liability as to the version of the communication sent to Plaintiff and 26 other Class members – which Defendant concedes in its *Motion for Leave to File First Amended Answer* at, *e.g.*, p.2 and 7-8, fails to comply with the Commercial Code – will not resolve Defendant's liability as to other versions of the communications. Thus, Defendant concludes, Plaintiff cannot represent those Class Members who received letters different than his because the Commercial Code claims present individual "questions of fact."[12] Defendant also asserts that those Class members will have to present individualized proof as to whether they "received" the communication at issue in order to establish their claims. Defendant's arguments are incorrect.

> **(1)** **The pre-sale communications suffer from the same deficiencies.**

First, to the extent that Defendant suggests that its communications present individualized "questions of fact," that assertion lacks both factual and legal merit.

By its own admission, Defendant failed to supervise Centrix or to review the pre-sale communications sent to the Class members. *See, e.g.*, **Ex. 54** at 68:11-68:22 ("Q. Did the Credit Union review those notices before they were sent? A. No."). As Plaintiff explained in his *Motion*, Centrix, as Defendant's agent, created different versions of pre-sale communications

---

[12] Defendant also raises this same argument to contest the adequacy requirements of Rule 23(a)(4). Plaintiff's *Reply* is equally applicable to the arguments as to both Rule 23(a)4) and (b)(3).

used in the PMP at issue here as a result of the allegations in the *April Smith* lawsuit. *See Plaintiff's Sugg.*, at p.20-21. Centrix later attempted to settle any potential claims against it and the secured parties, including Defendant, resulting from those communications through a "misleading" letter and $100 check to a number of Class members. *Id.* and **Ex. 39-40.**

Defendant cites to § 400.9-613(2) in an effort to argue that the liability question is a "question of fact." Defendant's argument is incorrect because of the Commercial Code's special rules for consumers under Article 9. It is actually § 400.9-614 which precisely governs the Class members' claims because it is that section that sets forth the special rules for consumer debtors, and § 400.9-614(1)(A) incorporates § 400.9-613(1) into its provisions. The Official Comments to § 400.9-614 state:

> ***A notification that lacks any of the information set forth in paragraph (1) is insufficient as a <u>matter of law</u>***. Compare Section 9-613(2), under which the trier of fact may find a notification to be sufficient even if it lacks some information listed in paragraph (1) of that section.

§ 400.9-614 RSMo, Official Comment at ¶ 1 (emphasis added).

Thus, contrary, to Defendant's arguments, the sufficiency of the notice sent to consumers is determined as a "matter of law," especially when, as here, the contents of the notice are not disputed. *Mancuso*, 254 S.W.3d at 90. Under Missouri law, a "creditor is held to the requirement of strict compliance with these notice provisions" and "[a]ny doubt about what constitutes strict compliance is resolved in the debtor's favor." *Id.* at 92. Defendant has ignored *Mancuso*.

Next, the fact that the letters may be different in some respects does not, however, mean that class certification is inappropriate. The more appropriate inquiry concerns the respects in which the letters are similar and present the same factual and legal questions as to other Class members. Those similarities without doubt make class certification appropriate.

Although each of the letters has a number of deficiencies, there are common deficiencies that run throughout each of the letters. First, Plaintiff alleges that the letters are ***all*** defective because they were not sent by, and do not properly identify Defendant as the secured party and lienholder with respect to the Class Members' vehicles. *See* §§ 400.9-613(1)(A) and 600.9-614(1)(A); **Ex. 54** at 68:11-68:22; 132:9-132:13. Instead, the letters were sent by Centrix, and they do not properly identify the secured party as Kansas Teachers Community Credit Union. The letters instead misrepresent Centrix as the lienholder, and the Kansas Teachers Community Credit Union as an *additional debtor or secondary obligor*. *See* §§ 400.9-613(1)(A), 400.9-614(1)(A); §301.210. Centrix is not the lienholder under Missouri law, has no right to obtain ownership of the vehicle under Missouri's certificate of title statutes, and no right to seek a deficiency judgment from the Class Members. And, Defendant is clearly ***not*** a debtor or secondary obligor and does not have such rights under the Commercial Code or Chapter 301 and 408 of Missouri's statutes. *See, e.g.,* §400.9-102(a)(70),(71); §400-9-618.

Second, each of the letters improperly includes, and misstates, the amount necessary to be paid to the secured party to redeem the collateral. *See* § 400.9-614(1)(C); *Mancuso*, 254 S.W.3d at 95 (citing cases: "courts have found that notice may be 'not reasonable' if it misstates the amount owed or requires things of the debtor that are not actually owed"); *see also Travis v. Boulevard Bank N.A.*, 880 F.Supp. 1226, 1234 (N.D.Ill. 1995)(improper to include balance owed on notice because it is not required by Commercial Code); *Cessna Finance Corp. v. Design Engineering & Const. Intern., Inc.*, 335 S.E.2d 625, 627 (Ga.App.1985)("it is reasonable to conclude that the statement of the amount due prevented DECI from taking steps to insure there remained no deficiency").

Third, the letters fail to inform the debtor of the charge for an accounting, if any. *See* §§ 400.9-613(1)(D), 400.9-614(1)(A) RSMo. This latter requirement is necessary because the Commercial Code, at § 400.9-210(f) RSMo, governs charges for accountings.

Altogether, Defendant has not *strictly complied* with the requirements of the Commercial Code and, as such each of the communications violates the Commercial Code for one or more of the same reasons. *See* § 400.9-614(1)(C). Thus, the Court may determine, at an appropriate time, and in an appropriate procedural context, Defendant's liability for sending those communications. And, although the Court is not empowered at the class certification stage to determine whose position is correct, it bears mentioning that Defendant's argument absolutely demonstrates that the Class Members' claim is easily resolved by a straightforward review of the pre-sale communications, thus satisfying Rule 23(b)(3)'s predominance requirement. The fact that Defendant is willing to concede that its communication to Plaintiff and 26 other Class members is defective, does not somehow remove that communication from the predominance analysis or serve as a basis to raise "conflict of interest" arguments. *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 228-29 (2nd Cir. 2006)("if defendants may utilize their concession to defeat class certification, it would work the perverse result of allowing them to escape the cost of their unconstitutional behavior precisely because their liability is too plain to be denied. No other court has sanctioned such a result; nor shall we"). It does, however, provide a basis for Plaintiff to move for summary judgment on all Class claims after certification.

And, with respect to the "other reasons" that the other communications are defective,[13] it is important to remember for purposes of class certification that the Court will be applying the

---

[13] As to Defendant's "Version 2 and 3" communications, Plaintiff suggests that the communications are deficient because they do not follow the safe-harbor format of §§ 400.9-613 and 400.9-614 RSMo and, in turn, because they fail to comply with and contain the content required by the provisions of §§ 400.9-613 and 400.9-614 RSMo. *See Plaintiff's Sugg.*, at **Ex. 38** at Interrogatory Nos.18-19; *see also* **Ex. 1** at ¶ 50.

