IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| **CECIL E. HOPKINS, individually** <br> **and on behalf of a class of all others** <br> **similarly situated,** | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| vs. | ) <br> ) | Case No. 08-05052-CV-SW-GAF |
| **KANSAS TEACHERS COMMUNITY** <br> **CREDIT UNION,** | ) <br> ) <br> ) <br> ) | |
| Defendant/Third Party Plaintiff, | ) <br> ) | |
| vs. | ) <br> ) | |
| **MARATHON ROTHSCHILD CREDIT** <br> **UNION, et al.,** | ) <br> ) <br> ) | |
| Third Party Defendants. | ) | |

## ORDER

Presently before the Court is Plaintiff Cecil E. Hopkins's (individually "Hopkins"), individually and on behalf of a class of all others similarly situated (collectively "Plaintiffs" or "class members"), Motion for Class Certification, filed pursuant to Fed. R. Civ. P. 23(b)(3). (Doc. #57). Defendant Kansas Teachers Community Credit Union ("Defendant") opposes the Motion. (Doc. #93). For the reasons set forth below, Hopkins's Motion for Certification is **GRANTED** in part and **DENIED** in part.

## DISCUSSION

I.   **FACTS**

This proposed class action lawsuit is brought by persons who obtained motor vehicle loans from motor vehicle dealers, which were subsequently sold or assigned to Defendant as the secured

party or lienholder pursuant to a "Portfolio Management Program" ("PMP") administered by Centrix Financial, LLC ("Centrix").[1] Hopkins, a Missouri resident, is the proposed class representative. Hopkins asserts all claims arise under Missouri law and stem from Defendant's alleged failure to comply with Missouri consumer protection laws when repossessing Plaintiffs' motor vehicles.

Hopkins financed the purchase of a motor vehicle. The financing was obtained through the use of a retail installment contract and security agreement originated by Centrix. Centrix then sold or assigned its rights under the installment contract and security agreement to Defendant pursuant to the PMP. Pursuant to the PMP and a standard loan placement agreement, Centrix acted as Defendant's exclusive agent for originating such consumer loans from dealers, which, in turn, would then be sold or assigned to Defendant upon consummation of the underlying sale of the motor vehicles. Centrix, however, continued to act as the servicer of the loans. Hopkins asserts Defendant retained a security interest and lien on all motor vehicles purchased by Plaintiffs, which represented a security interest in consumer goods. Hopkins alleges Centrix acted very aggressively when servicing loans for its credit union principals, such as Defendant, because of the high-risk, subprime nature of the motor vehicle loans.

On or about July 30, 2004, Defendant, through its alleged agent, Centrix, caused Hopkins's motor vehicle to be repossessed. Defendant later obtained a repossession title from the Missouri Department of Revenue transferring ownership of Hopkins's motor vehicle to it. Around the same time, Centrix sent Hopkins a computer generated pre-sale notice governed by the provisions of

---

[1] Unless otherwise noted, facts are taken from Hopkins's First Amended Class Action Petition for Damages. (Doc. #9-1).

Missouri's Commercial Code, Mo. Rev. Stat. § 400.1-101, *et seq.* (the "MoUCC"), and consumer protection laws. Hopkins alleges this notice was defective under the MoUCC because:

> A) the notice did not identify or describe the secured party, as required by Mo. Rev. Stat. §§ 400.9-613(1)(A) and 400.9-614(1)(A);
> B) the notice misrepresented the secured party as Centrix, rather than Defendant, contrary to the requirements of Mo. Rev. Stat. §§ 40.9-619(1)(A) and 400.9-614(1)(A);
> C) the notice did not state the intended method of disposition of the collateral, as required by Mo. Rev. Stat. §§ 400.613(1)(C) and 400.9-614(1)(A);
> D) the notice failed to inform Hopkins that he was entitled to an accounting of the unpaid indebtedness, as required by Mo. Rev. Stat. §§ 400.9-613(1)(D) and 400.9-614(1)(A);
> E) the notice did not state the intended time and place of a public disposition of the collateral or the intended time after which any other disposition was to be made, as required by Mo. Rev. Stat. §§ 400.9-613(1)(E) and 400.9-614(1)(A);
> F) the notice did not provide a phone number where Hopkins could inquire to determine the redemption amount, as required by Mo. Rev. Stat. § 400.9-614(1)(C);
> G) the notice contained content not allowed or authorized by Missouri law, which rendered the notices misleading and/or unreasonable; and
> H) the notices did not advise Hopkins of a telephone number or mailing address that he could use to receive additional information concerning the disposition and the obligation secured, as required by Mo. Rev. Stat. § 400.9-614(1)(D).

