IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| CECIL E. HOPKINS, individually and on behalf of a class of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 08-05052-CV-SW-GAF |
| KANSAS TEACHERS COMMUNITY CREDIT UNION, | ) ) ) ) | |
| Defendant/Third Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| MARATHON ROTHSCHILD CREDIT UNION, et al., | ) ) ) | |
| Third Party Defendants. | ) | |

**ORDER**

Presently before the Court is Defendant Kansas Teachers Community Credit Union's ("Defendant") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. (Doc. # 94). Plaintiff Cecil E. Hopkins ("Plaintiff") opposes. (Doc. # 126). For the reasons set forth below, Defendant's Motion for Summary Judgment is **DENIED**.

**DISCUSSION**

**I.   FACTS**

On March 25, 2004, Plaintiff purchased a 2001 Chevrolet Monte Carlo (the "Vehicle") in Parsons, Kansas, from the Mayse Automotive Group (the "Kansas Car Dealer"). (Deposition of Cecil Hopkins, Jr. (hereafter "Hopkins Depo."), 58:1-77:25). Plaintiff signed a Retail Installment

1

Contract and Security Agreement (the "Kansas Installment Contract") in Parsons, Kansas, with the Kansas Car Dealer for the purchase of the Vehicle. (*See* Kansas Installment Contract; Hopkins Depo., 76:20-77:6). Plaintiff purchased the Vehicle primarily for his personal, family, or household use. (First Amended Petition (the "Complaint"), ¶¶ 4, 25, 36; Hopkins Depo., 66:25-67:10, 122:12-14). Under the terms of the Kansas Installment Contract, Plaintiff agreed to make a series of monthly installment payments (in excess of four (4) installments) beginning on May 8, 2004, to pay for the Vehicle. (*See* Kansas Installment Contract; Hopkins Depo., 76:20-77:6, 79:17-80:6, 81:19-82:19). The amount financed was under $25,000.00. (*See* Kansas Installment Contract). Defendant is located in Pittsburg, Kansas. (Affidavit of Mark Kolarik ("Kolarik Aff."), ¶ 2). The Kansas Car Dealer assigned the Kansas Installment Contract to Defendant. (Kolarik Aff., ¶ 34; Hopkins Depo., 83:3-12, 100:11-25). Defendant hired Centrix Resource Systems, LLC ("Centrix") to service the Kansas Installment Contract on its behalf. (Kolarik Aff., ¶ 35).

Plaintiff agreed in the Kansas Installment Contract that he would be in default if he failed to make payments as required. (*See* Kansas Installment Contract; Hopkins Depo., 76:20-77:6, 150:15-18). Plaintiff paid $1,000.00 as a down payment on the Vehicle on the same day he executed the Kansas Installment Contract. (Kansas Installment Contract). Plaintiff also paid $1,175.00 for a GMPP Service Contract, a $49.00 "Admin/Doc. Fee," and $495.00 for default insurance premiums. (*Id.*). However, there is no evidence demonstrating Plaintiff ever made any further payment on the Kansas Installment Contract. (*See* Hopkins Depo., 82:4-6). Accordingly, Plaintiff defaulted under the terms of the Kansas Installment Contract. (*Id.* at 139:22-14:14). The Kansas Installment Contract contained various provisions granting Defendant certain remedies upon default, including, with limitations, the right to repossess the Vehicle. (*See* Kansas Installment Contract, p.

2; Hopkins Depo., 150:15-18).

