**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

CECIL E. HOPKINS,

   individually, and on behalf of a Class of all
others similarly situated,

               Plaintiff,

vs.

KANSAS TEACHERS COMMUNITY
CREDIT UNION,

             Defendant

vs.

MARATHON ROTHSCHILD CREDIT
UNION, et al.,

         Third Party Defendants.

Case No. 08-5052-CV-SW-GAF

**SUGGESTIONS IN SUPPORT OF MOTION AND APPLICATION FOR AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND COURT COSTS**

# TABLE OF CONTENTS

I.    OVERVIEW OF THIS APPLICATION FOR FEES AND EXPENSES. .........................1

II.   THE AWARD OF ATTORNEYS' FEES THAT PLAINTIFF'S COUNSEL
      SEEKS IS REASONABLE AND FAIR TO THE SETTLEMENT CLASS. ....................3

      A.    Applicable Legal Standards .................................................................................3

      B.    The Requested Award Is A Fair And Reasonable Percentage Of The
            Common Settlement Fund. .................................................................................4

      C.    A Review Of Relevant Factors Demonstrates That The Requested
            Attorneys' Fee Award Is Fair And Reasonable. ..................................................6

            1.    Time And Labor Required. ...........................................................................8

            2.    Novelty And Difficulty Of Questions Involved........................................10

            3.    Skill Needed To Perform The Legal Service Properly. .............................12

            4.    Experience, Reputation, And Ability Of The Lawyers..............................13

            5.    Whether The Fee Is Fixed Or Contingent..................................................14

            6.    The Nature And Length Of The Professional Relationship With
                  The Client...................................................................................................18

            7.    The Results Achieved For The Settlement Class........................................19

            8.    Public Policy Favors The Fee Request. .....................................................20

      D.    The Award Of Expenses And Costs That Plaintiff's Counsel Seeks Is Also
            Reasonable And Fair To The Settlement Class. ..................................................21

III.  CONCLUSION....................................................................................................22

## TABLE OF AUTHORITIES

### Cases

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ..............................................................20

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985) ..........................................21

*Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ..............................................18

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................................3, 21

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .........................3, 15

*Cohen v. Chilcott*, 522 F.Supp.2d 1051 (D.D.C. 2007) ....................................................................4

*Cohn v. Nelson*, 375 F.Supp.2d 844 (E.D. Mo. 2005) ....................................................8, 10, 15, 20

*Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ..........3, 15

*Hall v. Cole*, 412 U.S. 1 (1973) .....................................................................................................21

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994).............................................................................22

*Heilman v. Perfection Corp.*, 93 F.Supp.2d 1311 (W.D. Mo. 2000)................................................8

*In re Aquila ERISA Litigation*, 2007 WL 4244994 (W.D. Mo. 2007)............................................15

*In re Continental Illinois Sec. Lit.*, 962 F.2d 566 (7th Cir. 1992) ..................................................15

*In re Monosodium Glutamate Antitrust Litigation*, 2003 WL 297276 (D. Minn. 2003)...............16

*In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*,
MDL Docket No. 2086, Master Case No. 09-2086-MD-W-GAF............................................5, 15

*In re Texas Prison Litig.*, 191 F.R.D. 164 (W.D. Mo. 1999).............................................................3

*In re U.S. Bancorp Litigation*, 276 F.3d (8th Cir. 2002) ............................................................3, 15

*In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F.Supp.2d 1094 (D. Minn. 2009)...................15

*Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652 (Mo. 1962)...........................................................22

*Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241 (8th Cir. 1996) ...........................................3, 6

*Knopke v. Knopke*, 837 S.W.2d 907 (Mo. App. W.D. 1992)..........................................................22

*Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*,
921 F.2d 1371 (8th Cir. 1990). ................................................................................8

*Maley v. Del Global Technologies Corp.*, 186 F.Supp.2d 358 (S.D.N.Y. 2002) ..........................15

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ........................................................3, 15

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334 (S.D. Fla. 2002) ................................15

*Roberts v. The Source for Pub. Data LP*, 2010 WL 4008347 (W.D. Mo. Oct. 12, 2010)..............7

*United HealthCare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563 (8th Cir. 1996)..............7

*Wess v. Storey*, 22011 WL 1463609 (S.D. Ohio Apr. 14, 2011) ....................................................21

## Statutes

28 U.S.C. §1920.............................................................................................................22

## Federal Rules of Civil Procedure

Rule 23(g) ........................................................................................................................2

Rule 23(h) ....................................................................................................................1, 23

## Missouri Supreme Court Rules

Mo. Rule 4-1.5(a) ........................................................................................7, 16, 17, 18

## Other Authorities

H. Newberg, *Attorney Fee Awards*, § 1.09 (1986) ......................................................16

# I. OVERVIEW OF THIS APPLICATION FOR FEES AND EXPENSES.

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." It further states: "The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Federal Rule 23(h).[1]

Here, Plaintiffs are eligible for an award of attorneys' fees pursuant to the parties' Settlement Agreement, as well as equitable rules which are designed to ensure that the Class Members fairly reward their counsel for their work and effort on behalf of the Class.  Here, by this Motion and Application, Plaintiff's Counsel requests an award of attorneys' fees totaling $800,000.00 to be paid from the common fund established for the Class pursuant to the settlement, and an award of their unreimbursed litigation expenses and courts costs totaling

---

[1] In turn, Federal Rule 54(d)(2) states: "Attorneys' Fees:

(A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
(B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
    (i) be filed no later than 14 days after the entry of judgment;
    (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
    (iii) state the amount sought or provide a fair estimate of it; and
    (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Federal Rule 54(d)(2).