16

same analysis and the same statutory provisions and legal principles to the communications. Defendant's liability, as well as the calculation of the Class Members' damages is the same regardless of whether the communications are defective for one reason, multiple reasons, or any particular reason. Hence, the predominance requirement of Rule 23(b)(3) is satisfied even if the letters contain some differences.[14] So too are the typicality and adequacy requirements of Rule 23(a)(3) and 23(a)(4) since the "strict compliance" standard ensures that the Class Members' interests in identifying one or more defects in the communications are convergent.

### (2) Defendant violates the Commercial Code by sending a defective notice.

Defendant's next argument asserts, based upon the Missouri Court of Appeals' 1993 decision in *Springfield Chrysler-Plymouth v. Harmon*, 858 S.W.2d 240 (Mo.App.S.D. 1993), that certification is inappropriate because each of the Class members will have to prove that they "received" Defendant's communications in order to establish their claim under the Commercial Code. Defendant's argument is legally incorrect. Plaintiff's argument is more fully developed in his response to *Defendant's Motion for Summary Judgment*, incorporated herein for that purpose

For purposes of the class certification analysis, Defendant's argument presents predominant issues of law concerning the interpretation of §§ 400.9-201(26) and 400.9-611 and

---

[14] *See Lemire v. Wolpoff & Abramson*, LLP, 256 F.R.D. 321, 330 (D. Conn. 2009)(predominance satisfied despite difference in communications subject to FDCPA claim where they "share one common element of potential liability"); *Jordan v. Commonwealth Financial Systems, Inc.*, 237 F.R.D. 132, 139 (E.D. Pa. 2006)(predominance standard is satisfied "where the core claims asserted by each Class member all arise out of the same transaction or occurrence-the receipt of debt collection letter(s) from the Defendants," regardless of "minor factual distinctions between each particular letter"); *Fournigault v. Independence One Mortg. Corp.*, 234 F.R.D. 641, 647 (N.D. Ill. 2006)("Individual issues about differing contract language also will not predominate. As Plaintiffs note, there are only three separate types of contract provisions at issue in this case, and it is easy to determine which kind of contract each class member used based on the date.").

Defendant's defense, which must be resolved first, as to all Class members, before it can be determined that the defense presents "individual issues."[15]

The Commercial Code's "notification" provision does not require Class members to prove "receipt." *See* § 400.9-611, and Official Comment to §9-611 at ¶2. In fact, the 2001 Commercial Code contains revisions to its "General Definitions" which make clear that the holding of the 1993 *Springfield Chrysler-Plymouth* decision, which required proof of "receipt" of the notice, is simply ***not*** the law. *See* §400.9-201(26) and Official Comment to §400.9-201(26) at ¶26; *see also FirstMerit Bank v. Miller*, 2009 WL 2940199, at *2-3 (Ohio App. Sept. 10, 2009)("we hold that appellee was not required to prove appellant's actual receipt of the notice…"). The Commercial Code does ***not*** require the debtor to prove that a defective notice, or his failure to receive the notice, caused him any injury. *See Mancuso*, 254 S.W.3d at 92; *see also Chisolm v. TranSouth Financial Corp.,* 194 F.R.D. 538, 568 n.40 (E.D.Va. 2000)("Courts uniformly afford creditors the benefit of a presumption of receipt once a conforming notice is sent when creditors seek deficiency judgments.… Presently, the Court discerns no principled reason why this presumption should only operate in the favor of the creditor. Thus, the Court disagrees with Defendant's repeated statements that consumers will have to demonstrate receipt of the notice."). The Commercial Code only requires the Class members to prove that the secured party "***sent***" the notice. That fact is not disputed in this lawsuit.

Moreover, as explained in detail in response to Defendant's *Motion for Leave to File First Amended Answer*, the Commercial Code places the burden of compliance with Part 6 of Article 9 on the secured party, especially if it is seeking to obtain a deficiency from the debtor.

---

[15] As Plaintiff explained in his *Motion for Class Certification,* whether or not certain alleged affirmative defenses apply in this case are common question which predominate as to all class members. *See Smilow v. Southwestern Bell Mobile Sys., Inc*., 323 F.3d 32, 39 (1st Cir. 2003); *In re Agent Orange Product Liability Litig.,* 818 F.2d 145, 166-67 (2nd Cir. 1987).

*See Ford Motor Credit Co. v. Updegraff*, 218 S.W.3d 617, 622-23 (Mo.App.W.D. 2007); *Textron Fin. Corp. v. Trailiner Corp.,* 965 S.W.2d 426, 427 (Mo.App.S.D. 1998); §§ 408.556 and 408.557 RSMo. Consequently, if "receipt" of the notice were a requirement under the Commercial Code, then Defendant's argument merely places the burden of proving that the debtor received the notice on it as the secured party.

Defendant's argument has identified another predominant issue supporting certification.

> **b.      Defendant's attempt to create individualized fact issues as to the MMPA claims serves to present predominant factual and legal issues.**

Defendant asserts that there are individualized questions for the Class members' MMPA claims, because those claims depend on proof of its conduct following receipt of warnings from the National Credit Union Association ("NCUA") in 2001, 2004 and 2005 concerning indirect and subprime lending programs, such as the PMP. Defendant also asserts that the Class members must offer individualized proof concerning their loan payments and whether Defendant's MMPA violations "caused" them damages.  The Court should reject this argument.

> **(1)      The NCUA Letters and Risk Alert Are Common Evidence Establishing Defendant's Disregard of Missouri Law and the Propriety of Punitive Damages.**

The NCUA issued letters to all credit unions in 2001 concerning the need to exercise due diligence over third-party service providers and in 2004 concerning higher-risk lending activities such as subprime lending, indirect lending programs, and outsourced lending relationships. *See* **Ex. 22-23**.  In June 2005, the NCUA issued a *Risk Alert* – the first one, ever – to all credit unions concerning the risks and "unsafe and unsound practices" inherent in the PMP and "outsourced indirect, subprime automobile lending and participation activity in such loans." *See* **Ex. 24** and **25,** at ¶19. Defendant asserts that each of the MMPA claims are dependent upon the specific

19

guidance that the NCUA provided to the credit unions and the actions the credit union took in response to the letters because a number of the Class members purchased their vehicles before the June 2005 Risk Alert. Defendant's argument is contrived and factually bogus, and, in any event, misunderstands the NCUA's *Risk Alert* and its applicability to this lawsuit.

In his *Motion*, Plaintiff explained that the *Risk Alert* served as one of the bases for a punitive damages award in connection with the Class members' claims because it demonstrated "repeated warnings to credit unions concerning the risks associated with the PMP going back as far as 2001" and that

> "Defendant's continued eagerness to participate in the PMP through loan originations and sales of participation interests to other credit unions, after it had been warned not to participate in the PMP after it had later been directed not to participate in the PMP and after the NCUA specifically warned it in October 2006 about Centrix's pre-sale communications, is applicable to all Class members and probative of the propriety of punitive damages to the entire Class."