Hopkins further alleges Defendant failed to disclose to Plaintiffs certain fees included in their loan agreements for premiums for default protection and other insurance policies on the loans.

In addition to Hopkins's claims under the MoUCC, Hopkins has asserted claims arising under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010, *et seq.*, alleging Defendant and Centrix engaged in unfair practices relating to Plaintiffs' loans, and common law tort claims for conversion of Plaintiffs' motor vehicles. Hopkins claims damages in excess of ten-thousand-dollars ($10,000).

Hopkins now seeks to certify the following defined class of Plaintiffs: All persons who

> 1) obtained a motor vehicle loan or financing from Defendant in conjunction with the PMP administered by Centrix;

2) obtained a Missouri Certificate of Title for that motor vehicle identifying Defendant as the lienholder; and

3) had said motor vehicle repossessed.[2]

(Doc. #57). Hopkins suggests that one-hundred-forty (140) individuals fall within the aforementioned class definition under ninety-eight (98) loans sold or assigned to Defendants. (Doc. #130, p. 3). Defendant has lodged numerous objections to Hopkins's proposed certification. (Doc. #93).

## II. LEGAL STANDARD

A claimant may sue on behalf of a class only if he meets the four threshold requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23; *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006). The claimant has the burden of proving that his case is appropriate for class certification under Rule 23. *See Blades v. Monsanto*, 400 F.3d 562, 569 (8th Cir. 2005).

The requirements of Rule 23(a) are as follows:

1. the class is so numerous that joinder of all members is impracticable;

2. there are questions of law or fact common to the class;

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. the representative parties will fairly and adequately protect the interest of the class.

---

[2]In his Motion for Class Certification, Hopkins amended his original suggested class definition, as stated in Hopkins's First Amended Class Action Petition for Damages (Doc. #9-1). The Court will not discuss Hopkins's previous class definition further.

4

Hopkins seeks certification under Rule 23(b)(3). As such, Hopkins must demonstrate that: (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods of adjudication. In evaluating Rule 23(b)(3)'s requirement that common issues predominate over individual issues, the Court conducts a preliminary inquiry into the facts and determines whether, if Hopkins's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Blades*, 400 F.3d at 566.

While a plaintiff has the burden of demonstrating the appropriateness of class certification, doubt that the requirements are met should be resolved in favor of certification. *Aquila*, 237 F.R.D at 207; *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968). Should the need arise, a court is free to modify a certification, which is conditional in nature. Fed. R. Civ. P. 23(c)(1)(C); *see also Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602 (D. Colo. 1990).

### III. ANALYSIS

### A. RULE 23(a)(1): NUMEROSITY

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be impractical. Here, this requirement is met. The proposed class consists of approximately one-hundred-forty (140) class members, which is a sufficiently numerous class. *See Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) (reasoning a class of twenty (20) to sixty-five (65) members is numerous).

Defendant counters, arguing that the one-hundred-forty (140) Plaintiffs in this case must be subdivided into three different classes due to Centrix's use of three different versions of pre-sale notices and that each version requires its own factual determination. Thus, factual questions are not

common to the entire class. *See* Section III(B), *infra*. Defendant further asserts that if Plaintiffs are so divided, the numerosity requirement can not be met for each of the three subdivisions. This argument fails, however, because under MoUCC § 400.9-613, whether the content and form of the various pre-sale notices, which arise from consumer-goods transactions, are deficient under the MoUCC is a question of law. *See* MoUCC § 400.9-613 cmt. 2 ("A notification that lacks any of the information set forth in paragraph (1) is insufficient as a matter of law."). Thus, at an appropriate time, the Court may determine whether each version of the pre-sale notice was deficient under the MoUCC as a matter of law.