On or about July 20, 2004, Centrix, as Defendant's agent, repossessed the Vehicle in Carl Junction, Missouri. (Kolarik Aff., ¶ 38). On the same day, Centrix sent Plaintiff a notice (the "July 30, 2004, Notice") to his address at 505 Karen Drive, Carl Junction, Missouri, advising him that the Vehicle had been repossessed and would be sold if he failed to pay the full balance owing under the Kansas Installment Contract. (Kolarik Aff., ¶ 39; July 30, 2004, Notice). While Plaintiff did reside at 505 Karen Drive, Carl Junction, Missouri, with his girlfriend at the time he entered into the Kansas Installment Contract, shortly after purchasing the Vehicle in March, Plaintiff moved to a friend's house and did not have mail forwarded to his friend's address. (*See* Kansas Installment Contract; July 30, 2004, Notice; Hopkins Depo., 46:9-51:25). Plaintiff does not recall ever receiving the July 30, 2004, Notice, and he did not read the July 20, 2004, Notice until the night before his deposition. (Hopkins Depo., 116:4-19). Plaintiff did not make additional payments on the delinquent balance under the Kansas Installment Contract, which at the time of repossession totaled $15,713.00. (Hopkins Depo., 85:13-87:21, 93:13-94:2, 140:15-142:14; Kolarik Aff., ¶¶ 40-41).

In September of 2004, Defendant obtained a repossession title from the Missouri Department of Revenue, transferring ownership of the Vehicle to it. (Doc. # 126- 16). The Vehicle was sold at the Manheim Auto Auction in Kansas City, Missouri, on October 27, 2004, for $8,569.65. (Kolarik Aff., ¶ 42). Plaintiff does not argue that this amount was below the fair market value of the Vehicle at the time it was repossessed. (Hopkins Depo., 128:20-21; Suggestions in Support of Plaintiff's Motion for Class Certification (Doc. # 58), p. 33). Defendant's expert, professor George Hoffer, also concluded that "the price obtained for the vehicle [was] well within the standard of reasonableness." (Hoffer Report, p. 2, ¶ 5).

In Count I of the Complaint, Plaintiff alleges he and the putative class members are entitled to statutory damages under Mo. Rev. Stat. § 400.9-625(c) and all other relief allowed by the Missouri Commercial Code and Missouri Law due to Defendant's failure to supply notice in conformity to statutory requirements prior to the sale of the Vehicle. (Complaint, Count I; Doc. # 126, p. 14). Also in Count I, Plaintiff alleges Defendant should be barred from collecting the deficiency balance on the amount still owing under the Kansas Installment Contract (and on amounts owed by putative class members). Plaintiff's Count II, asserts a claim against Defendant for a violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.* (the "MMPA"). (Complaint, Count II). Finally, in Count III of the Complaint, Plaintiff asserts a common law claim for conversion. (*Id.* at pp. 23-24).

Defendant now argues Plaintiff may not both recover statutory damages under Mo. Rev. Stat. 400.9-625 and prohibit Defendant from obtaining a deficiency judgment for any remaining balance owed. (Doc. # 95). Further, Defendant contends Plaintiff cannot succeed on his MMPA claim because he never made an installment payment under the Kansas Installment Contract and, therefore, cannot demonstrate causation between the alleged wrongful conduct and his loss. (*Id.*). Finally, Defendant argues Plaintiff's claim for common law conversion must fail because Defendant was entitled to repossess the Vehicle, and Plaintiff had no right to the Vehicle at the time of repossession. (*Id.*).

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to

4

judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, a district court must view the facts "in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be draw from the facts." *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990). A court does not weigh the evidence to resolve disputed facts, but instead determines whether there are genuine issues of fact that must be resolved at trial. *See Heritage Constructors, Inc. v. City of Greenwood, Ark.*, 545 F.3d 599, 601 (8th Cir. 2008).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Mo. ex rel. Garstang v. U.S. Dep't of Interior*, 297 F.3d 745 (8th Cir. 2002) (citations omitted). If a moving party carries its initial burden, the party opposing summary judgment must go beyond the pleadings, and by affidavits or by the "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a party bearing the burden of proof on an essential element of a claim does not make a sufficient showing on the element, the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

#### A. Choice of Law

When sitting in diversity, a district court "applies the law, including the choice-of-law rules, of the state in which it sits." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). Thus, the Court applies Missouri's choice-of-law rules. Section 1-301 of the MoUCC and the accompanying comments address choice-of-law when dealing with consumer transactions such as the one here. Comment 3 makes clear that in a case "of a sale of goods to a consumer, in which

the consumer both makes the contract and takes possession of the goods in the same jurisdiction and that jurisdiction is not the consumer's principal residence," the protections afforded by the jurisdiction where the contract was signed and possession was taken apply. *See* Mo. Rev. Stat. § 84-1-301, cmt. n.3 (2003 & Supp.). Here, Plaintiff both executed the Kansas Installment Contract and took possession of the Vehicle in Kansas.[1] Thus, the Court applies Kansas law to Plaintiff's Count I.[2]