$19,631.62. *See generally* **Ex. 1** (Affidavit of R. Frederick Walters); Rules 23(h)(1); 54(d)(2)(B)(iii).

The award of fees is authorized pursuant to Section 5.b and 5.c of the parties' Settlement Agreement, which provides:

> b.     Plaintiff's Counsel and/or Plaintiff Hopkins may petition the Court for an award of litigation expenses and/or court costs not to exceed $19,631.62. The amount of any such expense and/or award, and any interest attributable to said amount(s) while in escrow, shall also be deducted from the Gross Cash Fund. KTCCU will not object to Plaintiff's Counsel and/or Plaintiff Hopkins applying to the Court for, and receiving, an award of expenses and/or costs in the above amount.

> c.     Plaintiff's Counsel and/or Plaintiff Hopkins may also petition the Court for an award of attorney's fees which shall be a percent of the Gross Settlement Fund but shall not exceed eight hundred thousand dollars ($800,000.00). The amount of any such fee award approved by the Court, and any interest attributable to said amount while in escrow, shall be deducted from the Net Settlement Fund to determine the Net Distributable Settlement Fund and the individual KTCCU Settlement Class Member Payments. KTCCU will not object to Plaintiff's Counsel and/or Plaintiff Hopkins applying to the Court for, and receiving, an award of attorney's fees in the above amount.

Settlement Agreement, §§5.b, 5.c (**Ex. 2**); *see also* Rule 54(d)(2)(B)(ii)-(iv).

The Court appointed Walters, Bender, Strohbehn & Vaughan, P.C. to represent the Class in its class certification order. *See* Doc. 151; Rule 23(g). Class Counsel negotiated the settlement on behalf of the Class with the assistance of a mediator, Hon. Richard A. Ralston. **Ex. 1**, ¶¶37-38. There are no special agreements (other than the Settlement Agreement) with respect to the payment of attorneys' fees and expenses.

Rule 23(h)(1) states, in part: "Notice of the motion must be served on all parties, and, for motions by class counsel, directed to class members in a reasonable manner." Notice of the intention of Plaintiff's Counsel to apply for the above awards was given to the Settlement Class by means of the *Notice of Class Action Settlement and Settlement Hearing. See* **Ex. 3**, Doc. 188.

No member of the Settlement Class has objected to the Settlement or to the proposed awards of attorneys' fees, expenses and court costs. *See* Rule 23(h)(2).

## II. THE AWARD OF ATTORNEYS' FEES THAT PLAINTIFF'S COUNSEL SEEKS IS REASONABLE AND FAIR TO THE SETTLEMENT CLASS.

### A. Applicable Legal Standards

The award of attorneys' fees is within the Court's discretion. *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). Here, the requested award is supported by both the (1) "common fund" or "percentage of the recovery or fund" method and (2) the "lodestar" method should the court desire to cross check against the lodestar. Pursuant to the *common fund* method the Court sets a *reasonable* fee from the common fund recovered for the Class. The *lodestar* method is based on "the consideration of hours and rates." *See In re Texas Prison Litig.*, 191 F.R.D. 164, 176 (W.D. Mo. 1999).

The Eighth Circuit has indicated that the common fund method is preferable to the lodestar method in class action settlements where, as here, a common settlement fund is obtained for the Class. *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Johnston,* 83 F.3d at 245; *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). The doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense...." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). Recent cases conclude that fee awards in common fund cases range between 19% and 50%. *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, *21 (D.N.J. Apr. 8, 2011); *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, *12 (S.D. Ohio Jan. 26, 2011)

### B. The requested award is a fair and reasonable percentage of the common settlement fund.

Here, Plaintiff's Counsel seeks an award of $800,000.00 in attorneys' fees. The recovery

3

obtained for the Class is in the form of a "true common fund" that consists of a substantial monetary payment of $1,750,000 and Defendant's waiver of deficiency claims totaling $878,555.43. The Settlement Agreement defines "Gross Settlement Fund" as the sum of these amounts, which are also defined as a $1,750,000.00 "Gross Cash Fund" and $878,555.43 "Gross Monetary Sum of Write Offs." *Settlement Agreement*, at ¶2.11.

"In a true common fund case, attorneys' fees are paid out of a common fund shared with class plaintiffs, such that the amount recovered by plaintiffs is reduced by the amount awarded in attorneys' fees." *See Cohen v. Chilcott*, 522 F.Supp.2d 105, 121 (D.D.C. 2007). It is from that amount, totaling $2,628,555.43 ($1,750,000 + $878,555.43), that the requested attorneys' fees and expense award ($800,000 and $19,631.62), and incentive award ($17,500), have been calculated and must be paid, because the parties' settlement did not provide that these awards would be paid "separately" or "additionally" in connection with the relief to the Class. Additionally, because the parties' settlement followed the filing of *Plaintiff's Motion for Partial Summary Judgment*, the settlement is designed to reflect the value of the Class members' Commercial Code claims, and to provide full relief for the alleged violations of the Commercial Code, which does not contain a statutory fee shifting provision for prevailing parties. *See* **Ex. 1** at, ¶¶39, 83. The requested fee award is 30.4 % of the common fund and within the ranges routinely awarded in class action settlement.