*See Plaintiff's Sugg.*, at p.34-35. Although Defendant argues that the NCUA's letters and *Risk Alert* must be scrutinized to determine "what guidance the NCUA provided," Defendant's President and CEO testified that he had no recollection of the credit union taking any action at all in response to the different warning letters or the *Risk Alert*:

> Q. (By Mr. Hodes) Sir, I'm going to hand you what's been marked as Exhibit 46 and I'd ask if you could review this and identify it for the record?
> A. It is called NCUA letter to Credit Union dated September 4th. The subject is specialized lending activities.
> Q. Do you recall receiving this on behalf of the Credit Union in September of 2004?
> A. No, I do not, but that doesn't mean I didn't receive it. I don't remember receiving it.
>                                                ***
> Q. Do you recall receiving this risk alert from the National Credit Union Association in June of 2005?
> A. Yes.
> Q. Was this risk alert addressed to you?
> A. Again, it was just addressed to the Credit Union.
> Q. But you specifically recall today having received that in 2005?
> A. Yes.

> Q. With respect to having received this risk alert, did the Credit Union take any particular action with respect to the Centrix Portfolio Management Program?
> A. I don't remember what we did at that time.
> Q. Did you consult with the board of directors about the risk alert?
> A. I don't remember.
> Q. Did you consult with an attorney regarding the subject of the risk alert?
> A. No.
> Q. Did you consult with somebody at Centrix?
> A. No.

*See* **Ex**. **54** at p. 178:11 to 180:23.

Defendant's CEO's testimony disproves the premise for its own argument – that the credit union altered its conduct or its participation in the PMP as a result of the NCUA's repeated warnings – and exemplifies the types of "predominant" or "common" evidence applicable to all Class members that supports certification and that the jury will be asked to consider when deciding the merits of the Class members' claims and the propriety of punitive damages.

Defendant's *Suggestions* also fail to address the Missouri Court of Appeals' recent decision in *Plubell v. Merck & Co., Inc.,* which rejects the same argument made by Defendant with respect to the NCUA *Risk Alert.* Defendant is arguing that, in order to prove their MMPA claims, each Class member must establish Defendant's knowledge of the NCUA's warnings and/or its mental state following the issuance of each of the NCUA's letters or Risk Alert. This argument "mischaracterizes" Missouri law because a plaintiff asserting an MMPA claim does not have to establish proof of the Defendant's knowledge or mental state. *See Plubell v. Merck & Co., Inc.,* 289 S.W.3d 707, 713-14 & n.4 (Mo.App. W.D. 2009)(citing 15 CSR § 60-9.020 and *Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 774 (Mo. banc 2007)).[16]

---

[16] Defendant cites *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F.Supp.2d 210 (S.D.N.Y. 2008) in support for its argument concerning the NCUA Risk Alert. In *Edison Fund*, the plaintiffs were investors in funds managed by the defendants who brought securities fraud claims against the defendants claiming that they misrepresented the liquidity of their investments in portfolios of subprime motor vehicle loans. *Id*. at 216-19. The New York court found that, after the NCUA issued its 2005 *Risk Alert*, the defendants' offering memorandums misrepresented certain facts concerning their investments. *Id*. at 225-26. As to representations based upon the NCUA's 2001 and 2004 letters to credit unions, the court disagreed that the statements were misleading. *Id*. at 222. The *Edison Fund*

### (2)    Common evidence establishes the Class Member's MMPA claims.

Defendant's next arguments concerning the MMPA claim asserts that class certification is unwarranted because each Class member will have to individually demonstrate causal connections between any alleged hidden fees and finance charges, their purchase of their motor vehicle, and their monetary loss. This argument misstates Missouri law and is factually deficient.

The MMPA, at § 407.025.1 RSMo, provides a civil action to:

[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers ***an ascertainable loss of money or property***, ***real or personal***, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020…

§ 407.025.1 RSMo (emphasis added).

The MMPA, and its definition of unlawful practices in § 407.020 RSMo, are broadly construed to provide protections to consumers. *See, e.g., Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009); *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001); *see also Owen v. General Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008)(deceptive practices violate MMPA "regardless of whether the act was committed before, during, or after sale"). In *Plubell v. Merck & Co., Inc.*, the Court of Appeals addressed, and rejected the precise "causation" arguments made by Defendant here.  It stated:

The MMPA does not require that an unlawful practice cause a "purchase." A civil suit may be brought by "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and *thereby suffers an ascertainable loss* of money or property, real or personal, *as a result of* [an unlawful practice]." § 407.025. "[A]s a result of" modifies "ascertainable loss"; it does *not* modify "purchases or leases." Thus, a plaintiff's *loss* should be a result of the defendant's unlawful practice, but the statute does not require that the *purchase* be caused by the unlawful practice. Therefore, the class members are

---

decision does not address the propriety of class certification, the Commercial Code or a claim against a credit union under a consumer protection statute like the Commercial Code or the MMPA. It may be that Defendant believes the *Edison Fund* decision is interesting because it mentions the 2005 *Risk Alert* and came up during a Westlaw search. The decision is, however, wholly inapplicable to this lawsuit and the issues presently before the Court.

not individually required to show what they would or would not have done had
the product not been misrepresented and the risks known.

*Id*, 289 S.W.3d at 714.

It is undisputed that each of the Class members purchased a motor vehicle and obtained financing from Defendant in connection with the PMP. *See* **Ex. 14** at No. 1. Plaintiff's *First Amended Petitio*n, at ¶¶ 65-67, sets forth allegations concerning the unlawful practices committed by Defendant (and not merely its agent, Centrix) in connection with the PMP which resulted in an "ascertainable loss of money and property" for each Class member. Defendant's argument is *factually meritless* because *each* Class member, in fact, suffered "an ascertainable loss of money or property" caused by Defendant's commission of unlawful practices in connection with the PMP. Each of the Class members suffered a loss of the vehicles that they acquired in connection with the PMP. *See id.* Defendant's argument, like its argument in support of its *Motion for Summary Judgment*, simply ignores the "*or property*" element of § 407.025 RSMo, and that is part of the Class definition, and is a non-starter from its inception.

Even if the Court puts the "loss of property" to the side, it cannot be disputed that each of the Class members also incurred a "loss of money" caused by Defendant's commission of unlawful practices in connection with the PMP. As Plaintiff explained in his *Motion for Class Certification*, the PMP utilized specific credit and dealer guidelines and formulas for the pricing of the motor vehicles and the terms of the credit union's financing which ensured payment of a number of hidden fees and finance charges to the participants in the PMP, and also the insurability of the borrower's default. *See* **Ex. 2-5.** These guidelines required a ***mandatory down payment***, and each of Class members in fact made a down payment in connection with their vehicle purchase. *See* **Ex. 53**, at ¶11; *see also* **Ex. 54** at 57:15-58:9 (one can "look at the retail

installment contract to see if the borrower made a down payment").[17] Defendant's argument ignores the down payments and, instead, focuses on the installment payments. Although some Class members failed to make any installment payments on their subprime loans, it cannot be disputed that each Class member suffered an ascertainable "loss of money" in connection with their vehicle purchase and Defendant's unlawful practices by their down payments.