**B.      RULE 23(a)(2): COMMONALITY**

Under Rule 23(a)(2), there must be questions of law or fact common to the class. This commonality threshold is not that high, and "does not require that every question be common to the class, but merely that one or more significant questions of law or fact are common to the class." *TBK Partners v. Chomeau*, 104 F.R.D 127, 130 (E.D. Mo. 1985). The requirement is generally met if the class members' claims "derive from a 'common nucleus of operative facts.'" *Id.* (citing *Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 690 (E.D. Pa. 1977)).

The commonality requirement under Rule 23(a)(2) is satisfied in this case. Here, the basic common question is whether Defendant's notices complied with the notice requirements of the MoUCC. There are other common questions, but this lone example suffices to met the commonality requirement.

**C.      RULE 23(a)(3): TYPICALITY**

Rule 23(a)(3) requires the claims or defenses of the representative parties be typical of the claims or defenses of the class. Under Rule 23(a)(3), "typicality" means "that there are 'other

members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (citing *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Id.* (quotations and citation omitted).

In this case, all Plaintiffs share many of the same grievances. All Plaintiffs claim harm resulting from Defendant's allegedly deficient pre-sale notices and allegedly improper sales thereafter. All class members' claims, while not wholly identical, are similar to Hopkins's. Thus, the typicality requirement of Rule 23(a)(3) is met.

**D.     RULE 23(a)(4): ADEQUACY OF REPRESENTATIVE**

The final requirement under Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(a)(4), "the interests of the class representative must coincide with those of the rest of the class and the class representative and his attorney must be prepared to prosecute the action vigorously, tenaciously and with adequate financial commitment." *Gilbert v. First Alert, Inc.*, 904 F. Supp. 714, 719 (N.D. Ill. 1995) (quotations and citations omitted).

In this case, Hopkins's interests coincide with those of all other class members. Hopkins and all other class members have an interest in determining the adequacy of the pre-sale notices that they received from Defendant and any harm that may have resulted if such notices are proved deficient under the MoUCC. Further, nothing demonstrates Hopkins and his attorney will have difficulty prosecuting the action in a proper manner. The Court finds Hopkins's proposed Class Counsel, attorneys with the law firm Walters, Bender, Strohbehn & Vaughan, P.C., have sufficient experience representing plaintiffs in class action litigations and will properly represent Hopkins and the class

7

members in this action. Defendant argues that Hopkins's rather checkered past should disqualify him from being the designated class representative.[3] While the Court realizes that a class representative has a fiduciary duty to protect all other class members' interests, nothing suggests Hopkins will act in a manner contrary to the class members' interests or otherwise fail to adequately prosecute this case.[4] Thus, the adequacy requirement of Rule 23(a)(4) is met.

**E.    RULE 23(b)(3)**

As mentioned above, Rule 23(b)(3) requires Hopkins to demonstrate two things: (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods of adjudication. These two requirements will be separately discussed below.

### i.    Predominance

While commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3) are intertwined, the Rule 23(a)(2) prerequisite merely requires that common questions of law or fact *exist* among the members of the class; Rule 23(b)(3) requires that common questions *predominate* over individual questions. *See Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D. Mo. 1997). Thus, simply showing that common questions of law or fact exist under Rule 23(a)(2) is insufficient to satisfy Rule 23(b)(3)'s predominance requirement. *See id.*

As stated above, to determine whether the more stringent requirement of predominance is met, a court must inquire into the nature of the evidence required to prove the case. *Blades*, 400

---

[3]This point need not be expounded upon.

[4]Of course, should it appear Hopkins has become derelict in undertaking his duties, the Court maintains the right to modify this finding, Fed. R. Civ. P. 23(c)(1)(C), and will do so.

F.3d at 566. If, to make a prima facie showing on a given question, the members of a proposed class must present evidence that varies from member to member, then it is an individual question for purposes of Rule 23(b)(3); if the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. *Id.* Accordingly, just because the legal issues or underlying theories of recovery involved may be common to all class members does not mean that the proof required to establish these same issues is sufficiently similar to warrant class certification. *See id.* Therefore, "[i]n order to effectively make the Rule 23(b)(3) inquiry, it is necessary for a court to consider what will have to be proved at trial and whether those matters can be presented by common proof or whether individual proof will be required."[5] 7AA Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 1985 (3d ed. 2005).