Further, there is some dispute regarding whether Kansas' Consumer Credit Code, Kan. Stat. Ann. § 16a-1-101 *et seq.* (the "U3C"), is also applicable for the purpose of deciding Plaintiff's Claim I. Under Kan. Stat. Ann. § 16a-6-102, the U3C applies to all "consumer credit transactions made in [Kansas]." Neither party disputes Plaintiff's purchase of the Vehicle and execution of the Kansas Installment Contract constituted a "consumer credit transaction." Thus, where applicable, the Court will review and apply the provisions of the U3C.

## B. Plaintiff's Claims for Relief Under Count I

### i. Plaintiff's Lack of Reliance

Defendant first argues Plaintiff may not succeed on Count I because he did not detrimentally rely on the allegedly defective July 30, 2004, Notice. However, under the Kansas Uniform Commercial Code (the "KsUCC"), whether Plaintiff received or relied on Defendant's notice does not vitiate Defendant's statutory obligation to "send" Plaintiff a "reasonable authenticated

---

[1] Plaintiff's Kansas Installment Contract did not contain a choice of law provision. (*See* Kansas Installment Contract).

[2] The same result would follow if the Court used the most significant relationship test to determine which state's law applies. The Court applies Missouri law to Plaintiff's claim under the MMPA and common law claim for conversion. This ruling is presently made applicable only to Plaintiff's personal claims against Defendant.

notification of disposition." *See* Kan. Stat. Ann. § 84-9-611(b). Thus, Plaintiff's reliance on the July 30, 2004, Notice, or lack thereof, is immaterial to the question of whether Defendant failed to comply with statutory notice requirements.

### ii. The Scope of Plaintiff's Available Remedies

Defendant argues the U3C governs the scope of Plaintiff's available remedies, limiting Plaintiff's relief to only a bar against Defendant collecting a deficiency judgment. However, a careful reading of the U3C demonstrates Plaintiff is not foreclosed from seeking both protection from a deficiency judgment and statutory damages under the KsUCC.

Kan. Stat. Ann. § 16a-1-103, entitled "Supplementary general principles of law applicable," states, "Unless displaced by the particular provisions of [the U3C], the uniform commercial code and the principles of law and equity . . . supplement its provisions." As the comment to § 16a-1-103 explains, many transactions are subject to both the U3C and other law, particularly the UCC. Where there is a conflict between the U3C and other law, the U3C controls. However, if no conflict is present, other law, including the provisions of the KsUCC, are applicable and serve to supplement the U3C. *See* Kan. Stat. Ann. § 16a-1-103 cmt. n.1. Section 16a-6-115, entitled "Consumer's remedies not affected," further clarifies the issue by stating, "The grant of powers to the administrator in this article does not affect remedies available to consumers under K.S.A. 16a-1-101 through 16a-9-102 or under other principles of law or equity." Here, the comments to § 16a-6-115 are particularly helpful:

> It is not the intention of the grant of powers to the administrator or of any of the other provisions of the U3C dealing with consumers' remedies to diminish in any way the availability of consumers' remedies under other principles of law or equity or to impede the development of judicially created law in this area . . . Various other consumers' remedies provided by other applicable law are not affected by the U3C.

7

There is no conflict between § 16a-5-103, which bars a secured creditor who violates the U3C from securing a deficiency judgment, and § 84-9-625(c) of the KsUCC, which provides for statutory damages in certain consumer-goods transactions. *See Topeka Datsun Motor Co. v. Stratton*, 736 P.2d 82, 90 (Kan. Ct. App. 1987) ("[T]here is no conflict inherent in the remedial provisions of the two laws."). Thus, the KsUCC provisions allowing for statutory damages in consumer transactions apply to this case and act to supplement the provisions of the U3C.