Although not necessary given the Eighth Circuit's stated preference for the common fund method in a common fund case such as this, the award is also supported by the lodestar method.[2] Here, Class Counsel expended no less than 2,034 hours of attorney and paraprofessional time.

---

[2] Both §§407.025 and 408.562 RSMo permit a Court to award attorneys' fees "to the prevailing party attorney's fees, based on the amount of time reasonably expended." Pursuant to these statutes, the Class members may recover their attorneys' fees if they were to prevail on their claims for violations of Missouri's Merchandising Practices Act, at §407.025, and Commercial Code, at §408.562 RSMo.

4

The lodestar amount is $ 637,065 based upon a blended hourly rate of $313. The lodestar cross check indicated that the requested award of attorneys' fees has a multiplier of 1.25. *See* **Ex. 1** at, ¶ 52. This Court recently approved as fair and reasonable an attorneys' fee award in a class action settlement in *In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, MDL Docket No. 2086, Master Case No. 09-2086-MD-W-GAF from which this settlement may be favorably compared. In the *Propane Tank* class action the attorneys sought a fee award of $2,200,000 from lodestar amount of $1,553,325, which was based upon a blended hourly rate of $495 per hour. *See* **Ex. 2**. This Court's order noted that the Eighth Circuit has approved multipliers of up to 5.6. *See* **Ex. 2**, at ¶8. The *Propane Tank* multiplier was 1.4. *Id*. Here, the requested fee has a multiplier of 1.25, which is well-within the ranges previously approved by this Court and the Eighth Circuit and should be approved in this case.

The difference between the negotiated fee award in cases like *Propane Tank* and the one here, however, is that in *Propane Tank* the requested attorneys' fee award was to be paid "*in addition to*" the $10,000,000 to be paid to the settlement class. Here, and in contrast to *Propane Tank*, the award is to be paid out of the "true common fund" and the Court's award of an amount less than the requested award of $800,000.00 could result in a greater monetary award to the Class. Given this distinction, and given some of the expressed deficiencies in the lodestar approach, movants suggest that the Court should apply the percentage of the fund method to address the fairness of the requested fee award. *See Johnston*, 83 F.3d at 245 n.8.[3] The Court

---

[3] The Eighth Circuit noted that the Third Circuit Task Force, which studied the lodestar method, had identified the following deficiencies in that approach:

> The Task Force discussed some of the deficiencies of the lodestar process particularly as it applies to a fund case. First, calculation of the lodestar increases the workload of an already over-taxed judicial system. Second, the elements of the lodestar process are insufficiently objective and produce results that are far from homogenous. Third, the lodestar process creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law. Fourth, the lodestar is subject to manipulation by judges who

should approve and award Plaintiff's Counsel the requested attorneys' fees.

The award of expenses and costs that Plaintiff's Counsel seeks totals $19,631.62. Although the expenses and costs currently slightly exceed that amount, (See Ex. 1-3) Plaintiff's Counsel seek only the $19,631.62 "not to exceed amount." It is, and will be by the time this matter is finally concluded, less than the total fees and amount of expenses that Plaintiff's Counsel actually incurred and advanced in connection with the Litigation. *See* **Ex. 1-3**, ¶¶ 90-92. This amount is also fair and should be approved by the Court.

### C. A Review Of Relevant Factors Demonstrates That The Requested Attorneys' Fee Award Is Fair And Reasonable.

The Court's decision as to the amount of a reasonable fee award is, regardless of the approach used, ultimately a discretionary one. The court will be guided by its knowledge and experience, familiarity with the case and the work and efforts of Class Counsel, the results obtained, and other factors. Plaintiffs submit that the Court should approve the award of fees and expenses they seek given the results obtained and all the other relevant factors. The Settlement for which the fees are sought was reached after more than 4 years of extensive, complex and hard-fought investigation and litigation. Further, not one of the 141 members of the Settlement Class as to the 98 motor vehicle loans has objected to the proposed award. Nor does the

---

prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount. Fifth, although designed to curb certain abuses, the lodestar approach has led to others. Sixth, the lodestar creates a disincentive for the early settlement of cases. The report in this area added "... there appears to be a conscious, or perhaps, unconscious, desire to keep the litigation alive despite a reasonable prospect of settlement, to maximize the number of hours to be included in computing the lodestar." Seventh, the lodestar does not provide the district court with enough flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered. Eighth, the lodestar process works to the particular disadvantage of the public interest bar. Ninth, despite the apparent simplicity of the lodestar formulation, considerable confusion and lack of predictability remain in its administration. *Court Awarded Attorney Fees,* 108 F.R.D. at 246-49.

*Johnston*, 83 F.3d at 245 n.8.

Defendant object to the award. Their silence surely reflects their consent with the requested award and their agreement that it is entirely reasonable.