Again Defendant ignores *Plubell* in favor of cases which are factually and legally distinguishable. For example, in *Owen v. General Motors Corp.*, 533 F.3d 913 (8th Cir. 2008), cited by Defendant, the plaintiffs alleged that they incurred a monetary loss as a result of the defendant's failure to disclose a product defect. *Id.*, 533 F.3d at 922. The Eighth Circuit granted summary judgment on the MMPA claim because the plaintiff could not prove that his vehicle suffered the claimed defect, so as to establish a causal relationship between monetary loss and the unlawful practice of failing to disclose the defect. *See id.*, at 922-23. Here, class certification is before the Court and the merits are not at issue. However, each of the Class members, including Plaintiff, is able to prove the same "defect" – actual, hidden fees and finance charges – by reference to the same common evidence – the credit and dealer guidelines (**Ex. 2-4**) and the Audit Recap sheets, (**Ex. 5**) found in Defendant's loan files. *See also* **Ex**. **54** at 57:23-59:9; 123:8-125:6; 213:18-215:24 (retail installment contract does not show payment of "acquisition fees" to dealer although Defendant paid them to dealer based upon borrower's agreement to pay amount set forth in retail installment contract). *Owen* does not support Defendant's arguments as to the predominance requirement of Rule 23(b)(3).[18]

---

[17] In connection with 51 of 98 Class member loans, the borrowers also made a trade-in of the vehicle that they owned so as to purchase a vehicle as part of the PMP. *See* **Ex. 53**, at ¶ 12.

[18] Similarly, in *Dumas v. Albers Medical, Inc.*, 2005 WL 217230 (W.D. Mo. 2005), the plaintiff alleged nationwide consumer protection act claims related to the sale of a counterfeit drug, despite having no evidence that the he even purchased a counterfeit drug or any means to establish the claim as to himself or the proposed class members. *Id.* at

*Robinson v. Texas Automobile Dealers Association*, 387 F.3d 416 (5th Cir. 2004), cited by Defendant, involved an antitrust claim for horizontal price fixing related to a specific charge that was disclosed by automobile dealers to their purchasers in connection with their vehicle sales. *Id.* at 419-20. The Fifth Circuit reversed the district court's order certifying a plaintiff class because it believed, based upon the facts, that the antitrust claim at issue therein required individualized proof related to the class members' purchase of their motor vehicle. *Id.* at 423.

*Robinson* is distinguishable for two reasons. First, here the MMPA claim is governed by § 407.025 RSMo and Missouri case law, which state that the unlawful practice does not have to directly cause the purchase of the vehicle, and which broadly construes the MMPA. *Plubell*, 289 S.W.3d at 714. Second, and perhaps more importantly, in contrast to *Robinson*, here the Plaintiff will again rely upon common evidence concerning the PMP – *i.e.*, the credit and dealer guidelines and Audit Recap sheets, *see* **Ex. 2-5, 48** to establish that the motor vehicles sold as part of the PMP were priced according to standardized formulas – *i.e.*, 115% of the wholesale value – in order to include undisclosed fees and finance charges, for dealer kickbacks and default insurance premiums. *See* **Ex. 2**, at § 2.7 and A; **Ex. 4, 5.** Thus, while in *Robinson* there was apparently no evidence as to the various dealer practices, here the dealers' practices are governed by standardized guidelines as part of the PMP. Defendant's briefing *ignores* that evidence.

c. **The conversion claims are appropriate for class certification.**

Defendant asserts as an affirmative defense applicable to all Class members, and as an argument against predominance, that it cannot be liable for conversion because each of the Class members were in default on their loans at the time their vehicles were repossessed, and thus it had a right to take possession of their vehicles. Defendant also asserts that the Class members'

---

*2-4. Again, each of the Class members is able to prove their claims by reference to the same evidence and according to the same theories. *Dumas* does not support Defendant's "predominance" arguments.

conversion claims will involve a rigorous choice of law analysis, thereby undermining predominance. Defendant's arguments misunderstand Missouri law.

> **(1)** **The conversion occurred in Missouri, at the time the Missouri Department of Revenue transferred ownership of the Class members' vehicles to Defendant.**

Defendant's argument premised on a claimed defense the conversion claim establishes yet another predominant issue as to all Class members. This is perhaps best evidenced by Defendant's *Motion for Summary Judgment* on the conversion claim, which presents the same argument as a legal issue applicable to all Class members, satisfying predominance.

Plaintiff has responded to Defendant's argument in response to the *Motion for Summary Judgment*, incorporated herein for that purpose. Simply stated, the Class members may assert conversion claims against Defendant because it unlawfully exercised ownership over their vehicles by obtaining title to the vehicles pursuant to Missouri's certificate of title statutes after having sent defective Commercial Code communications. Because Defendant obtained ownership of the vehicles after sending defective communications, Defendant's ownership of the vehicle is tied to the Commercial Code communications. *See* §§ 301.215 RSMo.

Indeed, § 400.9-619 RSMo specifically incorporates Missouri's certificate of title statutes into Part 6 of Article 9 so as to mandate compliance with the Commercial Code even though the secured party has obtained legal title to the vehicles. It states that "[a] transfer of the record or legal title to collateral to a secured party under subsection (b) or otherwise is not of itself a disposition of collateral under this article and does not of itself relieve the secured party of its duties under this article." The Official Comments to § 400.9-619 explain that "[a] secured party who has obtained record or legal title retains its duties with respect to the enforcement of its security interest, and the debtor retains its rights as well." If the Court is to harmonize the

26

provisions of the Commercial Code with Missouri's certificate of title statutes, then it must find that a conversion occurred because Defendant obtained ownership of the Class members' vehicles after issuing defective communications, and after having represented to the Missouri Department of Revenue that the communications complied with the Commercial Code. *See* § 400.9-619, at Official Comment, at ¶3 ("Applicable non-UCC law (e.g., a certificate-of-title statute, federal registry rules, or the like) may provide a means by which the secured party may obtain or transfer record or legal title for the purpose of a disposition of the property under this Article. The mechanism provided by this section is in addition to any title-clearing provision under law other than this Article.").[19]

Next, the "choice of law" argument lacks merit. All of the Class members' conversion claims are governed by Missouri law because the conversion occurred *in Missouri*. Defendant perfected its security interest in the Class members' vehicles when it filed its *Notices of Lien* with the Missouri Department of Revenue. *See* §§301.600, 301.620; §400.9-102(a)(71)(A) and Official Comment to § 400.9-102, at ¶ 2(b). After repossessing the Class members' vehicles Defendant obtained legal ownership of the vehicle through the provisions of § 310.215 so that it could validly sell the vehicle at auction. *See* § 310.210.4 RSMo; *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 403 (Mo. banc 1986); *Antle v. Reynolds*, 15 S.W.3d 762, 764 (Mo. App. W.D. 2000). Hence, each of the Class members' conversion claims accrued in Missouri at the moment in time that the Missouri Department of Revenue issued repossession titles to Defendant pursuant to § 301.215 following its issuance of defective communications to the Class

---

[19] Defendant cites to *Kennedy v. Fournie*, 898 S.W.2d 672 (Mo. App. E.D. 1995), in support of its *Motion for Summary Judgment*, arguing that the conversion claim fails as a matter of law, regardless of the insufficiency of the pre-sale communications, if the Class members were in default on their loans *and* they failed to make efforts to cure their defaults. *Kennedy*, however, is no longer controlling on this issue given the 2001 revisions to Article 9 of the Commercial Code, which now make the insufficiency of the communications relevant to the conversion claim.

members in order to obtain those repossession titles.  It is that moment in time that Defendant wrongly assumed ownership of the vehicles.  *See Emerick*, 756 S.W.2d at 523; *Kennedy*, 898 S.W.2d at 678.  Because the conversion occurred in Missouri, there is no choice of law issue.[20]

### (2) Conversion claims may be certified for class treatment.

Defendant also argues that "courts routinely refuse to grant class certification over intentional torts such as conversion." Yet, Defendant's cited cases are distinguishable because they involve national class actions and/or highly individualized fact patterns which warranted a denial of class certification.