In this case, Hopkins has pled three separate causes of action. Each cause of action, as it relates to Rule 23(b)(3)'s predominance requirement shall be separately discussed below.

    a.    **Claims Under the MoUCC**

All of Plaintiffs' claims under the MoUCC raise the same legal question: Do the pre-sale notices Defendant sent to Plaintiffs fall short of the MoUCC requirements.[6] As stated above, this

---

[5] However, in conducting a Rule 23(b)(3) analysis, a court may not inquire into whether there is a substantial possibility that the class would prevail on the merits. *Mersay v. First Republic Corp. of Am.*, 43 F.R.D. 465 (D.C.N.Y. 1968). Thus, the Court will not evaluate whether Hopkins most likely will or will not be able to prove his case; rather the Court evaluates the nature of the evidence Hopkins and Plaintiffs must present to prove their case.

[6] Defendant contends that before this question may be resolved it will be necessary to have "mini-trials" to determine which state's laws will apply to each individual proposed class member. Defendant claims that in addition to the application of the MoUCC, the Kansas, Arkansas, and Oklahoma Uniform Commercial Codes might also apply to some Plaintiffs' claims due to choice of law provisions or the location of the motor vehicle sale. This argument fails, however. First, it appears that the MoUCC will apply to the vast majority, if not all, of the Plaintiffs' Uniform Commercial Code claims. Second, there is little or no difference between

9

is a legal question. *See* MoUCC § 400.9-613 cmt. 2. To prove this claim, Hopkins must enter evidence of the pre-sale notice that he received, which the Court may use to determine whether the notice complies with the MoUCC. While it is clear not all Plaintiffs received the exact same pre-sale notice Hopkins received, all Plaintiffs will rely on the same basic evidence to prove their case (i.e., whatever version of pre-sale notice they might of received). Resolution of the issue of whether the pre-sale notices were deficient will resolve all class members' claims.

Common questions of law and fact do predominate the claims under the MoUCC. There are naturally some individualized issues that apply to various class members, such as a given Plaintiff's damages calculation, but such issues are not central to Plaintiffs' claims and do not undermine the predominance requirement. Rule 23(b)(3) does not require every issue be common among all Plaintiffs; rather, it only requires that material, substantial issues predominate over individual issues.

### b. Claims Under the MMPA

Common questions of law and fact predominate Plaintiffs' claims under the MMPA. Each class member may attempt to prove Defendant engaged in an unfair practice in violation of the MMPA through use of the following common evidence: (1) the documents and other evidence demonstrating the relationship between Defendant and Centrix, including the PMP; (2) industry practice among lenders and loan servicers; (3) that they entered into an agreement, similar in nature to all other Plaintiffs and evidenced by standardized Retail Installment Contracts and Security Agreements, for the purchase of a motor vehicle that was eventually used as security for a loan held

---

the Uniform Commercial Codes of the previously mentioned states. Any slight differences may be addressed throughout the course of the litigation. At this juncture, the Court declines determining the choice of law issues, which may be more properly resolved in a motion for summary judgment.

by Defendant as a secured party; (4) the pre-sale notice he or she received; and (5) any lien records.[7] Again, the largest individualized question this claim presents is the determination of a given class member's individual damages if liability is established. Such individualized issues do not undermine the predominance requirement.

      **c.     Claims Under Common Law for the Tort of Conversion**

The issue of conversion in this case presents some difficulty. The common law tort of conversion is defined as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A (2009). Under this definition, conversion, if any, occurred at the time Defendant intentionally exercised dominion or control over Plaintiffs' vehicles. This implies that conversion occurred where and when Defendant originally repossessed Plaintiffs' vehicles.[8]

The facts indicate that some of Plaintiffs' vehicles where repossessed in states other than Missouri, including Kansas and Oklahoma. Missouri has a ten (10) year statute of limitations for conversion of personal property. *See* Mo. Rev. Stat. §§ 537.010, 516.110. Both Kansas and Oklahoma maintain a two (2) year statute of limitation for such actions. *See* Kan. Stat. Ann. § 60-513(a)(2) & Okla. Stat. tit. 12 § 95(3). Missouri law deems statute of limitations as procedural in nature; thus, a federal court sitting in diversity within the State of Missouri is generally required to apply Missouri's statute of limitations to claims brought before it. *See Rademeyer v. Farris*, 284

---

      [7]This list is not meant to be exhaustive or exclusive.