The Court is mindful that the Court of Appeals of Kansas, in *Topeka Datsun*, concluded the U3C's bar against a deficiency judgment is the sole remedy for disposal of consumer collateral in a commercially unreasonable manner, unless the collateral would have yielded a higher sum than the amount owing. 736 P.2d at 90. However, given the current language of the U3C and the KsUCC, the court's holding finds little support. In *Topeka Datsun*, although the court noted that "there is no conflict inherent in the remedial provisions of [the U3C's bar against a deficiency judgment and the KsUCC's award of statutory damages]," the court declined the application of the KsUCC's statutory damages provision. *Id.* This holding cannot stand given the current language of § 16a-1-103 and § 16a-6-115.

The U3C makes clear that so long as its provisions do not conflict with other law, such as the KsUCC, those other laws apply and supplement protections afforded by the U3C. Here, should Plaintiff prevail, the U3C provides protection from Defendant seeking a deficiency judgment, and the KsUCC provides Plaintiff further protection by providing statutory damages. Thus, Defendant's argument on this issue is without merit.

**C.    Plaintiff's Claim Under the MMPA**

Defendant argues Plaintiff cannot succeed on his claim brought under the MMPA because

8

Plaintiff never made an installment payment on the Vehicle. Section 407.025 of the MMPA, in relevant part, states, "Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal" may bring an action for a violation of the MMPA. Here, Plaintiff alleges he lost both possession of the Vehicle due to Defendant's alleged failure to provide adequate notice and wrongful repossession and that he lost money as a result of Defendant's alleged inclusion of improper fees and charges paid at the time he executed the Kansas Installment Contract. Under the MMPA, either of these allegations, if true, is sufficient to meet the MMPA's "ascertainable loss of money or property" requirement. Therefore, Plaintiff has met his initial burden of demonstrating he suffered an "ascertainable loss of money or property," and material issues of fact remain.

**D.     Plaintiff's Claim for Conversion**

Defendant's final argument is that Plaintiff cannot succeed on his common law conversion claim because at the time Defendant's agent repossessed the Vehicle, Plaintiff was in default under the terms of the Kansas Installment Contract. Under Missouri law, conversion may be shown by establishing: (1) a tortious taking; (2) any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the true owner's rights; or (3) by a refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper." *Mackey v. Goslee*, 244 S.W.3d 261, 263-64 (Mo. Ct. App. 2008) (quotation omitted). Each theory above requires a plaintiff to "show title to, or a right of property in, and a right to the immediate possession of the property concerned at the alleged date of conversion." *Bell v. Lafont Auto Sales*, 85 S.W.3d 50, 54 (Mo. Ct. App. 2002).

Here, it is questionable whether Plaintiff can demonstrate he had title to, or a right of

9

property in, the Vehicle at the time it was repossessed and that he had an immediate right of possession when the Vehicle was repossessed. It is undisputed that Plaintiff was in default under the Kansas Installment Contract for failure to make payments on the Vehicle. However, the Kansas Installment Contract's default provision states, in relevant part, "**REMEDIES:** If you are in default on this Contract and, if applicable, *we gave you any required notice of right to cure* for failure to make a required payment and you failed to cure any default . . . We may immediately take possession of the Property by legal process or self-help." (Kansas Installment Contract) (emphasis added).

One of the main issues to be decided in this case is whether Defendant gave Plaintiff the notice statutorily required. If it is determined that Defendant's notice was deficient, Plaintiff's claim for conversion is viable given the terms of the Kansas Installment Contract. Thus, material issues of fact remain that must be resolved before finally determining the viability of Plaintiff's conversion claim.

## CONCLUSION

The facts of this case and the law applicable to it preclude entry of summary judgment at this time. For the reasons stated above, Defendant's Motion for Summary Judgment is hereby **DENIED**.
**IT IS SO ORDERED.**

                                              s/ Gary A. Fenner
                                              Gary A. Fenner, Judge
                                              United States District Court

DATED: August 24, 2010