In determining the reasonable value of legal services, Courts have considered:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Roberts v. The Source for Pub. Data LP*, 2010 WL 4008347, *3 (W.D. Mo. Oct. 12, 2010)(citing *United HealthCare Corp. v. American Trade Ins. Co.,* Ltd., 88 F.3d 563, 575 n.9 (8th Cir. 1996)); Mo. Rule 4-1.5(a)(itemizing relevant factors to be used by a court in determining the reasonableness or appropriateness of an attorney's fees).[4]

The Eighth Circuit has observed that in considering the award of attorneys' fees in a class action settlement: "We are mindful of the limited scope of our review. We are dealing, as before, with a settlement agreement and such agreements are presumptively valid." *Little Rock School Dist.* v. *Pulaski County Special School Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990). Here, as with the other settlement terms, the parties' agreement to the award of attorneys' fees and

---

[4] The factors enumerated in the *Roberts and United Healthcare Corp.* cases are essentially the same factors listed in Mo. Rule 4-1.5, which provides:

"A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

1. the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
2. the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
3. the fee customarily charged in the locality for similar legal services;
4. the amount involved and the results obtained;
5. the time limitations imposed by the client or by the circumstances;
6. the nature and length of the professional relationship with the client;
7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and
8. whether the fee is fixed or contingent.

expenses should also enjoy a presumption of fairness. *See Cohn v. Nelson*, 375 F.Supp.2d 844, 861 (E.D. Mo. 2005)("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference."); *compare Heilman v. Perfection Corp.*, 93 F.Supp.2d 1311, 1312 (W.D. Mo. 2000)("It would be inappropriately intrusive, in my judgment, for the court to impose its idea of socially-desirable fees on the parties under the circumstances-and could well result in wasteful satellite litigation in the Court of Appeals if I were to do so.").

Each of these factors supports the propriety of the requested fee award.

### 1. Time and Labor Required.

The time and labor required to prosecute this class action against the Defendant was substantial and of high quality, and supports the requested awards. To date, Class Counsel has expended more than 2,034 hours in connection with the Class members' claims. **Ex. 1**, ¶47.[5] This figure is comprised of no less than 1,449 hours of attorney time and 585 hours of time expended by paraprofessionals. In addition, a substantial number of unrecorded hours were expended by non-timekeepers (*i.e*., administrative personnel employed by Plaintiff's Counsel). *Id.* The time and labor that Plaintiff's Counsel has expended to date (and will continue to expend in distributing the Settlement Funds and working with the Class) support the propriety of the proposed award. The work and effort of Plaintiff's Counsel has included, among other things:

- Researching federal and state law and regulations applicable to Plaintiff's claims and the operations of the Portfolio Management Program;

- Investigation of the Portfolio Management Program, including public record requests, Freedom of Information Act Requests; Non-Public Records Requests and third-party subpoenas and analysis of records;
- determining and verifying the identities and whereabouts of the persons who ultimately became the members of the Settlement Class;

---

[5] Should the Court wish to review those records, Plaintiffs' Counsel will provide redacted time records under seal to protect any attorney-client privileged information contained in the records.

- briefing and opposing Defendant's motion for summary judgment;

- briefing and opposing Defendant's motion seeking leave of court to amend its Answer to assert counterclaims against the Class members;

- briefing a motion to remand;

- issuing and responding to discovery;

- conducting and defending depositions of the parties and their experts;

- briefing Plaintiff's Motion for Class Certification;

- briefing *Plaintiff's Motion for Partial Summary Judgment on Class Claims for Violations of Uniform Commercial Code, Related Affirmative Defenses, and Statutory Damages*; and

- reviewing and analyzing over 25,000 thousands of pages of loan files, servicing files, lien records, pre-sale communications, and other documents needed to build a database to calculate the actual damages sustained by each of the 141 class members in relation to the 98 second mortgage loans at issue.

A detailed description of the work that Plaintiff's Counsel has performed to date on behalf of the Named Plaintiff and the Settlement Class is set forth in the Affidavit of Roy. Frederick Walters ("Walters Affidavit"). *See* **Ex. 1**. Included with the Walters Affidavit is a summary schedule that identifies the $19,631.62 plus of expenses and costs Plaintiff's Counsel also has expended to date. **Ex. 1-3**, ¶¶ 90-92.

Plaintiff's Counsel's work was of a high quality and appropriate given the demands of this litigation. Importantly, a large portion of the time that Plaintiff's Counsel expended in this matter resulted from the briefing in connection with Plaintiff's Motion for Class Certification and Defendant's thorough and aggressive opposition to that motion. Defendant's persistence caused Plaintiff's Counsel to expend hundreds of additional hours to address legal issues which were ultimately resolved in Plaintiff's favor. Another large portion of time resulted from the preparation of Plaintiff's Motion for Partial Summary Judgment. Plaintiff's Counsel is

experienced in prosecuting class actions, and their work has culminated in an exceptional class action settlement – one that has saved this Court and the parties' significant time and expense. This work supports the propriety of the award. *See Cohn,* 375 F.Supp.2d at 862.

### 2. Novelty and difficulty of questions involved.

The factual and legal issues presented by this case were complex and required the knowledge, skill, and dedication of Plaintiff's Counsel. Plaintiff's counsel investigated this case for over 16 months *before* filing suit. During this time, Counsel developed an understanding of Centrix's Portfolio Management Program, the origination of motor vehicle loans and the means by which the Defendant provided the financing to the Class members. as well as the operation of Missouri law with respect to the creation and enforcement of security interests in motor vehicles, all in order to identify the best claims and legal theories and strategies to assert in this action. Counsel also investigated the National Credit Union Association's regulation of Defendant and the Portfolio Management Program, and developed an understanding of the use of loan participation sales by financial institutions involved in motor vehicle financing. There were over 35,000 pages of documents produced in this lawsuit. This study and investigation and review of records was necessary to enable Counsel to address the myriad of factual and legal questions that arose during the lawsuit.