For example, *Good v. Ameriprise Financial, Inc.*, 248 F.R.D. 560 (D. Minn. 2008) involved a purported national class action centered on a common law breach of contract claim. *Id*. at 569-70. The district court determined, based upon the facts before it, that each of the 10,000 putative class members had different contracts and thus there were over 10,000 contracts at issue.  *Id*. at 572.  The district court also rejected the attempt to certify the lawsuit as a national class action because the class members' various common law claims presented issues arising under different states laws, not one state's laws.  *Id*. at 573.  The district court did not address the conversion claim in any detail except to mention it in passing in its analysis. Similarly, both *Robinson v. Wal-Mart Stores*, 253 F.R.D. 396 (S.D. Miss 2008) and *Chicago Title Insurance v. Gresh*, 888 N.E.2d 779 (Ind. App. 2008), merely mentioned the "conversion" claims in passing when rejecting class certification of the primary claims in those lawsuits as presenting individual factual issues. The conversion claims in *Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto.*

---

[20] At pages 29-31 of its *Suggestions*, Defendant cites to Missouri's borrowing statute, § 516.190 RSMo, and argues that there are individualized statute of limitations determinations that must be made as to each of the Class members' conversion claims. This argument fails because the conversion claims arise under Missouri law. Additionally, a statute of limitations defense – especially one affecting only a few Class members, does not defeat the predominance requirement. *See Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)("As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3)…. Predominance under Rule 23(b)(3) cannot be reduced to a mechanical, single-issue test.")

Case 3:08-cv-05052-GAF   Document 130   Filed 11/30/09   Page 38 of 52

*Ins. Co., Inc,* 2003 WL 21146714 (S.D.Fla. 2003), cited by Defendant, related to flood insurance policies written by the plaintiffs-insurance agents and, under the unique facts of that case, presented factual and legal variations between the Class members' claims. *Id*. at *8-10.

Here, in contrast, the conversion occurred in Missouri under its law. Like his other claims, the factual and legal issues governing this claim are susceptible to resolution through common facts concerning the PMP and Defendant's post-repossession activities. Predominance is clearly satisfied as to the conversion claim.

### d. Defendant's Purported "Affirmative Defense of Offset" Presents Predominant Legal and Factual Issues

Defendant also asserts that its purported "affirmative defense of offset" precludes class certification because it is entitled to recover any deficiency balances owed on the loans as an affirmative defense even if its communications are deemed defective. This argument is legally unfounded and, in turn, presents predominant issues of law and fact supporting predominance.

### (1) Legal questions related to applicability of the purported defense apply to all Class members.

First, and once again, while Defendant may assert that an affirmative defense defeats certification, just the opposite is true. Whether or not certain alleged affirmative defenses even apply in this case are common questions that predominate as to all Class Members. *See, e.g., Smilow,* 323 F.3d at 39; *In re Agent Orange Product Liab. Litig.,* 818 F.2d at 166-67.[21] In other

---

[21] *See Sollenbarger v. Mountain States Telephone & Telegraph Co*., 121 F.R.D. 417, 426 (D.N.M. 1988)("The possible applicability of affirmative defenses in this case further supports class certification. In a class consisting of thousands of members involving standardized documents and a unilateral course of conduct by a single defendant, it is likely that any defense would apply, if at all, in a large number of cases, adding common issues and reinforcing their predominance over individual ones").

words, just as proof of Plaintiff's case presents common questions that permeate across the entire

Class, so to do certain affirmative defenses that Defendant may assert.[22]

Further, Missouri law rejects Defendant's attempt to set off a statutory damages award by a

deficiency claim. *See McKesson Corp. v. Colman's Grant Village, Inc*., 938 S.W.2d 631,

634 (Mo.App.E.D. 1997)("The set-off rule allows a misbehaving creditor to collect a deficiency

judgment, subject however to whatever damages are awarded to the debtor under section 400.9-

507(1). The impediment of this rule is that the burden to prove damages rests on the debtor. ... It

has no currency in our decisions. That is the rule that the trial court mistakenly applied.").

Second, as Defendant itself concedes, it cannot, as a matter of law, seek a deficiency

judgment from the Class Members if its pre-sale communications are deemed defective. *See,*

*e.g., Updegraff*, 218 S.W.3d at 623; *Reno Financial, Ltd. v. Valleroy*, 229 S.W.3d 622, 624 (Mo.

App. E.D. 2007); *see also* §§ 408.556, 408.557 RSMo. Defendant cannot circumvent this rule by

characterizing an affirmative claim for a deficiency as an affirmative defense. As Plaintiff

explains in detail in response to Defendant's *Motion for Leave to File First Amended Answer*,

Missouri law (*i.e*., §§ 408.556, 408.557, § 400.9-610 and 400.9-626(a)(2) RSMo, and case law)

and federal law (*i.e*., Federal Rule 8(b),(c), and 9(g)) require Defendant to demonstrate and

---

[22] Defendant also briefly argues in a footnote that class certification is improper because a handful of unnamed class members have declared bankruptcy after obtaining their vehicle through the PMP or its repossession. *See* Def. Sugg. at 46 n.7. This argument merely presents a question concerning the identity of the real party in interest as between the debtor and the bankruptcy trustee if the Class member filed a Chapter 7 bankruptcy after the date his claims in this lawsuit accrued and then became property of the bankruptcy estate. A Chapter 13 debtor always retains the right to pursue claims in his name. What Plaintiff's counsel has done in other class action cases is to ask the Class member and/or his or her bankruptcy trustee to reopen the bankruptcy case pursuant to 11 U.S.C. § 350(b) and bankruptcy rule 5010 in order to list a previously unknown claim on the bankruptcy schedule.  The reopening of a bankruptcy estate is a ministerial act within the bankruptcy court's discretion. *See In re Lopez*, 283 B.R. 22, 26 (9th Cir. 2002); *In re Lehosit*, 344 B.R. 782, 784-85 (Bkrtcy. N.D. W.Va. 2006); *In re Coastline Care, Inc.,* 299 B.R. 373, 377 (Bkrtcy. E.D. N.C. 2003).  Following the reopening of the bankruptcies and prior to final judgment, the Court may procedurally substitute the trustee in the place of the class member/debtor.  *See, e.g., Wolfe v. Gilmour Mfg. Co*., 143 F.3d 1122, 1126-27 (8th Cir. 1998).  The Eighth Circuit has rejected "estoppel" arguments as to debtors who lack knowledge of a cause of action at the time of the bankruptcy.  *See Stallings v. Hussman Corp*., 447 F.3d 1041, 1049 (8th Cir. 2006); *see also Copeland v. Hussmann Corp*., 462 F.Supp.2d 1012, 1020 (E.D. Mo. 2006).