     [8]Whether Defendant has an absolute defense to such claims based on its security interest or agreement(s) with various Plaintiffs is a separate issue that need not be resolve here.

F.3d 833, 836 (8th Cir. 2002). However, Mo. Rev. Stat. § 516.190, Missouri's borrowing statute, requires the application of another state's limitations period if the cause of action originated in the other state and is barred by that state's statute of limitations.

Thus, in this case, it would be necessary to individually determine in which state each class members's vehicle was repossessed to determine the applicable law. It would then be necessary to look at the time when each repossession occurred to determine whether the statute applicable to a particular class member bars recovery for conversion. Based on the above, these *individualized* questions would predominate the claims for conversion. Therefore, Hopkins's common law tort claim for conversion fails to satisfy Rule 23(b)(3)'s predominance requirement and will not be certified.

### ii. Superiority of a Class Action

The last requirement for class certification is that the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). Rule 23(b)(3) reveals that the following four (4) things are pertinent to determining whether a class action is a superior method of adjudication: (1) the class members' interest in individual control of case prosecution or defense; (2) the extent and nature of any litigation a class member may have already begun; (3) the desirability, or lack thereof, of concentrating the litigation of the claims in this forum; and (4) the potential difficulties in managing the class action.

The factors above all favor class certification of the remaining claims. Recoveries in this case, while not trivial given Hopkins's claim for damages in excess of ten-thousand-dollar

($10,000)[9], might be considered by some attorneys to be of such a small size that prosecution of the case would be cost prohibitive if Plaintiffs were forced to litigate the remaining claims separately. In addition, if each of the one-hundred-forty (140) class members were forced to bring an individualized suit, such suits would unnecessarily burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties. *See In re Potash Antitrust Litig.*, 159 F.R.D. 682, 699 (D. Minn. 1995). Further, no evidence has been submitted that demonstrates proposed class members have already begun to individually litigate claims against Defendant. Concentrating the litigation of Plaintiffs' claims in this forum is also desirable and logical given the findings above indicating the predominance of common questions of law and fact between all Plaintiffs' claims. *See id.* Lastly, while this case may prove complex, the Court is satisfied that the Court's management methods, combined with counsel's professional cooperation, will make this case reasonably manageable. *See id.*

## CONCLUSION

As demonstrated above, all of Rule 23's requirements for class certification are met for Hopkins's claims under the MoUCC and the MMPA. Therefore, the Court **GRANTS** Hopkins's Motion for Class Certification on those claims and certifies those claims to proceed under Rule 23(b)(3) as described below. However, regarding Hopkins's request to certify claims for conversion, the Court **DENIES** Hopkins's Motion for Class Certification for claims under the common law tort of conversion. For the reasons stated above, it is

---

[9]Class members' damages in the event of an award might vary greatly from Hopkins's claimed damages depending on the purchase price of the motor vehicle a particular class member purchased and the financing fees and/or other fees paid, if any.

13

**ORDERED** that Hopkins's claims, as stated in his First Amended Class Action Petition for Damages, under the MoUCC and MMPA are certified to proceed under Rule 23(b)(3) with respect to the following class: All persons who

1) obtained a motor vehicle loan or financing from Defendant in conjunction with the PMP administered by Centrix;

2) obtained a Missouri Certificate of Title for that motor vehicle identifying Defendant as the lienholder; and

3) had said motor vehicle repossessed.

**IT IS FURTHER ORDERED** that the parties, within twenty (20) days of entry of this Order, shall submit a proposed notice to the class. Both parties must agree on the form of the notice. Once the parties have determined the form of the notice and the Court has approved of that notice, Hopkins, as requested, shall be allowed to direct mail notices to each proposed class member using their last known address, and addresses updated by Class Counsel using third-party services.

**FINALLY, IT IS ORDERED** that R. Frederick Walters, J. Michael Vaughan, Kip D. Richards, and Garrett M. Hodes of the law firm of Walters Bender Strohbehn & Vaughan, P.C. are hereby appointed as Class Counsel.

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: February 18, 2010