For example, Plaintiff's Motion for Class Certification contained 50 pages of legal briefing and 47 exhibits. Doc. 57, 58. Defendant's response consisted of three separate briefs, including Defendant's motion for summary judgment and motion for leave to amend its answer, containing 115 pages of legal briefing and 48 exhibits. Doc. 91-95.  The next round by Plaintiffs required 113 pages of legal briefing and 47 exhibits. Doc. 126-130. Then, Defendant filed another 35 pages of legal briefing. Doc. 143-144. Defendant's summary judgment presented

unique legal questions that necessitated an understanding of the operation of the recent revisions to the Uniform Commercial Code and the unique consumer protections provided therein, and the effect of those revisions on the case law construing the *prior* version of the Uniform Commercial Code. Defendant's motion for leave to amend its answer presented complex questions of jurisdiction and procedure. The legal briefing was voluminous and the parties, as well as the Court, of course, expended significant amounts of time addressing these complex matters.

Also, *Plaintiff's Motion for Partial Summary Judgment on Class Claims for Violations of Uniform Commercial Code, Related Affirmative Defenses, and Statutory Damages* presented a number of complex questions concerning the legal sufficiency of the pre-sale notices sent to Plaintiff and the Class members and the analysis of the Class members' records for purposes of determining the calculation of the Class members' damages. The *Motion for Partial Summary Judgment* also presented a comprehensive analysis of the Class members' individual claims so as to support the entry of summary judgment on each individual claim. Plaintiff's motion contained nearly 55 pages of legal briefing and 42 exhibits.

The nature and importance of the subject matter also supports the requested awards. The legal rights that Plaintiff's Counsel enforced through this lawsuit are important ones, affecting the public interest and conferring a significant benefit on a class of protected Missouri consumers, both in this case and other class action lawsuits like it. This lawsuit (and others like it) should change the way in which money lenders and financial institutions transact business with consumers and conduct their operations. Consumers of this state should not be victimized in the most important financial transactions in their lives. Without a doubt, the "novelty and difficulty" factor supports the propriety of Plaintiff's application.

### 3. Skill needed to perform the legal service properly.

This factor also supports the requested award. This lawsuit is not an ordinary consumer lawsuit. As stated, there were a plethora of factual and legal issues in this case and the Defendant challenged nearly every one of them. The issues required the briefing, explanation, and presentation of both procedural and substantive issues in the context of both state and federal law. Defendant aggressively defended Plaintiff's Motion for Class Certification. The case was a class action, and the Settlement arises involves the claims of more than 141 individuals with respect to 98 motor vehicle loans. These loans were originated and sold pursuant to a complex loan origination and investment program. Defendant produced 30,545 pages of agreements, loan files, payment records, and other documents. Plaintiff produced 5,100 pages of documents. All 35,645 pages of documents had to be reviewed, analyzed, and summarized by Plaintiff's Counsel for each of the 98 loans in order to develop an understanding of this program and to prepare the *Motion for Partial Summary Judgment*.

Plaintiff obtained over 5,000 pages of records from the National Credit Union Association (2,122 pages), the Missouri Department of Revenue (1,668) and Centrix's former attorneys (884 pages). All of this information was distilled so that it could be both admitted and understood at trial. The skill and experience needed to adequately prepare and present this case was unusually high. The proposed attorneys' fee that Plaintiff's Counsel seeks is a reasonable fee for attorneys of the caliber needed to present and try a consumer class action case such as this.

Courts should encourage plaintiffs' lawyers to accept and prosecute cases of this type against defendants such as the Defendant. Plaintiff's Counsel willingly undertook this matter when others did not or would not. Few other law firms would have been willing to proceed against this defendant at the time this case was filed. The risks and expense associated with this type of class action litigation against defendants like the Kansas Teachers Community Credit

Union make this and other cases like it undesirable for most lawyers and law firms to pursue. There are few reported cases involving class actions related to motor vehicle repossessions. Plaintiff's Counsel should be rewarded for their work given the skill required to perform it. The proposed awards that Plaintiff's Counsel seeks accomplish that task, and fairly so.

The standing of defense counsel is also important in assessing the challenges faced and the skill required to meet the same. Stinson Morrison Hecker, LLP, according to its website, currently employs more than 300 attorneys in its various offices. As set forth above, Defense counsel was able to deluge Counsel and the Court with a stream of motions and other papers. But for the Settlement, Defendant's counsel would have presented a vigorous opposition to *Plaintiff's Motion for Partial Summary.* Such prodigious filings required Plaintiff's Counsel to devote an significant amount of time and other resources to this matter. This factor weighs, too, heavily in favor of a decision to approve the requested fee and expense awards.