specifically plead compliance with the notice provisions of Part 6 of Article 9 of the UCC in order to obtain a deficiency from the debtor. *See Updegraff*, 218 S.W.3d at 623. This is the exact finding made by the Court in the *April Smith* matter with respect to the defendant's motion to decertify the class action. *See Plaintiff's Sugg.*, at **Ex. 34**.[23] Defendant's conclusory assertion of a "right to an offset" does not create a legal right to an offset and is insufficient to warrant the denial of class certification in this case. *See Kaufmann v. Prudential Ins. Co. of America*, 2009 WL 2449872, at *1 (D. Mass. Aug. 6, 2009)(citing *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1949 (2009)(affirmative defenses must be plead with factual particularity).[24]

Defendant cites *Chemical Sales Co., Inc. v. Diamond Chemical Co., Inc*., 766 F.2d 364 (8th Cir. 1985) as authority for its argument. However, that case did not involve a consumer transaction, a class action, or actually involve any analysis of the Commercial Code. Instead, *Chemical Sales Co.* involved a counterclaim for "goods sold and delivered" asserted in response to a conversion claim in a dispute between non-consumers. *Id*. at 369-70. Based upon the nature of the claims before it, the Eighth Circuit decided that a "rebuttable presumption" rule applied to the deficiency counterclaim for a non-consumer transaction. *Id*. at 369-70 (citing cases). Again, since the 1985 decision in *Chemical Sales Co*., Missouri has adopted a revised version of the UCC Article 9, which kept the "absolute bar" rule in consumer transactions. Significantly, § 400.9-626(b) RSMo allows Missouri courts to continue to "apply established approaches," which it has by retaining the "absolute bar" rule. *See Updegraff*, 218 S.W.3d at 623; *Consumer Finance Corp.* v. *Reams,* 158 S.W.3d 792, 797-98 (Mo.App.W.D. 2005).

---

[23] *See also Klay*, 382 F.3d at 1254 ("Indeed, even where a defendant files a counterclaim, he must adduce some evidence in support of it before a court will take it into account as a reason for declining to certify a class. The defendants in this case have not pointed to any permissive counterclaims they have already filed, or compulsory counterclaims they are likely to file, against substantial numbers of class members.").

[24] Defendant suggests on p.48 of its *Suggestions* that the "absolute bar" rule does not apply in Kansas. This argument is directly contradictory to the argument Defendant previously makes in support of the application of the Kansas Uniform Consumer Credit Code, and its deficiency bar at K.S.A. § 16a-5-103.

31

Case 3:08-cv-05052-GAF   Document 130   Filed 11/30/09   Page 41 of 52

Further, *Chemical Sales Co.* addressed an affirmative counterclaim, whereas here Defendant's argument is focused on a purported defense to certification and has simply used an ellipsis in its quote on page 46 of its *Suggestions* to remove the words "on his counterclaim" from the Eighth Circuit's analysis in an attempt to avoid its pleading burden. This is plainly improper. *Thomas v. U.S. Bank Nat. Ass'n ND*, 575 F.3d 794, 800 (8th Cir. 2009)(criticizing use of an ellipsis to alter statutory language).[25]  This Court has repeatedly rejected the argument that potential compulsory counterclaims serve as a barrier to class certification. *Owner-Operator Independent Drivers Assoc., Inc. v. New Prime, Inc.*, 213 F.R.D. 537, 546 n.5 (W.D.Mo. 2002); *Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313, 321 (W.D.Mo. 1997).

### (2) The purported defense raises predominant factual questions.

Defendant's purported defense also raises predominant factual questions because it ignores the default insurance that Defendant surreptitiously obtained in connection with each of the Class Members' loans. *See Plaintiff's Sugg.*, at **Ex. 2**, at § 2.4, **Ex. 6-9, 13, 48-49**.  Defendant did not file any counterclaim against Plaintiff, and it has not already pursued deficiency judgments against the Class Members for this reason.

Defendant also argues that, as a result of its affirmative defense, that resolution of each Class Members' claim necessitates an individual analysis as to the "commercial reasonableness" of the sale of the Class Members' motor vehicles.  Defendant's argument is misplaced.

Although the purported affirmative defense fails as a matter of law, even *if* the Court assumes for sake of argument or analysis that it does apply, then the result is that there are still

---

[25] Similarly, Defendant has cited to *In re Boehne*, 82 B.R. 525 (Bkrtcy. W.D. Mo. 1988), to support its argument for an offset, although that case did not mention such an affirmative defense.  Indeed, *In re Boehne*, expressly adopts the "no deficiency judgment" rule.  *Id.* at 527-28, 529 ("Once the creditor takes self help possession of personal property and sells it without notice, it is precluded from any further recovery of the debt secured by the personal property which it disposed of in a commercially unreasonable manner.").

no individual issues presented by the defense. As Plaintiff explained in his *Motion*, Plaintiff assumes for the purpose of class certification, like Defendant and its experts do, that the amount Defendant obtained when it sold the Class Members' motor vehicles at auction was the fair market value at auction. *See Plaintiff's Sugg.*, at p.33-34; Defendant's Ex. W at p.20 ("the realized auction price appears relatively high, and certainly well within the standard of reasonableness"). Because each loan carried default insurance, the participants in the PMP, including the insurance provider, had incentives to ensure that the sale of the vehicles was reasonable so that they could recover the insurance proceeds. Application of Defendant's claimed offset presents no "individual issues" because the statutory remedy is mechanically reduced by the amount Defendant claims as a deficiency.[26]

In summary, Defendant's argument, premised upon its alleged "offset" affirmative defense, actually demonstrates "predominance" and the propriety of class certification.

### C. The superiority requirement of Rule 23(b)(3) is satisfied.

Defendant presents two primary arguments related to the "superiority" requirement of Rule 23(b)(3). Plaintiff addresses these arguments below.

#### 1. Defendant's violations of the Commercial Code are significant.

Defendant's first argument asserts that statutory claims asserting "hyper-technical notice violations" of the Commercial Code are inappropriate for class certification, since none of the Class members incurred a loss as a result of the deficient notices. This argument lacks merit.

First, and again, such an argument presents a common and predominant legal issue to the entirety of the Class members. Hence, the mere assertion of this argument disproves itself. *See*

---

[26] *See Klay*, 382 F.3d at 1259-60; *see also Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 494 (C.D. Cal. 2006)(*quoting Smilow*, 323 F.3d at 40: "The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3). Where common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.").

Case 3:08-cv-05052-GAF   Document 130   Filed 11/30/09   Page 43 of 52

*Lozada v. Dale Baker Oldsmobile, Inc*., 197 F.R.D. 321, 329 (W.D.Mich. 2000)("Whether Dale Baker's conduct violated the TILA and state statutes and whether any violation was merely technical are questions of law that are common to the entire class.").