### 4. Experience, reputation, and ability of the lawyers.

As the attached *Firm Biography and Class Action Resume* and other materials submitted with this application demonstrate, the attorneys at Walters, Bender, Strohbehn & Vaughan, P.C. have extensive experience in complex and class action litigation. *See* **Ex. 1**, ¶¶ 68-70, **Ex. 1-B**. Each of the partners working on this matter (Walters, Richards, and Vaughan) is an experienced, AV-rated attorney. Similarly, the attorneys for the Defendant, are well-known and recognized as some of the best in the area. Again, the caliber and experience of defense counsel shows what the Defendant thought of the abilities and skill of Plaintiff's Counsel and should be considered.

The experience, reputation and ability of Plaintiff's Counsel were substantial factors in obtaining the settlement. Less experienced or able counsel would not likely have taken the case, let alone achieved the results Plaintiff's Counsel did. The skill and quality of Class Counsel's

work is best reflected by the settlement obtained for the benefit of the Settlement Class. The Settlement for 98 motor vehicle loans is an extraordinary result both in absolute terms and when balanced against the multitude of risks facing Plaintiff's Counsel and the Class. The outcome in this case was in large part due to the experience and willingness of Plaintiff's Counsel competently to try this case, all of which substantiates the propriety of the requested awards.

### 5. Whether the fee is fixed or contingent.

Plaintiff's Counsel undertook this work on a contingency fee basis. Plaintiff's Counsel would have received no compensation at all if Plaintiff had not been successful. In fact, Plaintiff's Counsel would have lost tens of thousands of dollars in unreimbursed expenses and hundreds of thousands of dollars in attorney time their work in this case. Class Counsel faced significant risks from the outset of this litigation, including the risks inherent in seeking to certify a plaintiffs' consumer class. Another risk was that plaintiffs would lose on any one or more of the multiple dispositive motions that the Defendant filed, or would lose at trial. Such risks also substantiate the requested award.

The proposed award of $800,000 is approximately 30.4% of the "Gross Settlement Fund" and at the low end of the percentages customarily charged as a contingency fee by plaintiffs' lawyers possessing the skills needed to handle similar class action cases. **Ex. 1**, ¶¶ 74-77. The contingency fee agreement executed by Plaintiff provided for a 33⅓ or one-third contingency fee and represents a fair market rate for the contingency fee percentage. **Ex. 1**, ¶ 74-76.

The requested fee award is also well within the 19% to 50% rage cited in recent cases. *Bredbenner*, 2011 WL 1344745, *21; *Connectivity Sys. Inc.*, 2011 WL 292008, *12; *see also In re Aquila ERISA Litigation*, 2007 WL 4244994 (W.D. Mo. 2007)(court awarded 33%); *In re U.S. Bancorp Litig.*, 276 F.3d 1008 (8th Cir. 2002)(court awarded 36% of common fund to class

counsel); *Petrovic*, 200 F.3d 1140 (8th Cir. 1999)(court awarded 24%).

Although not the recommended methodology for this common fund case, the contingent fee is also reasonable by way of the lodestar cross-check. As noted above, Counsel's total lodestar amount is $637,065 such that the requested fee award of $800,000 represents a lodestar multiplier of 1.25. **Ex 1**, ¶¶51, 52, **Ex. 1-A**. The lodestar multiplier is appropriate. "In cases where fees are calculated using the lodestar method, counsel may be entitled to a multiplier to reward them for taking on risk and high-quality work." *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F.Supp.2d 1094, 1106 (D. Minn. 2009)(5.6 multiplier); *see also In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation* (**Ex. 2**)(1.4 multiplier); *Cohn*, 375 F.Supp.2d at 862 ("In shareholder litigation, courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation."). Here, the requested fee is within permitted ranges and fair and reasonable by way of the lodestar cross check.

Courts have uniformly held that a trial court must recognize the risk of nonpayment and compensate reasonably for it. *See, e.g., Pinto v. Princess Cruise Lines, Ltd.,* 513 F.Supp.2d 1334, 1340 (S.D. Fla. 2002)("financial risks borne by class counsel fully support the appropriateness of the fee requested"); *In re Continental Illinois Sec. Lit.,* 962 F.2d 566, 569 (7th Cir. 1992)("failure to make any provision for risk of loss may result in systematic under compensation of plaintiffs' counsel"); *Maley v. Del Global Technologies Corp.,* 186 F.Supp.2d 358, 374 (S.D.N.Y. 2002)(it is "imperative that the filing of … contingent [class action] lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits that would not otherwise have been achieved but for their persistent and diligent efforts"). Professor Newberg also acknowledges the propriety of risk compensation:

> [C]ourts have been careful to award a fully compensable reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation. These lawyers assume the risk of no compensation unless they successfully confer common fund benefits on the class, based on their reasonable expectation that they will share in the recovery in a fair proportion, in contrast to receiving a fee based initially on time expended criteria that failed to give the results obtained factor primary consideration.

H. Newberg, *Attorney Fee Awards,* § 1.09 (1986)(footnote omitted). The risks of litigation must be judged at the outset of the case, rather than with hindsight. *See* Mo. Rule 4-1.5(a). Without a doubt, this matter was undertaken at a significant risk of loss to Plaintiff and Plaintiff's Counsel. The results obtained truly are exceptional. The Court should grant Counsel's Application as requested. The risks to Plaintiff's Counsel of not being paid for their years of work were considerable and real and further substantiate the proposed awards. *In re Monosodium Glutamate Antitrust Litigation*, 2003 WL 297276, at *1 (D. Minn. 2003)("The theory behind attorneys' fees awards in class actions is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action."). This lawsuit has established several aspects of the law relative to claims filed pursuant to the Missouri's Commercial Code and Merchandising Practices Act and forms the foundation for success in other lawsuits. Nearly every aspect of the lawsuit has been challenged. Plaintiff has ultimately prevailed on nearly every issue presented including, among others, Defendant's motion for summary judgment and its motion for leave to amend its Answer so as to assert counterclaims against the Class members.