Second, Defendant's argument is directly contradicted by Missouri law and the Official Comment to § 9-625 of the Commercial Code. Again, as noted by the Court of Appeals in *Mancuso*, § 400.9-625(c)(2) "provides a minimum, statutory, damage recovery for a debtor" independent of a showing of damage…It is 'designed to ensure that ***every*** noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted.'" *Id.*, 254 S.W.3d at 92 (emphasis added). Clearly, the idea that the Commercial Code violations are "hyper-technical" or unimportant is inherently flawed. Moreover, class certification is appropriate because the statute is intended to punish ***every*** violation of the Commercial Code's notice provisions. *Id*.

Third, Defendant's argument is flawed to the extent it suggests the case law mandates a specific result. Notably, Defendant's argument is premised upon the decision in *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 403 (6th Cir. 1980) and its progeny. Defendant states:

> The court agreed with the district court's conclusion that "[i]f the purpose of the Act ... in these cases of technical violations with no actual damages was to secure compliance with the Act's disclosure requirements rather than to punish the unheeding violator, then this Court believes maintenance of the class action (at least at this time) is an unnecessary overreaction to the violation here."

*Def.'s Sugg*., at 52. The problem with Defendant's argument is that it misstates or "distorts" the decision in *Watkins*. *See Lozada*, 197 F.R.D. at 334 n.4. The *Lozada* court stated:

> the *Watkins* court cited the district court's language and upheld the result, but noted that Congress did not distinguish between technical violations and more egregious violations of the act. *Id.* at 403. The court also acknowledged that a judicial practice of denying certification and permitting a defendant to comply after being subjected only to the limited damages in an individual case would nullify the prophylactic effect of the class remedy, which was intended to prompt

34

> creditors to comply without the necessity of bringing a suit. *Id.* at 402 n. 8. The
> court further noted that Congress intended meaningful penalties to assure this
> result. *Id.* at 403. In other words, the Sixth Circuit expressed substantial
> disagreement with the premise of the district court.

*Lozada*, 197 F.R.D. at 334 n.4. Thus, the Sixth Circuit stressed the important of upholding the

district court's discretion over class actions but "strongly reinforced the strong presumption of

the appropriateness of class relief in such cases." *Id.*

Fourth, Defendant's "technicality" argument is routinely rejected by this Court and others

addressing class certification. *See Roberts v. Source for Public Data*, 2009 WL 3837502, at *6

(W.D.Mo. Nov. 19, 2009); *Murray v. GMAC Mortg. Corp.,* 483 F.Supp.2d 636, 645

(N.D.Ill.2007)("the substantial nature of a potential damages award, even one based on merely

'technical' violations of FCRA, is not a proper ground on which to deny class certification.");

*ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 50 P.3d 844, 850 (Ariz.

App. 2002). Defendant's arguments should be rejected.

### 2.     Individual actions are not economically feasible.

Defendant's next argument suggests that it is "economically feasible" for the Class

members to pursue their own lawsuits. The argument is off the mark and unreasoned.

Defendant's effort to characterize the Class Members' claims as having a great value (*i.e.*

not "negative value" claims) with the further availability of attorneys' fees that will make them

easily pursuable without the class action device is factually false. The cost of individual litigation

of the Class Members' claims makes it unlikely than any individual – especially subprime

borrowers – could afford to pursue individual claims or that they could find a competent attorney

willing to take on an individual case for the prospect of an attorneys' fee or a contingency fee,

given the small amount of each Class Members' recovery. The only way that attorneys' fees

would "assure" the economic viability of an individual claim is if there was a <u>guarantee</u> that the

plaintiff would be victorious and that damages and attorneys' fees would be awarded. Otherwise, the possible availability of attorneys' fees is no more an inducement to pursue claims individually than is the possibility of prevailing and getting any other damage allowed under law.

"Individual consumer class members have little interest in 'individually controlling the prosecution or defense of separate actions,' … because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit. Thus, from the consumers' standpoint, a class action facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3rd Cir. 2004).[27] An individual claim potentially worth thousands of dollars is likely to be a "negative value" case when litigated against a credit union that apparently has limitless resources to litigate against Plaintiff and other credit unions and, if the Court permits it to assert counterclaims, even the Class Members.[28] The history of this case proves the point. Thus, even at a seemingly substantial damage level these claims are in fact negative value claims. Indeed, Defendant knows that if it can escape certification, its unlawful practices will go unpunished.[29]

---

[27] *See also Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)(" a class action has to be unwieldy indeed before it can be pronounced an inferior alternative--no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied--to no litigation at all"); *Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014, at *3 (N.D.Ill. 2007)("Balducci's does not offer any reason why the claimants would want to sue individually. Moreover, even if class certification is granted, individual claimants remain free to opt out of the class. Of course, if some individual claimants select this option, it does not mean the benefits of class certification will not be realized for the other, more common, claimants.").

[28] Defendant's arguments concerning the Class members' supposed desire to "control" their own actions also relates to their threat of counterclaims. This is not an argument that any class members will want to control his or her suit; instead, these are arguments that the class members will not want to bring suit at all. Logic and past experience dictate that when informed of the certification and the potential recovery, nearly all of the putative Class members will want to be a part of the class action.

[29] The potential counterclaims do not undermine superiority but instead support it. *See Gilkey v. Central Clearing Co.* ,202 F.R.D. 515, 529-30 (E.D.Mich.2001)("It is reasonable to presume that, whenever a class seeks to challenge a standard lending practice, some class members will have defaulted on the loans in question. Since class members are unlikely to bring individual actions in light of the limited recovery available, the holdings of the district courts in *Heaven* and *Carter* will have the effect of insulating institutions such as Defendants from liability under the TILA and MCPA. Cutting off the rights of consumers to vindicate their rights is contrary to the intent of the TILA and MCPA to encourage private attorneys general.").

Additionally, while class actions are touted as a way for nominal claims to be heard, there is no prohibition against use of the procedure where the damages are much more significant. Certainly, there is nothing in the Commercial Code or the MMPA that prohibits seeking redress for a violation in a class context. The MMPA expressly contains class action provisions. *See* § 407.025.3 RSMo; *see also ESI Ergonomic Solutions, LLC,* 50 P.3d at 850.

In sum, Defendant presents no legitimate argument to support a finding that a class action is not a superior method of adjudicating the claims in the case. The Class Members' subprime vehicle loans were all originated pursuant to common procedures and documents as part of the PMP. Defendant used standardized documents and concedes that those documents can be used to prove the Class Members' claims. *See* **Ex**. **1** at 213:18-215:24. The Class members were treated equally and Defendant violated the law equally as to all of the Class members.

### D.     The Numerosity Requirement is Satisfied.

Defendant also argues that Plaintiff cannot satisfy the numerosity requirement of Rule 23(a)(1) for his Commercial Code claim because of the differences between his notice and those of the other Class members. This argument fails as a matter of fact and law.