In spite of the risks, and as the result of the efforts of Plaintiff's Counsel, Defendant agreed to provide substantial monetary and other relief. The amount of the settlement and the nature of the relief provided to the Class members is extraordinary. If approved as proposed, the Settlement Class will receive $9,314 on average in statutory penalties **after** the deduction of the

attorneys' fee and expense award, and the Plaintiff's incentive award, a release of any claim of deficiencies averaging $8,968 per loan, as well as the deletion of negative credit reporting and additional tax benefits. Viewed alone, the Gross Cash Fund of $1,750,000 consists of approximately 74% of the sum of the monetary amounts ($2,375,150.10) that Plaintiffs sought to recover from Defendant on their class claims for violations of Missouri's Commercial Code and Merchandising Practices Act as set forth in Counts I and II of the First Amended Petition.

A court should reward counsel who is successful in class action litigation, especially in consumer class actions like this. Consumer-plaintiffs rarely have the financial resources to pay a fixed hourly rate for legal services. Contingency fees and class action litigation make it feasible for individual consumers to have access to the courts and to counsel who possess the experience and ability necessary to take on complex and novel cases at a substantial risk of loss. Plaintiff's Counsel should be rewarded when they succeed in such cases, especially up until trial. The fact that such a fee award may result in a premium over what the attorneys' hourly rates would produce is a "premium" the market is and should be willing to pay for winning contingency cases. *See* Mo. Rule 4-1.5(a). Contingent fees exceeding the market value of services rendered on a "non-contingent" basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis, regardless of whether they win or lose. As one court observed:

> If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enter., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988). In undertaking this difficult case on a contingent basis, Plaintiff's Counsel assumed a substantial risk of non-payment (or under-payment if the ultimate recovery was insufficient to support an adequate fee).

Plaintiff's Counsel assumed a significant risk that they would not be compensated at all of the time expended in prosecuting this action. Unlike counsel for the Defendant (who presumably were paid substantial hourly rates and reimbursed for their out-of-pocket expenses on a regular basis), Plaintiff's Counsel have not been compensated for any of their time or expenses over the more than 3 plus years that have passed since this suit was filed. The Court should conclude that the award Plaintiff's Counsel seeks is reasonable.

### 6. The Nature And Length Of The Professional Relationship With The Client.

These factors include both the time limitations imposed by client or the circumstances, Mo. Rule 4-1.5(a)(5), and the nature and length of the professional relationship with the client, Mo. Rule 4-1.5(a)(6). Plaintiff first met with Counsel in November 2006. This lawsuit began in March 2008. The Settlement was finalized in February 2011. The demands of this litigation forced Plaintiff's Counsel to dedicate a considerable amount of their resources throughout the investigation and prosecution of this lawsuit and has reduced their abilty to take other class action cases. **Ex. 1**, at ¶78. Additional time and expenses will be incurred in disbursing the Settlement Funds and winding up the settlement. Given the length of time Plaintiff's Counsel has and will continue to represent plaintiffs and the Settlement Class, and the additional work ahead, the proposed fee award is reasonable. These factors, too, weigh in favor of the requested awards.

### 7. The Results Achieved for the Settlement Class.

This particular factor perhaps best substantiates the propriety of the requested awards. Given the risks and expense involved, and the experience and abilities of Plaintiff's Counsel, the Court should give this factor greater weight than the others in determining the appropriateness of the requested fees and expense awards. While the other factors are important in determining a reasonable fee award, the amount of the recovery is of primary importance, for that is the true

benefit to the Class.

The results in this case speak for themselves. The results were extraordinary. Plaintiff's Counsel obtained a settlement awarding approximately 141 class members, with 98 motor vehicle loans, with on average more than $18,282 in individual monetary damages and relief. Plaintiff's Counsel also obtained additional non-quantifiable relief in excess of the calculable monetary amounts. These amounts were obtained for the Settlement Class in the face of extraordinary risk. These amounts and the settlement recovery cannot be understated. *See* **Ex. 1**, ¶¶82-87.

Plaintiff's Counsel have obtained a remarkable benefit for the Settlement Class. The settlement in this case was achieved through painstaking work, at extraordinary risk, after years of hard-fought litigation. Additional work lies ahead. This is not the typical "coupon" class action, involving a *de minimus* recovery for the members of the class via a settlement agreement that provides class counsel with an exorbitant fee. Nor was this a class action that was settled early on for a few cents on the dollar. Here, approximately 141 consumer-borrowers will receive substantial monetary benefits and other relief. And while some of these borrowers may never know or understand the work Plaintiffs and Plaintiff's Counsel put into this matter, they will, no doubt, be quite thankful for the result, knowing that their legal rights were protected and enforced. The requested award of attorney's fees and expenses that Plaintiff's Counsel seeks is entirely reasonable and fair and has been earned.