First, as explained above, Plaintiff's Commercial Code claim, as to his notice, presents the same legal and factual issues as those claims premised on a revised version of the notice. Accordingly, there are at least 98 notices at issue. Defendant's attempted limitation of the Class to 27 loans based on its admission that the communication sent to Plaintiff is deficient is an improper attempt to incorporate the merits of its affirmative defenses to Plaintiff's and the Class members' Commercial Code claims into the numerosity analysis. Second, this argument ignores Plaintiff's MMPA and conversion claims, for which there are 98 loans at issue. Defendant does not contest numerosity as to these claims. Third, even a class of 27 members is sufficient

numerous. *See Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D.Mo.1999)(class of twenty to sixty-five members is numerous). Defendant's "numerosity" arguments are simply meritless.

### E. The Adequacy Requirement is Satisfied.

Defendant asserts that Plaintiff is not an adequate class representative (1) because he has conflicting interests with the Class members and (2) is unfit to represent the Class. Plaintiff addresses these assertions in turn.

### 1. Plaintiff's interests do not conflict with the other Class members.

The focus of the adequacy inquiry is whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Jones v. NovaStar Financial, Inc*., 257 F.R.D. 181, 191 (W.D.Mo. 2009)(quoting *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 562-63 (8th Cir. 1982)); *Roberts*, 2009 WL 3837502, at *4. Defendant has premised its "conflict" argument on its proposed counterclaim against some of the Class members. As explained above, and in response to Defendant's *Motion for Summary Judgment* and *Motion for Leave to File First Amended Answer*, Defendant's proposed counterclaims are unsound such that Defendant's efforts to manufacture conflict based on the proposed counterclaim are futile. Moreover, the argument is flawed since the Plaintiff and the Class members have coextensive interests in establishing Defendant's liability, despite threatened counterclaims against absent class members. S*ee Blair v. Equifax Check Services, Inc.*, 1999 WL 116225, at *4 (N.D. Ill. 1999).

Plaintiff's claims present the same common issues of law and fact as the Class members. He seeks the same type of money damages and relief from Defendant based on the same theories for the same violations of the law committed by Defendant as all Class members. Given the identity of his claims and legal theories, there is no potential for conflicting interests. In order

for differences among the representative and Class Members to constitute a conflict sufficient to defeat class certification, there must appear to be a conflict which goes to the "heart of the litigation." *In re Tetracycline Cases*, 107 F.R.D. 719, 730 (W.D. Mo. 1985). The different letters do not present a conflict which goes to the "heart of the litigation." Accordingly, Defendant's effort to create a conflict between Plaintiff and the Class members fails.

### 2. Plaintiff is fit to represent the Class members.

Defendant suggests that Plaintiff is unfit to represent the Class because of his past criminal history. Yet there is no requirement for class certification that Defendant cites which suggests that this is even a factor that militates against his ability to represent the Class members.

Indeed, it is telling that Defendant does ***not*** assert that Plaintiff lacks a general understanding of the claims that are being asserted, or his obligations as class representative, or that he has been unwilling to prosecute the action since it was filed, or that he is unable to act as a fiduciary for the Class members (some whom, respectfully, probably share similar backgrounds or experiences). Nor does Defendant contest the fact that Plaintiff is wisely relying upon the expertise of counsel for legal guidance. Accordingly, Plaintiff far exceeds the adequacy standards articulated by this Court. *Jones*, 257 F.R.D. at 192 (citing authorities).[30]

Moreover, class action cases routinely reject an argument which suggests that one's past criminal history relates to this ability to serve as a class representative. *See Streeter v. Sheriff of Cook County,* 256 F.R.D. 609, 613 (N.D.Ill. 2009)("To the extent Defendants are arguing that the named Plaintiffs have credibility problems because of their convictions that preclude them from serving as class representatives, '[c]redibility is not a requirement of a class representative, and whether or not a plaintiff is credible is irrelevant to that person's ability to be a class

---

[30] Indeed, although Defendant suggests that Plaintiff gave "dishonest" answers in his deposition, it does not cite to specific testimony. The deposition transcript reflects honest answers to poor questioning. Defendant did not shy away or conceal his past and was forthright with his answers when asked straightforward questions.

representative.'"); *Benedict v. Altria Group, Inc.*, 241 F.R.D. 668, 674 (D. Kan. 2007)("There is no evidence Ms. Brown's criminal history presents a conflict of interest with other class members or would affect her ability to prosecute the action vigorously on behalf of the class."); *Blair*, 1999 WL 116225, at *3 ("The mere fact that Blair has written several bad checks, however, does not make her incapable of fairly and adequately protecting the interests of the class and the Court refuses to so hold.").[31]

Altogether, Defendant's arguments fail to demonstrate that Plaintiff is an inadequate class representative. Plaintiff satisfies the requirements of Rule 23(a)(4).

## IV.    CONCLUSION

There are basic factual and legal issues common to the claims of the Class Members which include the interpretation and application of the Commercial Code, the MMPA, Missouri law, and Defendant's alleged affirmative defenses. To litigate these issues in one forum, at one time, will preserve judicial and litigant resources and avoid inconsistent results. Class actions involving plain questions of statutory violations and unlawful practices directed to consumers, such as in this case, are routinely certified. Indeed, they are textbook examples of an appropriate use of the class action procedure.

In sum, Defendant's arguments against certification are unpersuasive. "[T]he suggestion that a wrong is too extensive to be heard before the Court is an argument that is deeply disfavored in our society which is predicated upon the rule of law.... The instant case is not too complicated for the parties to receive equal justice before this Court." *Chisolm*, 194 F.R.D. at 557. The Court should certify this matter as a class action.

---

[31] Defendant's cases on this point are factually dissimilar. In *Hartsell v. Source Media*, 2003 WL 21245989 (N.D. Tex. 2003), one of the class representatives was convicted of mail fraud and sent to prison during the pendency of the class action. In *In re Proxima Corp. Securities Litig.*, 1994 WL (S.D. Ca. 1994), a proposed representative had himself been found liable for securities fraud in one matter while at the same time attempting to prosecute a claim for securities fraud in another matter.

Dated: November 30, 2009          Respectfully submitted,

WALTERS BENDER STROHBEHN &
  VAUGHAN, P.C.

By: */s/ Garrett M. Hodes*
R. Frederick Walters – Mo. Bar 25069
J. Michael Vaughan – Mo. Bar 24989
Kip D. Richards - Mo. Bar 39743
Garrett M. Hodes – Mo. Bar 50221
    2500 City Center Square
    1100 Main Street
    Kansas City, Missouri 64105
    (816) 421-6620
    (816) 421-4747 (Facsimile)

ATTORNEYS FOR PLAINTIFFS AND
PROPOSED CLASS COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically with the United States District Court for the Western District of Missouri with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons this **30th day of November 2009**:

*/s/ Garrett M. Hodes*
Attorneys for Plaintiff

## EXHIBITS

| No. | Description |
|-----|-------------|
| 48 | Centrix Financial Dealer Program |
| 49 | Centrix Financial Credit Guideline and Policy Manual |
| 50 | Scheduled Property Floater Inland Marine Policy; Lyndon Property Insurance Company |
| 51 | Repossessed Property Modified Single Interest Coverage Form, Everest National Insurance Company |
| 52 | Master Loan Participation Agreement |
| 53 | Affidavit of Christi M. Gumbs |
| 54 | Excerpts of Deposition of Mark S. Kolarik |