### 8. Public policy favors the fee request.

Finally, the Court should consider the public policies favoring the fee award. Persons who are allegedly wronged by the violation of consumer protection laws should have reasonable access to qualified and experienced counsel, who possess the specific skills needed to analyze

19

and litigate such claims.[6] The time and expense involved in complex class action litigation such as this frequently outweigh the economic interests that any individual consumer might have in challenging the violation of a consumer protection law like the Uniform Commercial Code and the Merchandising Practices Act.

The role of class actions to promote this public interest has long been noted. As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Private attorneys with skill and experience should be encouraged to take the risks required to represent those who would not otherwise be protected from acts of predatory lending. Awarding Plaintiff's Counsel the requested fees and expenses would be fully consistent with important public policy considerations and would encourage lawyers to continue to advance funding for similar contingent litigation in the future. As one court noted:

> [T]here is a public interest in ensuring that attorneys willing to represent low-income persons in fair debt and consumer protection cases are adequately paid so that they and others like them will continue to take on such cases. Adequate compensatory fee awards in successful class actions promote private enforcement of compliance within important areas of federal law.

*Wess v. Storey*, 22011 WL 1463609, *11 (S.D. Ohio Apr. 14, 2011)(citing *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985)).

Further, it is equitable to ask the Class members to pay their attorneys out of any monies recovered for their benefit. *See Boeing,* 444 U.S. at 478 ("[P]ersons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.... Jurisdiction over the fund involved in the litigation allows a court to prevent this

---

[6] *Compare Cohn*, 375 F.Supp.2d at 863 ("The complexity and societal importance of shareholder derivative and class action litigation calls for the involvement of competent counsel. To encourage competent attorneys to represent plaintiffs on a contingent basis in this type of fiscally and socially important litigation, attorneys' fees awarded should reflect this goal.").

inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefited by the suit."); *Hall v. Cole,* 412 U.S. 1, 5-6 (1973)(an exception to the "American Rule" "involves cases in which the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them"). The Class members have received a substantial benefits and monetary penalties for violations of consumer protection statues. The cost to them to obtain these benefits is fair and reasonable. Thus, this factor supports the requested fee award.

### D. The Award of Expenses and Costs That Plaintiff's Counsel Seeks is Also Reasonable and Fair to the Settlement Class.

The Court also should approve as reasonable and award Plaintiff's Counsel $19,631.62 for their litigation expenses and court costs, which is also accordance with the Settlement. All of the expenses and costs for which Plaintiff's Counsel seeks reimbursement were incurred or advanced in connection with the Litigation and the claims against the Defendant. See **Ex. 1, ¶¶ 90-92**. The costs are not excessive or unreasonable by any means. Plaintiff's Counsel seeks reimbursement for such things as photocopies, mailing, computerized factual and legal research (*i.e.,* Pacer and Westlaw), expert witness fees, deposition transcripts and reporters' fees, travel and the like. *Id.* All of the expenses and costs for which reimbursement is sought are customary charges that normally would be "billed" to a client as part of any fee agreement, contingency or hourly, and the amount of each expense is reasonable. *Id.*

Attorneys should be able to recover reasonable expenses that would typically be billed to paying clients in non-contingency matters. *See Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir.1994). Missouri law also permits the Court to award Class Counsel expenses in addition to attorneys' fees. *Jesser v. Mayfair Hotel, Inc.,* 360 S.W.2d 652, 663 (Mo. 1962) (expert witness

Case 3:08-cv-05052-GAF   Document 196   Filed 05/06/11   Page 25 of 27

fees and other litigation expenses stand on same ground as attorney services); *Knopke v. Knopke*, 837 S.W.2d 907, 923 (Mo. App. W.D. 1992)(reversing trial court's disallowance of litigation expenses). Federal law also allows the taxation of certain costs to prevailing parties. *See* 28 U.S.C. §1920. The Court should approve the expense reimbursement requested here.

## III.  CONCLUSION

For all of the reasons set forth above, and there being no objection from any member of the Settlement Class, Plaintiff's Counsel respectfully requests the Court to award them attorneys' fees, litigation expenses and court costs to be paid from the Gross Cash Fund pursuant to the parties' Settlement Agreement and applicable law as follows: (a) $800,000 in connection with the common fund recovery obtained for the Settlement Class; and (b) $19,631.62, for the expenses and costs that Plaintiff's Counsel incurred and advanced in connection with the Litigation.

Dated: May 6, 2011                     Respectfully submitted,

                                       WALTERS BENDER STROHBEHN
                                        & VAUGHAN, P.C.

                                       By: */s/ Garrett M. Hodes*
                                          R. Frederick Walters Mo. Bar #25069
                                          J. Michael Vaughan Mo. Bar #24989
                                          Kip D. Richards Mo.  Bar 39743
                                          Garrett M. Hodes Mo. Bar #50221
                                          2500 City Center Square
                                          1200 Main Street
                                          Kansas City, Missouri 64105
                                          (816) 421-6620
                                          (816) 421-4747 (Facsimile)

                                       ATTORNEYS FOR PLAINTIFF AND
                                       CLASS COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically with the United States District Court for the Western District of Missouri with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons on **May 6, 2011:**

                                       By: */s/ Garrett M. Hodes*
                                       Attorneys for Plaintiff